**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

ROBBIN WARD,

**Case No.  1:21-cv-02597-LTB-SKC**
HON. LEWIS T. BABCOCK

Plaintiff,

MAGITRATE JUDGE

v.                                                      S. KATO CREWS

TRANS UNION, LLC et al.,

Defendants.

**DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S MOTION FOR SUMMARY**
**JUDGMENT**

National Credit Systems, Inc. (hereinafter, "NCS"), by and through the undersigned

counsel, hereby brings this Motion for Summary Judgment pursuant to Fed. R. Civ. Proc. 56.

Plaintiff has brought forth allegations which have no basis in fact or law. As a result, National

Credit Systems, Inc. is not liable to the Plaintiff for any amount or any theory advanced by the

Plaintiff, and therefore summary judgment should be entered in NCS's favor. As a result, Plaintiff

can have no viable case against NCS, and therefore, judgment is proper in its favor and against the

Plaintiff.

**NCS'S INCORPORATED BRIEF IN
SUPPORT OF SUMMARY JUDGMENT**

### A. Introduction

On September 24, 2021, Robbin Ward (hereinafter, the "Plaintiff") filed this case alleging that National Credit Systems, Inc. (hereinafter, "NCS") violated various provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (hereinafter, the "FCRA").[1] ECF 1. Plaintiff's primary assertion is that NCS violated the FCRA by failing to conduct a "reasonable investigation" as required pursuant to § 1681s-2(b)(1)(A), (B), and (E).[2] ECF 1, ₱₱ 8, 108, 117. Plaintiff claims that he is the victim of identity theft (or that this was a case of mistaken identity), that he does not owe on the account with the original creditor. ECF 1, ₱ 34.

Plaintiff concludes that, by virtue of these alleged facts, no reasonable investigation could have been undertaken as NCS allegedly inappropriately verified the account as due and owing following Plaintiff's dispute. *Id.* Plaintiff claims that NCS only consulted its own records when verifying its furnishings to the CRAs – a claim which is patently false as discussed more fully, *infra*. In fact, Plaintiff boldly claims that NCS does not investigate *any* disputes which are sent to it by *any* consumer, which is demonstrably false. ECF 1, ₱ 47, 61.

This entire case rises and falls upon Plaintiff's allegations that technically false pay advices and income verification constitutes as *prima facie* evidence of identity theft, or, put another way, that by not confirming the falsity of certain documents, that NCS therefore failed to perform a reasonable investigation of Plaintiff's disputes. Secondarily, this case is premised upon Plaintiff's

---

[1] Plaintiff also brought suit against consumer reporting agencies Trans Union, LLC ("TU"), Equifax Information Services, LLC ("EQ"), and Experian Information Solutions, Inc. ("EXP"; TU, EQ, and EXP, collectively referred to as the "CRAs"), however, the CRAs have since settled Plaintiff's claims and have been dismissed from this matter.

[2] Plaintiff alleges that NCS's actions constituted negligent or willful violations of the FCRA, paving the way for "actual damages, statutory damages, punitive damages, costs and attorney's fees" pursuant to § 1681(n) & (o). ECF 1 ₱ 121.

claims of actual damages, and in the absence of the same, claims that NCS acted willfully in allegedly violating the FCRA. NCS posits that these allegations do not constitute evidence of identity theft, nor can the Plaintiff prove actual damages or willfulness. As a result, for these reasons and all of the many that follow, Plaintiff's claims fail as a matter of law.

## LAW & ARGUMENT

NCS is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). As the moving party, NCS may meet its burden of demonstrating the absence of a triable issue by showing there is no "evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *Harris v. AC & S, Inc.* 915 F. Supp. 1420, 1433-34 (S.D. Ind. 1995).

When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245-46 (10th Cir. 2010)). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id*. (quoting *Adler v. WalMart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)). Plaintiff alleges that NCS, a furnisher of credit information, violated the FCRA, and more specifically, 15 U.S.C. § 1681s-2(b), by failing to respond to reinvestigation requests and failing to supply accurate and truthful information. ECF 1, generally. Plaintiff seeks actual, statutory and punitive damages under 15 U.S.C. §§ 1681n & o.

"The burden of proof on a claim under the FCRA remains with the plaintiff at all times and never shifts to the defendant." *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1011 (D. Colo. 2012) and *Philbin v. Trans Union Corp.,* 101 F.3d 957 (3d Cir. 1996) (abrogated on unrelated grounds)). The Plaintiff bears not only the burden of proving that a violation of the FCRA occurred, but also the burden of proving that any damages he claims was actually caused by said violation. *See Johnson v. Equifax, Inc.,* 510 F. Supp. 2d 638, 647 (S.D. Ala. 2007); *Jackson v. Equifax Info. Servs., LLC.,* 167 F. App'x 144, 146 (11th Cir. 2006). Plaintiff cannot meet his burden.

