WARD V. NCS
EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**ROBBIN WARD,**

       **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　**Civil Action No.:  1:21-cv-02597**

**TRANSUNION, LLC, EQUIFAX INFORMATION**
**SERVICES, LLC, EXPERIAN INFORMATION**
**SOLUTIONS, INC. AND NATIONAL CREDIT SYSTEMS, INC.**

       **Defendants.**

**PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND ANSWERS TO**
**NATIONAL CREDIT SYSTEMS, INC.'S**
**FIRST SET OF INTERROGATORIES**

COMES NOW the Plaintiff, ROBBIN WARD ("Mr. Ward" or "Plaintiff"), by counsel, as and for his supplemental objections and answers to National Credit Systems, Inc.'s ("NCS" or "Defendant") First Set of Interrogatories and states as follows:

**DEFENDANT'S INSTRUCTIONS AND DEFINITIONS**

Plaintiff relies on common usage of words and terms stated herein to the extent any proposed definition suggested by Defendant differs from such use.  The Plaintiff does not agree to any instruction suggested by Defendant to the extent not required by the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Colorado, or orders of the Court.

**INTERROGATORY NO. 1:** Itemize all damages [i.e. statutory, economic/actual, consequential, special, exemplary, attorneys' fees and/or costs] that you contend you have sustained as a result of the allegations in the Complaint and provide (a) the specific injury or category of damages and dollar amount of damages claimed; (b) the basis or method used to calculate such amounts; (c) a

1

description of any documentation that you contend supports such damages; and (d) the names of all persons, whether lay or expert, who will provide testimony supporting each such category of damages.

**OBJECTION:**

**If the Defendant is referring to attorney's fees with regard to this case, Plaintiff offers the following objection.**

**Plaintiff objects to this Request as being premature and irrelevant at this stage in the proceedings. Until there has been a resolution if Plaintiff prevails, there is no obligation by any Defendant to pay the Plaintiff's attorneys' fees and costs. Under Fed. R. Civ. P.  54, this information is not shared unless and until a finding of liability and damages is made under a fee-shifting statute. Calculation of attorneys' fees is outside the scope of discovery, is disproportional to the needs of the case, and not calculated to lead to admissible evidence, since any fee award is determined after trial and must be based on lodestar (marketplace) rates. This is a fee shifting case; fees and costs will be sought by petition or agreement under usual fee-shifting standards. Under these standards, the party's agreement with her lawyers may not be considered as a floor, standard, or ceiling. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989); *Venegas v. Mitchell*, 110 S. Ct. 1679 (1990); *City of Burlington v. Dague*, 112 S. Ct. 2638 (1992); *Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 126 (D. Conn. 1974) (motion to compel fee agreement denied); *Stahler v. Jamesway Corp.*, 85 F.R.D. 85, 86 (E.D. Pa. 1979) (fee agreement not discoverable); *Sanderson v. Winner*, 207 F.2d 477 (10th Cir. 1974).**

**Plaintiff further objects to this request on grounds that it seeks material protected from disclosure under attorney-client privilege and the work-product doctrine.**

**ANSWER:**

Subject to and without waiting her objection, Plaintiff states as follows:

The nature of Plaintiff's injury and the statutory allowance for actual do not lend themselves to a precise damages' calculation. The Plaintiff seeks actual damages, most of which are not liquidated and do not lend themselves to a statement of calculation. *Williams v. Trader Pub. Co.*, 218 F.3d 481, 486–87 (5th Cir. 2000); see *Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 386 (E.D. Tex. 1997). Such damages will be determined by the jury in this matter. The range of actual damage verdicts in similar cases or cases with weaker damages have been between $1,000 and $700,000. Plaintiff's Counsel's estimate of the most likely actual damages value range based on previous FCRA verdicts for cases of comparable strength is between $300,000 and $600,000.

Plaintiff has suffered emotional and mental anguish, humiliation, anger and frustration, annoyance, and embarrassment because of the reporting and publication of the false derogatory reporting by **NCS**. Plaintiff has been strapped with a false credit history, causing mental anguish, emotional distress, frustration, humiliation, and annoyance. Plaintiff has endured substantial and ongoing emotional and mental anguish and loss of self-esteem because of this ordeal to recapture his good name and credit, as well as the fact that NCS persisted over an extended period of time in painting Plaintiff a false light both personally and financially for a fraudulent account that he does not owe. Plaintiff suffers anxiety when considering seeking additional credit because he believes, justifiably, that he will be forced to subject himself once again to the humiliation of having to explain the false information that has been and continues to be circulated about him.