It is well established that there is no private right of action against furnishers for "failing to supply accurate and truthful information." *Grant v. First Premier Bank*, No. 16-2821-DDC-GLR, 2017 U.S. Dist. LEXIS 100955, at *5 (D. Kan. June 29, 2017) (citing *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009)); *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 34 (3d Cir. 2011); *Hasvold v. First USA Bank, N.A.*, 194 F. Supp. 2d 1228, 1237 (D. Wyo. 2002). The only private cause of action against furnishers is set forth in Section 1681s-2(b) for failing to conduct a reasonable reinvestigation. *Fallas v. Cavalry SPV I, LLC*, 2013 U.S. Dist. LEXIS 60380, *23 (D.N.J. Apr. 29, 2013). Here, NCS's investigation was more than reasonable under the circumstances, and there is no evidence to suggest that NCS supplied anything other than accurate and truthful information.

Further, the reasonableness of the investigation is determined by an objective standard and how thorough the investigation must be to constitute "reasonable" depends on what relevant information was provided to the furnisher. *Id.* The requirement that furnishers investigate consumer disputes is "procedural," meaning that an investigation is not necessarily unreasonable simply because "it results in a substantive conclusion unfavorable to the consumer, even if the

conclusion turns out to be inaccurate." *Maiteki v. Marten Transp., Ltd.*, No. 12-cv-2021, 2015 U.S. Dist. LEXIS 140470, at \*27 (D. Colo. Oct. 15, 2015), *aff'd Maiteki*, 828 F.3d 1272 (10th Cir. 2016).

In determining whether the investigation was reasonable, courts "look to the procedures employed, rather than the results of the investigation." *Collins*, 912 F. Supp. 2d at 1011 (citing cases). "The wording of the notice of dispute, as the furnisher receives it from the CRA, constrains the investigation: the furnisher need only respond to the specific dispute, as it is received." *Id.* The burden of showing that the investigation was unreasonable is on the plaintiff, and summary judgment for the defendant is proper if the reasonableness of the defendant's procedures is beyond question. *Maiteki,* 828 F.3d at 1275.

A. **Plaintiff's Failure to Provide His Credit History & Credit Denial Reports Precludes His Claims.**

At the outset of matters, it needs to be noted that the Plaintiff has not provided any consumer reports with which to analyze *or* to gauge his claims or alleged damages – particularly regarding any allegations of a degraded consumer report or any potential negative credit inquiries. SOF ¶¶ 81-104. Additionally, the record evidence reflects that upon receipt of Plaintiff's dispute, the NCS account was coded with "Compliance Code XB", which blocks any information from consideration by potential lenders and removes said information from consideration in calculating a FICO score. SOF ¶¶ 96-101. Plaintiff seeks to hold the NCS responsible for what does or does not appear on his consumer reports – and more specifically, how that information impacted any credit approvals or denials. As discussed more fully *infra*, *b*ecause there is no evidence that the NCS account or NCS's actions impacted the Plaintiff in any regard, Plaintiff not only lacks standing, but, Plaintiff's claims under the FCRA for negligent reporting fail.

B. **Plaintiff's lack of damages precludes liability as to NCS.**

### i. **Plaintiff's lack of damages destroys Plaintiff's Article III Standing under** *Ramirez*.

To have standing to sue, a case or controversy must be brought by those who have the power to maintain a lawsuit in federal court. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540, 1547 (2016)). In order to have standing, Plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. 861.  As the Court emphasized in *Spokeo*, "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472, at *8 (U.S. S. Ct. June 25, 2021).

In the landmark opinion issued just last summer, the United States Supreme Court clarified Article III Standing in partially *reversing* certification on a class action where there was not a concrete injury. *Id.* Specifically, in *Ramirez*, Trans Union had a database of consumers which had, somehow, gotten updated with incorrect and defamatory information – naming class members as *potential* terrorists, drug traffickers, or serious criminals – not your run of the mill dispute. Of that database, approximately 1/3 of the consumer's had their information sent out into the public domain, whilst the remaining 2/3's was never publicly disseminated. The court concluded the publicly disseminated 1/3 "members therefore suffered a harm with a "close relationship" to the harm associated with the tort of defamation." *Id.* In analyzing the remaining class members – the ones who did not have information publicly disseminated, that was a greater task, with the court finding the following:

> The remaining 6,332 class members are a different story. To be sure, their credit files, which were maintained by TransUnion, contained misleading OFAC alerts. But the parties stipulated that TransUnion did not provide those plaintiffs' credit information to any potential creditors during the class period from January 2011 to July 2011. Given the absence of dissemination, we must determine

> whether the 6,332 class members suffered some other concrete harm for purposes of Article III.
>
> The initial question is whether the mere existence of a misleading OFAC alert in a consumer's internal credit file at TransUnion constitutes a concrete injury. As Judge Tatel phrased it in a similar context, "if inaccurate information falls into" a consumer's credit file, "does it make a sound?".