NCS invaded Mr. Ward's statutorily protected credit privacy so that it could use that information to dun him for a fraudulent account that he does not owe and report false information

3

about him to the CRAs and third parties accessing the CRAs' credit report data.

The Plaintiff has suffered general economic damages in the form of lost credit capacity and decreased credit scores. Plaintiff has suffered general damages in the form of damage to reputation. Under the FCRA, the CRAs can use their credit report data to produce lists of people that are sold to credit card companies and other lenders. Technology allows the credit bureaus to produce lists of all types and credit profiles. Upon information and believe, Plaintiff was most likely denied the opportunity to receive pre-screen offers for credit because of the decreased credit scores caused by the derogatory reporting of the NCS collection account. The Plaintiff may not have met certain criteria because of the derogatory reporting. In addition, Plaintiff, may have suffered harm by risk-based pricing for insurance that may have been granted on less favorable terms.

Plaintiff was unable to refinance his mortgage from 4.35 to a lower interest rate of approximately 2.75 – 3% because of the derogatory collection account reporting on his credit report, that resulted in a low credit score of 671.  Plaintiff was advised that because of his credit score he would not qualify for the best rate.  One of the main risk factors was that a derogatory collection or public record had been filed. This information was provided by Experian. (Plaintiff_000001 – 000003)  The reduction in interest rate would have been approximately $300 per month and over the life of the loan would have been a savings of approximately $108,000.

Plaintiff incurred out-of-pocket expenses in sending Certified mail to the CRAs, traveling to send his Certified mail, and expending valuable time attempting to correct NCS's violations of the law.

In lieu of actual damages, the jury could award statutory damages between $100 and $1,000 on the FCRA claims.  15 U.S.C. § 1681n.

Plaintiff also seeks punitive damages which are unliquidated in this matter based upon the

factors set forth in *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2004). Punitive damages will be proven through the Plaintiff's testimony, that of his expert witness, the documents produced in this case and through the testimony of the employees of NCS. The lowest FCRA punitive damage verdict of which Plaintiff's counsel is aware was $10,000.00 and the highest was $18,000,000.00.

***Supplemental Response:***

> ***Plaintiff stands on his answer.***

**INTERROGATORY NO. 2:** Are you claiming any additional damages, losses or expenses, whether economic or otherwise, from NCS? If so, state in detail the nature and amount of such additional losses or expenses, explain how you calculated these amounts, and identify any documents or other evidence which support such additional damages, losses or expenses as well as any witnesses you expect to testify in support of such damages.

**ANSWER:**

> Plaintiff identifies and incorporates his response to Interrogatory No. 1.

***Supplemental Response:***

> ***Plaintiff stands on his answer.***

**INTERROGATORY NO. 3:** Please state with specificity the number of calls you or your household received from NCS, the dates of each such calls, the phone number that received such call, whether a voicemail was left as a result of the call, or whether you (or anyone else) spoke with NCS for each call.

**ANSWER:**

> Plaintiff's household never received a call directly from NCS.  It was only upon receiving the information about his credit score while attempting to refinance that Mr. Ward found out about

the derogatory reporting of the NCS account.   Mr. Ward's now wife, Megan Henderson contacted NCS and upon doing so she was advised that NCS was no longer dealing with the account, and she was advised to contact Brett Boreland Law Firm.   All communications, thereafter, were through the Boreland Law Firm.

Plaintiff identifies and incorporates the Defendant's own records and logs with regard to the information sought in this request.

**INTERROGATORY NO. 4:** Describe with specificity all communications that you have ever had with NCS in connection with the collection of the subject Account, including in your response the (a) date and time of the communication, (b) manner of all such communications (in person, phone, email, text, otherwise), (c) the complete substance of such communications, (d) the identity of the persons who participated in or witnessed such communications, and (e) an identification of all documents that constitute, or refer or relate to, such communications (such as notes, calendar, entries, phone or service provider statements, call logs, screen shots, etc.).