*TransUnion LLC v. Ramirez,* No. 20-297, 2021 WL 2599472, at *11 (U.S. S. Ct. June 25, 2021) (internal citations omitted).

The Plaintiff presents no factual allegations or documentation which could plausibly suggest that NCS's actions (or inactions) impacted him in any manner whatsoever, or that he would have otherwise acted differently had NCS altered any of its actions, despite the Article III requirement to show an actual, concrete injury beyond mere speculation and conjecture. *Groshek v. Time Warner Cable, Inc*., 865 F.3d 884, 887–89 (7th Cir. 2017). Recently, there has been an uptick in cases interpreting Article III Standing within the confines of the FCRA. The Seventh Circuit has authored several opinions which are instructive for this case. Specifically, *Groshek* was interpreted as follows:

> In *Groshek v. Time Warner Cable*, the plaintiff argued that his prospective employer violated FCRA's requirement that an employer seeking to obtain a consumer report on a prospective employee had to give the applicant a stand-alone written disclosure stating that a consumer report may be obtained. Instead of a stand-alone disclosure document, Time Warner provided *Groshek* with a document that contained the required disclosure as well as other information. *Groshek* signed the form, thereby authorizing Time Warner to obtain his consumer report. We concluded that Time Warner's violation of the stand-alone disclosure requirement inflicted only "a statutory violation completely removed from any concrete harm or appreciable risk of harm." Critically, FCRA "does not seek to protect *Groshek* from the kind of harm he claims he has suffered, *i.e.*, receipt of a non-compliant disclosure." Instead, the purpose of FCRA is "to decrease the risk that a job applicant would unknowingly consent to allowing a prospective employer to procure a consumer report." *Groshek* did not allege that he was unable to give knowing and informed consent because the disclosure document he received also contained other information; thus, he did not allege a concrete injury that

Congress                   made                   cognizable.

*Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617, 625 (7th Cir. 2020), as amended on denial of

reh'g and reh'g en banc (June 30, 2020) (internal citations omitted). Additionally, *Robertson v.*

*Allied Solutions, LLC*, 902 F.3d 690 (7th Cir. 2018), below, was also recently interpreted in

contrast to *Groshek* by the *Bryant* court.

> By contrast, a company failed to provide a prospective employee with a copy
> of her background report before rescinding her employment offer on the basis
> of information contained in that report. We held that this omission constituted
> an injury-in-fact for a FCRA claim. *Robertson's* informational injury was
> both particularized and concrete because she had a "substantive interest,"
> protected by FCRA, in being able to "review the reason for any adverse
> decision and to respond." The critical question, we said, is whether "the
> plaintiff is entitled to receive and review *substantive* information." "Article
> III's strictures are met not only when a plaintiff complains of being deprived
> of some benefit, but also when a plaintiff complains that she was deprived of
> a chance to obtain a benefit." *Id.* Accordingly, it was "immaterial" that
> *Robertson* did not plead what she would have done if she had been given the
> chance to respond. It was sufficient that *Robertson*, unlike *Groshek*, was
> wholly deprived of the information necessary to respond in the way FCRA
> contemplated.

*Bryant v. Compass Grp. USA, Inc*., 958 F.3d 617, 625 (7th Cir. 2020), as amended on denial of

reh'g and reh'g en banc (June 30, 2020) (internal citations omitted). In reaching this conclusion,

the Seventh Circuit, in *Myers*, found that there was no standing where a furnisher corrected errors

that, up and until that point, were only viewable to the credit reporting agencies. *Meyers v. Nicolet*

*Restaurant of De Pere, LLC*, ___ F.3d ___, No. 16-2075, 2016 WL 7217581, at *3 (7th Cir. Dec.

13, 2016). Additionally, "[a] violation of a statute that causes no harm does not trigger a federal

case. That is one of the lessons of *Spokeo*." *Id*. at *3, n.2.