**ANSWER:**

- Ms. Henderson contacted National Credit Systems to inquire about the reported collection. NCS refused to provide any information whatsoever other than referring them to the Brett Borland Law Firm: Address: 2440 Sandy Plains Rd, Bldg. 1, Suite 200, Marietta, GA 30066, Phone:(888) 281-6788

- On or about June 11, 2020, Ms. Henderson (now Ward) contacted the law office of Brett Borland and spoke with "Virginia".  Virginia advised of the FDCPA Disclosure and that they were attempting to collect a debt resulting from a lease of a residence located in Texas – 229 Cliff Heights Circle, Dallas, TX 75232.  Ms. Henderson was further informed that the house had been leased through Main Street Renewal and that proof of income from

Neiman Marcus pay stubs were used as identification as well as a statement of social security benefits. Ms. Henderson was also advised that Mr. Ward's social security and personal information was also used to obtain the rental. Further, Ms. Henderson was advised that their Colorado address. This was very concerning because Mr. Ward had never received any communications about this property and subsequent collection until he viewed his credit report. Ms. Henderson was advised that Mr. Ward would need to complete an affidavit of fraud/identity theft and send two forms of identification as well as a signature to the contact email of rchin@bborlandlaw.con. Further, Ms. Henderson was advised that it would take approximately 2 weeks to receive an update from their office.

- On June 12, 2020 at 4:28 p.m. Ms. Henderson emailed Mr. Chin Mr. Ward's fraud affidavit with a copy of his identification with signatures. Ms. Henderson advised that if he needed her to provide their mortgage statements for their home in Colorado during the time of the theft to please let her know. (Plaintiff_000013)

- On or about June 12, 2020, Ms. Henderson contacted Main Street Renewal to inquire about the property and to try and gain more information. Ms. Henderson spoke with Curtis, who identified himself as the Property Manager. Curtis advised that he would send the info to the general manager. To date the general manager has never returned the call. Thereafter, Mr. Ward contacted the social security office on or about June 15, 2020 and he was informed that there had not been any activity or benefits paid related to his social security number.

- On June 12, 2020, Mr. Ward filed an Identity Theft Report with the FTC, Report # 119477722 (Plaintiff_000006 – 000012) Mr. Ward provided the Identity Theft report to the Borland Law Firm and contacted Experian, Equifax and Trans Union to request that a

7

fraud alert be placed on his credit file. (Plaintiff_000006 – 000012).

- On June 17, 2020, Ms. Henderson called Main Street Renewal to follow up on her previous communication.  Ms. Henderson spoke with Melanie who stated that she would send the information to "Curtis", however, Curtis has yet to return the phone call or communicate in any way.

- On or about June 22, 2020, Ms. Henderson again called Main Street Renewal and asked to speak with General Area Manager Keith to correct tenant history and gather more information. Ms. Henderson spoke with Monica who transferred her to Level 2 management. Ms. Henderson, thereafter, spoke with Catherine to request tenant history services. Catherine looked up eviction information to determine if the tenants using Mr. Ward's name were actually evicted but she could not determine what happened.

- Ms. Henderson contacted Terrant County Courts in Arlington to determine if Mr. Ward's name was associated with an eviction or if there is any open warrants. Ms. Henderson spoke with Maria who advised her to contact Dallas County Courts. Ms. Henderson contacted Dallas County Courts Precinct 1 and was advised that there were no outstanding warrants, however she could not provide any information regarding an eviction.

- Ms. Henderson, thereafter, contacted Virginia at Brett Borland Law Office to obtain an update. Ms. Henderson was advised that National Credit Services still claimed that the account was correct. Ms. Henderson sent paystubs from Colorado for time in question and a statement regarding Mr. Ward's employment in Colorado to confirm that Mr. Ward had never been employed by Neiman Marcus.

- On June 29, 2020, Ms. Henderson called Main Street Renewal again and requested to speak with a supervisor. Ms. Henderson was able to speak with someone in level 2 management.

8

Ms. Henderson requested to speak to someone who handled collections but was unable to do so. Ms. Henderson was advised by the supervisor that they would send a message to their investigation team. Thereafter, Ms. Henderson was transferred to collections and spoke with Aaron. Arron stated that at this point there was nothing he could tell her since they have already written off the loss.

- On June 29, 2020, Ms. Henderson sent Richard Chin an email attaching Mr. Ward's paystubs from December 2019 through March 2020. Ms. Henderson also provided their December mortgage statement with their current address. Ms. Henderson advised that Mr. Ward had resided at this address for the past 10 years. Ms. Henderson requested that the collection be removed and that she was not sure how Mr. Ward's identifying information was acquired. Ms. Henderson advised that her and Mr. Ward had traveled to Texas in October, 2019 and at the time Mr. Ward provided his social security number to his daughter so that his daughter, Quen Green could list him as a beneficiary with her employment. Ms. Green was working in Dallas for Neiman Marcus, in the accounting department. Ms. Henderson further advised that it was their belief that whoever had stolen Mr. Wards identity committed a forgery by using his daughter's paystubs but adding Mr. Ward's name. Ms. Henderson advised at the time same the subject property was rented, someone had purchased a car using Ms. Green's identifying information. Ms. Henderson advised that Mr. Ward had contacted the social security office and had been informed that there were no current benefits being paid that were associated with Mr. Ward's social security number. Ms. Henderson advised that another important fact was that the employment number listed on the lease application is Mr. Ward's daughter's instead of Neiman Marcus. Ms. Henderson advised that it seemed that there was no employment verification and just