The Plaintiff hasn't made any allegations that NCS has taken any actions resulting in

"concrete-actually existing-injuries" which they can trace back to NCS. Courts are quick to

recognize that there is no injury beyond the classic **"anything-hurts-so-long-as-Congress-says-it-**

hurts theory of Article III injury," and that those cases must be summarily dismissed for lack of standing. *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, at n.2 (11th Cir. 2020) (*quoting Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)).

Additionally, "there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been." *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 997 (11th Cir. 2020) (citation omitted). This is because the FDCPA is not meant to "force defendants to pay plaintiffs who have not suffered."" *Daniels v. Aldridge Pite Haan, LLP*, No. 5:20-CV-00089-TES, 2020 U.S. Dist. LEXIS 119449, 2020 WL 3866649, at *4 (M.D. Ga. July 8, 2020). In fact, the Supreme Court has rejected standing arguments where a win or a loss would not change any of their life circumstances and there were no real vested or concrete stake in the dispute, and therefore, had no Article III standing. *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 16222, 207 L. Ed. 2d 85 (2020) see also *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (holding that plaintiffs must demonstrate standing for <u>each</u> claim which they pursue, and that standing as to one claim does not confer standing as to all claims); *see also Parvati Corp. v. City of Oak Forest*, 630 F.3d 512 (7th Cir. 2010) (holding that self-inflicted injuries cannot be the basis for Article III standing).

There is no evidence whatsoever (and there can be none presented) that the Plaintiff has been damaged as a result of any conduct by NCS, as opposed to any of his own actions or inactions. His claims regarding damages have never materialized – meaning, Plaintiff has never requested credit through a third-party, the Plaintiff has never caused his credit to be pulled through a third party, nor has the Plaintiff ever been denied credit (or given unfavorable terms) as a result of the NCS account, and no evidence exists to the contrary. In fact, Plaintiff's only alleged harm

regarding the Account is nothing but presumed – and none of the presumed harm has ever materialized – or, if it has, it cannot be tied back to NCS which, without more, is wholly insufficient. *Id.* Plaintiff has no evidence regarding these hypothetical injuries, and at summary judgment, mere conclusion is wholly insufficient.

### ii. Plaintiff cannot sustain a claim for negligent violations of the FCRA where actual damages do not exist.

Pursuant to Section 1681o of the FCRA, any person who is negligent in complying with Section 1681s-2(b) is liable to the consumer in the amount equal to "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1). The existence of actual damages is a prerequisite to a claim under Section 1681o. *Dixon v. Green Tree Servicing, LLC*, No. 13-227, 2015 U.S. Dist. LEXIS 61648, *5, 2015 WL 2227741 (N.D. Indiana May 11, 2015) (holding that "[w]ithout actual damages, that only leaves Dixon's claim for statutory damages under Section 1681(n).").

Plaintiff has no evidence that he does not owe the debt, or that some harm befell Plaintiff by some third party viewing an actual consumer report, or that the dispute is related to a contested factual issue – as opposed to a legal issue. This leaves Plaintiff's claim against NCS as no more than speculation. Speculation will not suffice for evidence and will not support a claim. *Doan v. Seagate Technology, Inc.,* 82 F.3d 974 (10th Cir. 1998). The fact that a consumer may be worried and upset that something might happen as a result of something in a file at a consumer reporting agency does not justify a claim. *Casella v. Equifax Credit Information Services,* 56 F.3d 469, 475 (2nd Cir. 1995); *Cousin v. Trans Union Corp.,* 246 F.3d 359, 371 (5th Cir. 2001). Plaintiff has not identified any actual damages stemming from any act taken by NCS. Plaintiff has not been denied any credit, and, pursuant to NCS's expert witness, Mr. John Ulzheimer, Plaintiff *could not* have been damaged as it relates to NCS's actions as the NCS account consistently reported with

compliance code "XB" which blocks any such account from consideration in a consumer score (whether positively or negatively). SOF, ₱₱ 86-104. As such, Plaintiff is not entitled to recovery for any alleged negligence because he cannot establish actual damages.

   C. **Plaintiff cannot establish that NCS acted "willfully" with regard to Plaintiff's disputes.**
   The FCRA provides that any person who "willfully" fails to comply with any requirement imposed by Section 1681 is liable in an amount equal to actual damages sustained by the consumer, or statutory damages in an amount between $100 and $1,000, along with attorney's fees; and the consumer may be entitled to punitive damages. 15 U.S.C. § 1681n(a). A "willful" violation under Section 1681(n) is either "an intentional violation or a violation committed by an agency in reckless disregard of its duties under the FCRA." *Birmingham v. Experian Info Solutions, Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011). Plaintiff cannot establish that NCS acted willfully in responding to Plaintiff's disputes on the NCS account. Simply put, there is no evidence that NCS purposefully failed to conduct a reasonable investigation in this matter. To the contrary, the record evidence reflects that NCS undertook a detailed and thorough analysis, despite Plaintiff's disagreement with the end result thereof. Likewise, there is no evidence that NCS acted "in reckless disregard of its duties under the FCRA." 15 U.S.C. § 1681n(a).