9

an acceptance of paystubs that are falsified.  Ms. Henderson pleaded with Main Street Renewal and anyone else involved in this case to contact Neiman Marcus to confirm that Mr. Ward had never been employed with its company.  Further, that someone should confirm Mr. Ward's residency in Colorado since he had lived there over 30 years. Ms. Henderson requested a thorough investigation into this matter so that the fraudulent account could be cleared from Mr. Ward's credit reports.  (Plaintiff_000014 – 000015; 000018)

- On June 29, 2020, Ms. Henderson called the Dallas Police Department to file an identity theft report and was required to leave a message.  Sometime thereafter, Ms. Henderson received a phone and was advised that they would not be able to take a report and referred her to Colorado.   Ms. Henderson contacted the Arapahoe County Sheriff's office in Littleton Colorado and was advised that they would need to file the report in state that the crime occurred.

- Ms. Henderson emailed Mr. Chin and forwarded the email that had been sent to him on June 29, 2020. (Plaintiff_000014)

- On July 15, 2020, Mr. Chin sent Ms. Henderson an email to advised that he had received her email but that he was unable to access the account in question and requested that an account number be provided. (Plaintiff_000015 – 000016)

- On or about July 21, 2020, Ms. Henderson called Neiman Marcus to try and speak with the Human Resources Department.  Ms. Henderson spoke with Marcy and was advised that she would send the request to HR.  A representative of HR called Ms. Henderson back to advised that they could not provide employment verification to prove that Mr. Ward had never been an employee.

10

- On July 21, 2020, Ms. Henderson followed up with the Borland Law Firm and was advised that there were no updates with regard to the account. Ms. Henderson thereafter contacted Richard Chin at the Borland firm and emailed him Mr. Ward's paystubs to verify that he was employed in Colorado at the time the lease was in place. Mr. Chin advised that he would have his client review the new information and give her a call back in two weeks.

- On July 24, 2020, Ms. Henderson emailed Mr. Chin about the message she had left for him several days prior. Ms. Henderson provided Case #4273229 (Robbin Ward). Ms. Henderson advised that she was attaching proof of employment letters and payroll information to the email. Ms. Henderson advised that she believed that if Main Street Renewal had completed an employment verification, they would have found the information to be fraudulent. Ms. Henderson advised that she was happy to provide him with whatever documentation that might be helpful to clear Mr. Ward's name so that the fraudulent account could be removed from his credit report. (Plaintiff_000016. 000020 - 000024)

- On July 24, 2020, at 10:47 a.m. Mr. Chin emailed Ms. Henderson to "Please have the consumer fill out and return the attached ID Theft/fraud affidavit with proof of identity (copy of Driver's license or SS Card). Our office would then forward the information to our client for research and advise." (Plaintiff_000016 - 000017)

- On July 24, 2020 at 11:50 a.m., Ms. Henderson responded to Mr. Chin and advised that she had already sent the requested items in June. Ms. Henderson advised that she had been working with Virginia. Ms. Henderson advised that if he could not locate the items to let her know, but according to Virginia, these items had been reviewed already. Ms. Henderson further advised that they had frozen Mr. Ward's credit reports, placed fraud

11

alerts. Filed out an identity theft form and filed with the FTC and sent letters to all three credit reporting agencies, spoke with local courts in Texas, filed a complaint with the BBB and sent a certified letter to the leasing agency.   Ms. Henderson advised that they had requested all documentation regarding this case but had only received the lease agreement, collections statement, and a breakdown of expenses related to the fraud.  Ms. Henderson requested a complete folder of these records including the money order that was signed and any other information as it pertains to the lease that was obtained by fraudulent means. (Plaintiff_000017)

- August 11, 2020 Ms. Henderson sent Mr. Chin an email.  Ms. Henderson advised that she had left a voice mail regarding the collection action against Mr. Ward.  Ms. Henderson confirmed that she had received the paperwork that was sent, and she had a chance to review the documents.  Ms. Henderson advised that the social security statement was fraud. Ms. Henderson advised that Main Street Renewal had not done its due diligence in vetting/investigating the information provided.  The document has an address located at the bottom of the letter in Littleton, Colorado did not exist.  Ms. Henderson requested that they be provided with a copy of the investigation team's report.  Further she asked why they had never received any notice of collections, paperwork or any notifications whatsoever since their home address had been used to obtain the lease with Main Street Renewal. (Plaintiff_000019; 000069 – 000103)

- At times thereafter dates uncertain, Ms. Henderson spoke with Mr. Chin on several other occasions and was advised that National Credit Systems still refused to further investigate the identity theft claim.