   The Tenth Circuit has found that recklessness is measured by "an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* "A company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.*

Plaintiff can proffer *nothing* but unsubstantiated allegations that NCS has failed to implement policies that contravene the rights of consumers. This is not enough to establish that NCS recklessly disregarded its duties. *Collins v. Diversified Consultants, Inc.*, No. 15-02115, 2017 U.S. Dist. LEXIS 35487, at *60-61 (D. Colo. Feb. 1, 2017) (finding that "in the absence of a 'described practice that would be a reckless violation of the FCRA,' a potential (albeit improbable) negligent violation of the FCRA is 'insufficient to support a claim under § 1681n for a willful violation of the FCRA.'"). Indeed, the evidence here is that NCS *has* implemented policies and procedures to protect consumers' rights. SOF ¶¶ 41-71; 81-84.

In cases such as this--where a creditor has policies in place to ensure that it complies with the FCRA's investigation requirements and, despite allegedly reaching the wrong conclusion, complied with the policies--it can be said as a matter of law that the creditor did *not* act recklessly under the FCRA. *Hatten v. Experian Info. Sols., Inc.*, No. 12-12236, 2013 U.S. Dist. LEXIS 130372, at *21 (E.D. Mich. Sep. 12, 2013) (granting the creditor summary judgment where it had policies in place and complied with the FCRA). Plaintiff would need to show something beyond mere carelessness. *Llewellyn v. Allstate Home Loans, Inc.,* 711 F.3d 1173, 1183 (10th Cir. 2013); *Birmingham v. Experian Info. Sols., Inc.,* 633 F.3d 1006, 1009 (10th Cir. 2011). In sum, Plaintiff cannot prove that NCS recklessly violated the FCRA's requirements, and this claim must be dismissed.

**D. <u>Plaintiff's FCRA Claims Fail Because NCS Conducted a Reasonable Investigation and Because He Has Brought a Legal Dispute As Opposed To a Factual Dispute.</u>**

Under § 1681n(a), "'[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer' for actual, statutory, or punitive damages." *Collins v. Experian Info. Solutions, Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015) (citation omitted). A willful violation of the FCRA exists where

the defendant violates the FCRA with knowledge or reckless disregard for the law. *Id.* (citations omitted). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)). In other words, Plaintiff must show that Defendant's investigation, or reinvestigation, was objectively unreasonable, given the facts and circumstances.

The FCRA does not define a reasonable investigation, "'what is a reasonable investigation by a furnisher may vary depending on the circumstances,' that reasonableness is judged by an 'objective standard,' and that 'the burden of showing the investigation was unreasonable is on the plaintiff.'... To prevail, a plaintiff must also demonstrate that the result of the investigation was actually inaccurate." *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1313-14 (S.D. Fla. 2012), *quoting Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37-38 (1st Cir.2010).

As is pertinent in this case, a credit entry is "inaccurate" within the meaning the FCRA if (1) "it is patently incorrect," or (2) "is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Fishback v. HSBC Retail Servs. Inc.*, 944 F. Supp. 2d 1098, 1110 (D.N.M. 2013) (quoting *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)); *Ostiguy v. Equifax Info. Servs., LLC*, No. 5:16-CV-790-DAE, 2017 WL 1842947, at *3 (W.D. Tex. May 4, 2017) (quoting *Sepulvado*, 158 F.3d at 895). "Absent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher need not do more than verify that the reported information is consistent with the information in its

records." *Howard v. Pinnacle Credit Servs., LLC*, 2010 WL 2600753 at \*3 (M.D. Ga. June 24, 2010).

One of the leading cases in the identity theft realm is *Hinkle v Midland Credit Mgmt, Inc.,* 827 F.3d 1295, 1303 (11th Cir. 2016). In *Hinkle*, the court addressed what might be necessary for a furnisher who is not the original creditor. *Id*. Like NCS, the defendant in *Hinkle* was not the original creditor and, in conducting its investigation into the dispute, it reviewed the information it its system but did not seek additional information form prior servicers or holders of the account. *Id*. at 1305. The *Hinkle* court found that the defendant did not conduct a reasonable investigation. *Id*. Instead, the court stated that a "jury could" find that the furnishers reliance on its own records did not constitute a reasonable investigation. *Id*. As shown below, a reasonable jury could find that the NCS reasonably investigated the disputed information thereby fully complying with the FCRA.