**INTERROGATORY NO. 5:** Please list and identify each and every statute, ordinance, code, regulation, or law, if any, which you contend was violated, either in whole or in part, by NCS regarding its actions or communications with you. For each such statute, ordinance, code, regulation, or law identified, please specifically describe the facts and identify the documents upon which you will rely to allege any such violation.

**ANSWER:**

See response to # 6 below.

**INTERROGATORY NO. 6:** Please state all facts and identify all documents to support your contention that NCS violated the FCRA.

**ANSWER:**

In this case, NCS, clearly violated the Fair Credit Reporting Act. The FCRA requires that a furnisher of information conduct what the Fourth Circuit has defined as a "detailed inquiry or systematic examination*." Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004).

In each instance that Mr. Ward made a dispute through Experian, Trans Union and Equifax, NCS was mandated by law to conduct such systematic investigation. NCS could have checked its own records to dig deeper to see that the Plaintiff was not the maker of the underlying account it sought to collect. However, NCS chose to ignore Plaintiff's disputes and reported back to the CRAs the same derogatory information it previously reported about Mr. Ward.

In this case, the Defendant, NCS, erroneously furnished inaccurate, derogatory information that was reported on Plaintiff's credit reports. After Plaintiff disputed the inaccurate information with the consumer reporting agencies ("CRAs"), Defendant failed to reasonably investigate his disputes and correct Plaintiff's credit reports, in violation of 15 U.S.C. § 1681s-2(b)(1)(A). In addition, NCS failed to note and respond to the CRAs to advise that the account was in dispute,

13

thereby failing to correctly report the results of an accurate investigation to the CRAs in violation of 15 U.S.C. § 1681s-2(b)(1)(C) and (D).   Likewise, Defendant also failed to accurately correct and update or delete the Plaintiff's information after receiving his disputes from Trans Union and Experian – a violation of 15 U.S.C. § 1681s-2(b)(1)(E).

Accordingly, the FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69.  Although Defendant specializes in collecting rental property debts, Defendant provided its "investigators" with no training at all about the types of identity theft that occurs in the industry, i.e. synthetic, digital, true name, etc., and how to detect that type of fraud.  Defendant improperly trained its employees to simply copy whatever the rental company says, and to ignore all other evidence.  Defendant also improperly trained its employees to assume that merely because the rental company had a copy of Plaintiff's driver's license that it automatically meant the account was legitimate and provided no training about detecting online application fraud such as the submission of IDs obtained in data breaches or IP address spoofing.

Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).  A federal jury recently found that Defendant willfully violated the FCRA in the Bumpus v NCS case in GA, by blindly relying on the original creditor, a practice that still goes on to this day at NCS.

As detailed above, the FCRA section at issue here, and informative guidance, have been around now for decades.  The language of § 1681s-2(b) has not changed. The FCRA's caution of

14

the "grave responsibilities" to ensure accuracy has not changed.

Once NCS is on notice that it may be reporting inaccurate information, it must do more than merely check its computerized records in response to a dispute. It should have, for example, examined the communications with the Plaintiff and realized that its own records were wrong and thereafter correct the status of the account. Yet NCS did not and thereafter verify the inaccurate account status.  In spite of the fact that Plaintiff's spouse told NCS repeatedly to call Neiman Marcus to confirm that Plaintiff never worked there, NCS's polices state that the investigators are never allowed to investigate employment, see NCS 000381-382.  At deposition, NCS's Vice President Ron Sapp stated it would violate collection laws, i.e., the FDCPA, to call Neiman Marcus, but this is simply not true.  *See e.g., Marx v. Gen. Revenue Corp*., 668 F.3d 1174, 1177 (10th Cir. 2011) (no FDCPA violation for debt collector to verify employment with a third-party company).  Additionally, Defendant failed to train its employees how to spot fake paystubs and fake documents, when the paystubs in this case are obviously fake.

The Plaintiff identifies and incorporates the Defendant's own record, logs and policies and procedures it failed to perform with regard to the disputed account.

**INTERROGATORY NO. 7:** Identify with specificity any loans, lines of credit, or Mortgage Financing or Mortgage Refinancing Plaintiff was attempting to apply for or did apply for - and the specific results for each such application. This request is limited from 2017 through present.