Additionally, *Hinkle* was noticeably different than this matter, because in *Hinkle,* the collection agency was several times removed from the original creditor and it did not have documents from the original creditor, and it was not able to contact the original creditor to validate the debt. Here, none of those facts are present. NCS has the documents from the original creditor regarding the underlying account, and, unlike in *Hinkle*, NCS *did* consult the original creditor in verifying the amounts as due and owing.

NCS is entitled to judgment in its favor because Plaintiff cannot demonstrate any actual inaccuracies in NCS's reporting, and because the investigation itself was objectively reasonable. *Chiang*, 595 F. 3d at 38-39. The FCRA does not envision an endless inquiry into all possible inaccuracies present in a credit report; "[t]he statute does not require... any data furnisher to take extraordinary means to investigate and discover disputed information but rather calls for a more passive investigation where the data furnisher is determining only that the information

provided to it matches the information in its records." *Farren v. RJM Acquisition Funding, LLC*, 2005 WL 1799413 at *7 (E.D. Pa. July 26, 2005).

Moreover, Plaintiffs are required to show "factual inaccuracy, rather than the existence of disputed legal questions." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010); *see also Davidson v. Capital One, N.A.*, No. 14-20478-CIV, 2014 WL 6682532, at *4 (S.D. Fla. Nov. 25, 2014) ("courts appear to agree an FCRA plaintiff must prove the challenged information is inaccurate").

"Absent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher need not do more than verify that the reported information is consistent with the information in its records." *Howard*, 2010 WL 2600753 at *3; *Krajewski*, 557 F. Supp. 2d at 609 (same); *see also Westra v. Credit Controls of Pinellas*, 409 F.3d 825, 827 (7th Cir. May 27, 2005). Nor does the statute require a specific outcome favorable to the consumer; "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out the be inaccurate." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009). "While the question whether an investigation is reasonable is a factual question normally reserved for trial, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question.'" *Krajewski*, 557 F. Supp. 2d at 609, *quoting Westra*, 409 F.3d at 827.

NCS's investigation was reasonable as a matter of law the Plaintiff cannot prevail on his claim under the Fair Credit Reporting Act unless he can also show that additional investigation would have produced a different result. *Chiang v. Verizon New England Inc.,* 2009 WL 102707, at *9 (D. Mass. Jan. 13, 2009). Plaintiff must show that the Defendant overlooked some *fact* that

an additional investigation would have uncovered and that would have led to a different result –
but he hasn't.

The reasonableness of NCS's procedures in this case were beyond question. Rather than
simply confirming that the disputed information were consistent with their reporting – which was
all that NCS was obliged to do, under *Howard* -- NCS instead conducted a full audit to confirm
that there were no errors and reviewed *all* information they had on file, requested information from
the original creditor, and even confirmed with the original creditor that the balance was, in fact,
correct.

Whether or not Plaintiff is or was ever employed by Neiman Marcus or received social
security benefits is not dispositive of liability on the Main Street account. Instead, absent any
additional information (such as a police report), what the Plaintiff's dispute alleges constitutes a
question of law as whether or not the Plaintiff is, in fact, <u>*not*</u> liable on the account is a contested
matter which can only be resolved with the assistance of the judiciary. The FCRA is clear in that
a furnisher is not meant to be an arbiter of claims – they are not supposed to (and are not equipped
to) decide the legal sufficiency of allegations such as those raised by the Plaintiff.

Here, the reasonableness of NCS's procedures in this case were beyond question. Rather
than simply confirming that the disputed information was consistent with their reporting –NCS
instead conducted a full audit to confirm that there were no errors and reviewed *all* information
they had on file, requested information from the original creditor, and even confirmed with the
original creditor that the balance and the obligor on the account (the Plaintiff) was, in fact, correct.

To block information or data on a consumer report where there are allegations of identity
theft, the FCRA requires consumers to submit an "identity theft report." to obtain the blocking of
information alleged to be the result of identity theft, the FCRA requires an "identity theft report"

as just one of the safeguards protecting the accuracy and integrity of consumer report information.

15 U.S.C. § 1681c-2(a).The identity theft report required under the FCRA is a report:

> (1) that alleges identity theft with as much specificity as the consumer can provide;
> (2) that is a copy of an official, valid report filed by the consumer with a Federal, State, or local law enforcement agency ..., the filing of which subjects the person filing to criminal penalties relating to the filing of false information...; and
> (3) that may include additional information or documentation that an information furnisher or consumer reporting agency reasonably requests for the purpose of determining the validity of the alleged identity theft. . .