**ANSWER:**

Prior to contact with NCS, Mr. Ward was in the process of refinancing the house he owns with his now wife, Megan Henderson to lower their interest rate. When the Mortgage Company representative pulled his credit, they contacted Mr. Ward to advise that a collection account was reporting on his credit report (National Credit Systems). (Plaintiff_000001 – 000003)

15

**INTERROGATORY NO. 8:** Identify the names of all persons that you intend to call at trial of this matter and provide the current (and/or last known) address and phone number(s) for such persons and the scope of their anticipated testimony in this matter.

**ANSWER:**

Plaintiff nor his attorneys have decided who they will call as witnesses at the trial of this matter.  Plaintiff will supplement this response with his Fed. R. Civ. P. 26(a)(3) Disclosures at the appropriate time pursuant to the scheduling order.   Plaintiff identifies his Fed. R. Civ. P. 26(a)(1) and Supplemental 26(e) Disclosures with regard to potential witnesses.

**INTERROGATORY NO. 9:** For any threatened and/or actual litigation that you have been a party to during the last ten (10) years, please provide the: (a) names of the parties involved; (b) case number and filing date, if applicable; (c) and the outcome of such matter (i.e., dismissed, settled, pending, judgment entered). This interrogatory specifically includes any demand or complaints made by you or your attorney or other agent to any creditor, debt collector, or collection agency.

**ANSWER:**

Plaintiff has not been involved in any other litigation other than in instant action.

**INTERROGATORY NO. 10:** Please state Quen Green's dates of employment and job titles with Neiman Marcus or any of its affiliates, and the nature of her employment. If Quen Green is no longer employed with Neiman Marcus, please state whether Quen Green voluntarily resigned or was terminated. If a current employee, please provide contact information for Quen Green's supervisor.

**ANSWER:**

To the best of the Plaintiff's knowledge, Ms. Green was employed with Neiman Marcus in

the accounting department from 2015 – 2022.  Ms. Green resigned from her position with Neiman Marcus as of July 2022 when she accepted a higher paying job with a different employer.

**INTERROGATORY NO. 11:** Please provide the full name (including any aliases), address (home and business), telephone number (home, mobile, and business), of all family members, friends, acquaintances, or associates with whom you have spoken with regarding NCS, the Account, or this Litigation.

**ANSWER:**

Plaintiff's wife, Megan Henderson Ward, 5390 South Sherman Street, Littleton, CO 80121.

*Supplemental Response:*

*Plaintiff's daughter, Quen Green, 801 S. Polk St. Desoto, TX*

*Plaintiff's Employer:  Scott Noyes, General Manager, and Jeff Madsen, both co-owners of EMJD Corporation, 4950 South Windermere Street, Englewood, CO 80110.*

**INTERROGATORY NO. 12:** If you have denied any portion (or admitted with a qualification) any of Defendant's Requests for Admission propounded to you, please state all facts and identify all documents that support each denial.

**ANSWER:**

RFA #1 – Plaintiff is without sufficient knowledge to either admit or deny this request because Plaintiff did not open the underlying account.  Further, NCS has refused to communicate with him other than to advise that he would need to contact the Borland Law firm about the account.

RFA #3 – Plaintiff is without sufficient knowledge to either admit or deny this request because he has no idea who fraudulently leased the property that is the underlying account in collection.

17

*Supplemental Response – Plaintiff denied this request because Quen Green does not owe the original creditor money.*

RFA #4 – Plaintiff denied this request because he did not own a 2010 Chevrolet Impala in January 2019.

RFA #5 – Plaintiff is without sufficient knowledge to either admit or deny this request.

RFA #6 – Plaintiff is without sufficient knowledge to either admit or deny this request that his daughter has been convicted of a crime.

*Supplemental Response:    Plaintiff has been informed by Quen Green that she has never been convicted of a crime.*

RFA # 7 – Plaintiff has objected to this Request because it is overly broad as propounded and seeks information beyond the scope of the issues or consumer reports in this case and is irrelevant to the Defendant's violations in this case.

RFA #8 - Plaintiff is without sufficient knowledge to admit or deny that his daughter had been convicted involving identity theft crimes.

*Supplemental Response:  Plaintiff has been advised by his daughter that she has never been convicted of a crime and has only received traffic tickets in the past.*

RFA #10 – Plaintiff denied that his daughter used his identity to rent the property through Main Street Renewal because her identity was also stolen around the same time and the identity thief purchased a car fraudulently using her personal identifying information.

RFA #11 – Plaintiff denied this request because he does not believe his daughter stole his identity.