*See* 16 C.F.R. § 603.3(a). In this case, Plaintiff has not provided specificity with regard to his claims of identity theft, nor has he provided a copy of a report filed with a law enforcement agency, as contemplated by the FCRA.

To the contrary, in this case, the application includes verifiable information of not only the Plaintiff, but that of his daughter, Quen Allen. SOF ₱₱ 3-6. Main Street Renewal has verified that this account is due and owing by the Plaintiff at the time it was placed with NCS, and they continue to verify this information through present day. SOF ₱₱ 41-43, 64. And, while the Plaintiff may never have worked for Neiman Marcus or yet become eligible for social security benefits, Plaintiff's daughter, Quen Allen, has. SOF ₱₱ 8-9, 13-15. Plaintiff has also admitted that he has supplied his actual driver's license and social security card to his daughter, Quen Allen, as well. SOF ₱ 7. Importantly, the documents utilized to obtain the account were also *color* documents, which support the Original Creditor's claims that this account does, in fact, belong to the Plaintiff (whereas black & white copies are prevalent in identity theft disputes). SOF ₱ 6.

When this account was applied for, both the Plaintiff and Quen Allen were on vacation, and as such, they had plenty of time to work together to complete the application at issue in this case. SOF ₱ 9. The account was applied for in the name of Robbin Ward, with Quen Allen standing in as his emergency contact. SOF ₱₱ 1-3. Though the Plaintiff claims to reside in Colorado, it is

undisputed that Quen Allen resides in Texas. SOF ‖ 5. The Main Street Renewal application and lease indicate that the tenant (in this case, Robbin Ward) is the only person approved by Main Street Renewal to inhabit the rental. SOF ‖ 18. The application and lease also require full disclosure of any felony and/or pending criminal charges. SOF ‖ 17. In that same vein, payments for the account could only be submitted in the name of the tenant, Robbin Ward. SOF ‖ 20.

Here, Plaintiff's daughter, Quen Allen, has a known criminal history that would have likely precluded her from independently applying for residency with Main Street Renewal. SOF ‖‖ 72-80. Additionally, all pertinent communications and payments submitted to Main Street Renewal were submitted, in large part, were submitted when Quen Allen was on the clock with Neiman Marcus and were likewise submitted from the same IP address which traces back to Neiman Marcus. SOF ‖‖ 21-29. Additionally, the payment records from Main Street Renewal and the known signatures of Robbin Ward are substantially similar to one another. SOF ‖ 33.

Furthermore, as is customary for the Plaintiff, the person behind "robbinward61@gmail.com" indicated that his daughter, Quen Allen, would be handling this matter for him. SOF ‖ 32. This is similar to Plaintiff's disputes in this matter, which he requested that Megan Henderson, Plaintiff's wife, resolve for him. SOF ‖ 48. Perhaps most tellingly, Plaintiff's daughter, Quen Allen, published a video inhabiting the property which is the subject of this dispute, where she can be seen celebrating her birthday in the kitchen of the Main Street Renewal Property. SOF ‖‖ 39-40. Additionally, the Main Street account is not Plaintiff's only account with NCS. SOF ‖‖ 45-47. Plaintiff's second account with Berkshire caused the Plaintiff to be put on notice that someone was applying for an account in his name as early as January 2019 – a warning which Plaintiff entirely disregarded. *Id.*

Simply put, there is ample evidence to support Main Street Renewal's claims that the Plaintiff is the appropriate obligor on this account. Plaintiff cannot simply ignore all of these facts only to concentrate on a small subset – particularly where that small subset of allegations do not conclusively establish his allegations regarding identity theft. Moreover, the data that Plaintiff clings to – primarily his lack of employment with Neiman Marcus – no information was provided by the Plaintiff to conclusively establish Plaintiff's allegations regarding employment status, and, even had NCS wanted to ask for this information, there is evidence that Neiman Marcus likely would not have provided this information to NCS as it is. SOF ¶ 50.

Plaintiff has taken the position that any fraud transpired on or around December of 2019 – close to a year after the Main Street account was opened. SOF ¶ 57. Plaintiff also pellucidly states that Quen Allen *did not* steal his identity, and that such a thought never entered his mind when considering whether or not to file a police report. SOF ¶¶ 55-56. Ultimately, Plaintiff never filed a police report regarding these claims despite clear requests for the same. SOF ¶ 53. At a minimum, these allegations support Main Street Renewal's contention that the Plaintiff and Quen Allen worked together to submit the application for a tenancy. At worst, they show that Quen Allen may have stolen Plaintiff's identity to apply for a tenancy with Main Street Renewal.