RFA #12 – Plaintiff has denied that phone number 469-263-7309 belongs to him.  Plaintiff has never had this phone number.

18

RFA #14 – Plaintiff is without sufficient information to confirm this email address, he recalls setting up a Gmail address a long time ago but cannot remember what the email address was at the time.  In any event this is not an active email address that he uses or has any access to.

RFA #15 – Plaintiff has denied knowing an individual by the name of Marcy Feagin. Plaintiff does not know who this person is.

RFA #16 – Plaintiff denies that he receives social security benefits because he is not of the age to received social security benefits nor is he receiving any type of benefits paid by social security.

RFA #17 – Plaintiff is without sufficient knowledge to know if his daughter receives social security benefits.

*Supplemental Response:  Plaintiff has been advised by his daughter that she does receive social security benefits.*

RFA #18 – Plaintiff denies this request as Megan Henderson does not receive social security benefits.

RFA #19 – Plaintiff has denied this request because he has never lived in Texas.

RFA #21 – Plaintiff denied this request because he has never visited his daughter at 229 Cliff Heights Circle, Dallas, TX 75241.

RFA #22 – Plaintiff denied this request because his daughter has never resided at this address.

RFA #23 – Plaintiff is without sufficient information to either admit or deny this request – Plaintiff is aware that his daughter has been in accidents, but he does not know specifically that it was in 2019.

*Supplemental Response:        Plaintiff has been advised by his daughter that she was not*

19

*in a car accident in 2019.*

**INTERROGATORY NO. 13:** For each and every position that you have held during the last ten (10) years, please provide the: (a) employer name, (b) mailing address, (c) phone number, (d) job title, and (e) dates of employment.

**ANSWER:**

Plaintiff was the Shipping Manager with GBC, Inc. from 2010 – 2016 until the company went out of business.

From March 2016 through the present Plaintiff is employed as the shipping manager with EMJD Corporation.

**INTERROGATORY NO. 14:** Identify all addresses where you have lived during the last seven (7) years, the dates during which you lived at each address, and all other persons who lived at those addresses concurrently with you.

**ANSWER:**

Plaintiff has lived at 5390 South Sherman Street, Littleton, CO 80121 for the past 10 years.

*Supplemental Response:*

*Megan Henderson has lived at this address since July 1999.*

**INTERROGATORY NO. 15:** Have you ever been convicted of a crime (by way of a no-contest or guilty plea, trial or otherwise)? If so, please list the charge, the jurisdiction in which you were charged and the date of such conviction.

**OBJECTION**:

**This interrogatory is overly broad as propounded and seeks information beyond the scope of the issues or consumer reports in this case and is irrelevant to the Defendant's violations in this case.**

20

**ANSWER:**

Plaintiff stands on his objection.

*Supplemental Response:*

***Plaintiff stands on his answer.***

**INTERROGATORY NO. 16:** If Plaintiff has been examined or treated by any physician, medical doctor, osteopath, dentist, hospital, clinic, radiologist, therapist, psychologist, psychiatrist, counselor, chiropractor, emergency room, medical care provider and any other practitioner of the healing arts on or after the date of NCS's actions alleged by you, for any injury, illness, disease or complaint allegedly resulting from NCS's conduct, please state the following:

(a) The name, business address and telephone number of each such person or entity;

(b) The dates of each consultation, examination or treatment;

(c) The reason for the consultation, examination or treatment; and

(d) The cost for the consultation, examination or treatment.

**ANSWER:**

Plaintiff has not received medical treatment for his emotional distress damages.

**INTERROGATORY NO. 17:** Identify all liens, credit denials, or Credit offered to you at unfavorable terms you allege to have incurred as a result of NCS's conduct.

**ANSWER:**

Plaintiff was unable to refinance his mortgage from 4.35 to a lower interest rate of approximately 2.75 – 3% because of the derogatory collection account reporting on his credit report, that resulted in a low credit score of 671. Plaintiff was advised that because of his credit score he would not qualify for the best rate. One of the main risk factors was that a derogatory

collection or public record had been filed. This information was provided by Experian. (Plaintiff_000001 – 000003)

**INTERROGATORY NO. 18:** Please state the name of any credit repair organizations that you have used or worked with in the last ten years, including, the a) name of such credit repair organization and when you engaged with them; b) the accounts or amounts that you requested that credit repair organization help you to resolve; and c) the name and contact details of anyone that you spoke or worked with at that credit repair organization.