However, in the complete absence of any doubt from the Plaintiff with regard to Quen Allen, NCS will take Plaintiff at his word that Ms. Allen could not have stolen his identity. The only natural conclusion to draw from such a statement is that the Plaintiff and Ms. Allen worked in concert with one another so that Ms. Allen could obtain housing in Texas which she otherwise would be incapable of applying for given her criminal history. Plaintiff cannot simply ignore these incontrovertible facts.[3]

---

[3] Plaintiff has his own history of conflicting statements as discussed in SOF ¶¶ 82-83.

Where a dispute lacks detail, reliance on internal documents is "perfectly reasonable." *Robinson v. Equifax Info. Servs., LLC.*, No. CIV.A. CV 040229 RP, 2005 WL 1712479, at *28 (S.D. Ala. July 22, 2005). Moreover, precedent is set that a debt collector may rely upon information provided by a creditor who has provided accurate information in the past. *See Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1174 (9th Cir. 2006) (citing *Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496, 500-01 (E.D.N.Y. 2002); *see Howe v. Reader's Digest Ass'n, Inc.*, 686 F. Supp. 461, 467 (S.D.N.Y. 1988)). Further, a debt collector is not required "to vouch for the validity of the underlying debt." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). Here, the Plaintiff seeks a remedy which must be obtained in a court of law.

As such, NCS is entitled to rely upon the information provided by the Original Creditor, particularly where there is no evidence or allegation that the information provided by Main Street is not trustworthy. Exhibit 25, ¶ 9. In the absence of any proof or detail regarding the alleged identity theft, and because Plaintiff seeks to have his contract with Main Street Renewal nullified, Plaintiff's disputes are nothing more than *legal* disputes – not factual disputes. Plaintiff has not identified any unresolved factual disputes to date.

Without more information from Plaintiff, NCS had (and still *has*) no reason to doubt the account information provided from the original creditor, and as a result, it had no duty to look beyond its own records. *See Scheel-Baggs v. Bank of Am.*, 575 F.Supp.2d 1031, 1040 (W.D. Wis. 2008) (holding that the consumer using the word "fraud" in isolation without showing context is not enough to trigger a more thorough investigation); *Anastasion v. Credit Serv. Of Logan, Inc.*, No. 08-180, 2010 U.S. Dist. LEXIS 121714, *20 (D. Utah Nov. 16, 2010) (holding that the plaintiff

did not present "any case law to support its assertion of a creditor's duty to look beyond its own records.").

With his pleadings, Plaintiff implies that an investigation was required to continue past the date of NCS's responses to such investigations. However, there were only two disputes in this case – one in June of 2020, and one in July of 2020. However, information which could have been provided by the Plaintiff *after* the completion of an investigation does not trigger a duty under the FCRA. *Aklagi v. Nationscredit Fin. Servs. Corp.*, 196 F. Supp. 2d 1186, 1193 (D. Kan. 2002). Therefore, for all of these reasons, NCS conducted a reasonable investigation of Plaintiff's dispute. Moreover, to the extent that Plaintiff submitted a dispute, it is clear that such a dispute presented a legal question as opposed to a factual question, and as such, FCRA standards would be inapplicable as it relates to alleged violations of the FCRA. As such, liability under the FCRA does not follow.

## CONCLUSION

The undisputed evidence shows that the Plaintiff lacks Article III standing to pursue her claims in federal court pursuant to *Ramirez*. NCS otherwise did not act wilfully with regard to Plaintiff's allegations of breach of the FCRA. To the contrary, NCS investigated all factual disputes exhaustively and conducted a reasonable investigation of all disputed accounts in accord with the FCRA, precluding any liability for a "willful" violation. Moreover, because Plaintiff cannot allege actual damages, there can be no liability for a negligent violation of the FCRA, either. If this Honorable Court determines that the amounts sought by the Original Creditor are not be owed - NCS's investigations were entirely reasonable and beyond reproach. NCS is therefore entitled to summary judgment in its favor on all counts.

WHEREFORE, Defendant National Credit Systems, Inc. request that the Court grant

Defendant's motion for summary judgment and award any other relief that the Court deems just

and appropriate.

Dated: November 15, 2022

Respectfully submitted,


/s/ Katrina M. DeMarte
KATRINA M. DEMARTE (MI bar No.
P81476; CO Bar No. 43135)
DEMARTE LAW, PLLC
39555 Orchard Hill Place Suite 600
Novi, MI 48375
Telephone: (313) 509-7047
katrina@demartelaw.com

## Certificate of Service

I certify that the foregoing has been served by the Court's CM/ECF service to all counsel of
record on November 15, 2022.

/s/Katrina DeMarte