**ANSWER:**   Not applicable, Plaintiff has not used a credit repair organization.

**INTERROGATORY NO. 19:** Please describe when and how you found your attorneys, both Mr. Osborne and/or any other attorneys you may work with regard to this lawsuit, including when you first spoke or communicated with their office and with whom you spoke.

**OBJECTION:**

**Plaintiff objects to this interrogatory as intended to harass, is disproportional to the needs of the case, not reasonably calculated to lead to admissible evidence, and seeks material protected from disclosure under attorney-client privilege and the work product doctrine.**

**ANSWER:**

Plaintiff stands on his objection.

*Supplemental Response:*

*Plaintiff stands on his answer.*

**INTERROGATORY NO. 20:** Please state with specificity why you did not submit a police report regarding the alleged identity theft.

**ANSWER:**

Plaintiff did not submit a police report because when he contacted the police department in Dallas, they informed him that he needed to file the report in the state where he resided, not the state the crime took place. Plaintiff then reached out to the Arapahoe County Sheriff's office in Littleton, Co (his place of residence) and he was advised that he needed to file a report in the state the crime took place. Plaintiff was unable to file a report since the police departments in both states would not complete the report for him.

*Supplemental Response:*

**Plaintiff stands on his answer.**

**INTERROGATORY NO. 21:** Describe any problems, issues, or negative occurrences with your credit or finances that impacted you from January of 2017 through present.

**ANSWER:**

Plaintiff identifies and incorporates his response to Interrogatory No. 17.

Thereafter, Plaintiff did not make any other attempts to apply for credit for fear of being humiliated. At one point Plaintiff needed to help Ms. Henderson refinance her vehicle. However, before beginning the application process they had to shop around to find a lender that would only pull credit reports and scores from the CRA that had removed the collection account from his credit reports. Plaintiff was humiliated and embarrassed to explain the situation and justify why he may not receive financing due to lower credit scores with the other two CRAs.

**INTERROGATORY NO. 22:** Please state with specificity all telephone numbers and email addresses that you or any cohabitant opened or utilized, including the date such account was opened and/or closed and the service provider. This query is meant to include those who may have customarily and temporarily cohabited with the Plaintiff and is limited from 2017-present.

**ANSWER:**

Megan (Henderson) Ward 303-204-3632, [megagain4@gmail.com](mailto:megagain4@gmail.com)   Robbin Ward 219-902-6324, [robbinward96@yahoo.com](mailto:robbinward96@yahoo.com)

*Supplemental Response:*

*Plaintiff stand on his answer.*

**INTERROGATORY NO. 23:** Please state with specificity the substance, content, and dates for all communications, whether written or oral, with Quen Green, including the name and contact information for all other persons present for such communications. This query is limited from 2017- present.

**ANSWER:**

Plaintiff has spoken to his daughter by telephone or in person, during visits.  Plaintiff normally speaks with his daughter 2 to 4 times a month.

*Supplemental Response:*

*Plaintiff is producing screen shots that he has on his phone with his daughter from 2018 to the present. (Plaintiff_002702- 002769)*

**INTERROGATORY NO. 24:** Please state all addresses, phone numbers, and email addresses utilized, opened, or associated with Quen Green from 2017 through present.

**ANSWER:**

Plaintiff is unaware of all of his daughter's addresses or telephone numbers since 2017. However, her current number is 469-263-7309

*Supplemental Response:*

*Plaintiff states that after he returned from his honeymoon, he spoke with Quen Green, and she provided the following addresses and emails as far back as she could remember:*

**Laquenallen@yahoo.com**

**Quengreen8@gmail.com**

**801 S. Polk St. Desoto, TX (current address)**

**1310 Cockrell Hill Road Dallas, TX 75211**

**5950 Tret Drive Dallas, TX 75211**

**624 Priscilla Lane, Desoto, TX 75115**

Respectfully submitted,

**ROBBIN WARD**

By:_____ */s/ Craig C. Marchiando*_____
             Counsel

Leonard A. Bennett, Esq., VSB #37523
Craig C. Marchiando, Esq., VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Matthew R. Osborne
Matthew R. Osborne, P.C.
11178 Huron Street, Suite 7
Northglenn, CO 80234
Telephone:  303-759-7018
Facsimile: 720-210-9870
Email:  matt@mrosbornelawpc.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this  day of September 2022, I served the foregoing via electronic mail to all counsel of record.

Katrina M. DeMarte
DeMarte Law
PMB 6338
39555 Orchard Hill Place
Suite 600
Novi, MI 48375-6338
Email:  katrina@demartelaw.com

_____/s/_____
Craig C. Marchiando, Esq., VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: craig@clalegal.com
*Counsel for Plaintiff*
