**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

ROBBIN WARD

Plaintiff,

vs.                                                                      CASE NO. 1:21-cv-02597-LTB

TRANSUNION, LLC, *et al.*,

Defendants.

**NATIONAL CREDIT SYSTEMS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AT ECF 55**

Defendant, National Credit Systems, Inc. ("NCS"), by and through its undersigned counsel, hereby files its Reply Brief in Support of Its Motion for Summary Judgment, docketed at ECF 55, and respectfully moves this Court to enter judgment in its favor pursuant to Fed. R. Civ. P. 56 for the reasons that follow:

**I. INTRODUCTION**

Plaintiff seeks to hold NCS accountable for furnishing information regarding an account opened under the name of Robbin Ward with Main Street Renewal (the "original creditor" or "MSR"). There is also no record that the Plaintiff contacted MSR in this case, who stands in a superior position to both the consumer reporting agencies ("CRAs") and NCS to determine the viability of Plaintiff's identity theft claims. Nor is there evidence of damages – actual or otherwise (and therefore there cannot be Article III Standing).[1] Response to Plaintiff's Statement of Undisputed Facts (hereinafter, "RPSUF") No. 35, 36. The Plaintiff, having no injury or harm fallen on him *whatsoever* from NCS's actions, filed suit just over a year following his last dispute, having not exhausted all dispute avenues with MSR. ECF 1, RPSUF 14,

---

[1] "A violation of a statute that causes no harm does not trigger a federal case. That is one of the lessons of *Spokeo.*" *Meyers v. Nicolet Restaurant of De Pere, LLC,* 843 F.3d 724, No. 16-2075, 2016 WL 7217581, at *3, n. 3 (7th Cir. Dec. 13, 2016).

35. NCS employees have substantial training and must follow specific steps when conducting a dispute investigation. RPSUF 11, 56, 28, 29, 56; *see also* Declaration of Ron Sapp, ECF 56-2, ¶¶ 31-66. Plaintiff has identified nothing about NCS's policies – or the actions in this matter – beyond mere conjecture by blanketly asserting that "had NCS just called Neiman Marcus," they could have verified that Plaintiff was never employed there. However, by Plaintiff's own admission, there is no evidence that Neiman Marcus would have ever even responded to NCS – and they *did not* respond to the Plaintiff. ECF 55-6, pg. 10.

Because NCS's investigation reviewed all information provided to it, or which it was reasonably likely to be able to obtain, this does not rest as a fact-based dispute. Rather, it is a legal one, which Plaintiff should have brought to MSR or a court having jurisdiction over both MSR & the Plaintiff. He did not. Additionally, because he has not provided proof of damages in any articulable way – Plaintiff cannot make out a claim for a negligent violation under the FCRA, and he also cannot have *factual* standing under Article III. The Plaintiff has been purposefully vague as to his supposed "damages", with the intention that any ambiguous context would allow for colorful interpretation by this Honorable Court.[2]

## II.    ARGUMENT

An investigation of the disputed information "requires some degree of careful inquiry by furnishers of information." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016). Importantly, however, what constitutes a reasonable investigation of an identity theft dispute "will vary depending on the circumstances of the case" and "in part on the status of the furnisher—as an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line buyer— and on the quality of documentation available to the furnisher." *Id.* at 1302.

---

[2] Recovery of damages for emotional distress typically requires some type of compelling evidence, such as medical records or evidence of counseling, not just conclusory testimony, so it too is difficult to establish. *See Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503-04 (4th Cir. 2007) ("[A]lthough specifically recognizing that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, we have required a plaintiff to 'reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements.'").

Aside from showing that their investigation was not reasonable, a consumer must also establish the inaccuracy of the reported information. *See Felts v. Wells Fargo Bank, N.A.,* 893 F.3d 1305, 1313 (11th Cir. 2018) ("[A] plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, . . . that the information it reported was inaccurate or incomplete . . . .").

The FCRA only requires furnishers to investigate as to the "completeness" or "accuracy" of the information which it furnishes. It *does not* require furnishers to take "extraordinary means" to investigate a dispute or disputed items. *Farren v. RJM Acquisition Funding, LLC*, 2005 U.S. Dist. LEXIS 15230, \*\* 20-21 (E.D. Pa. 2005). Reasonable investigations are simply those which a prudent person would undertake in the same or similar circumstances. *Seamans v. Temple Univ.*, 744 F.3d 853, 864-865 (3d Cir. 2014); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010). Moreover, the scope of an investigation – and what is or is not reasonable - is governed by the dispute and dispute codes as submitted by the consumer to the consumer reporting agencies – as it is then relayed to the furnisher. *Van Veen* v *Equifax* Information, 844 F. Supp. 2d 599, 605 (E.D. PA 2012). Furnishers can investigate reasonably and still not uncover incorrect information. *Id.* Here, it is not disputed that there was no detail and there were no documents attached to the June 2020 dispute. Such a dispute provides little for any investigator to go off of, and based upon the little detail and no documents, NCS confirming Robbin Ward's information matching that of the obligor was perfectly reasonable. RPSUF 11, 16.

To support his claims, Plaintiff cites to *Wood* – which is different than the case at bar. In *Wood*, the consumer was disputing with the *original creditor* - who stands in the best possible position to resolve any claims regarding culpability as it relates to an account and identity theft. *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 854 (E.D. Va. 2017). Additionally, he claims that *Wood* stands for the proposition that a family member who could potentially be culpable renders identity theft to be *more likely*. *Id.* However, that is not what *Wood* states. The *Wood* court concluded that there was no evidence that the

consumer's mother engaged in identity theft, and found the consumer's dispute to be more reasonable because of that. *Id.* There were also police reports in *Wood,* and compliance code XB was not present as it is here (but rather, the investigation verified as owed without retaining a dispute code). Indeed, the "conduct sufficient within one circumstance may be insufficient within another." *Id.* at 851.

Plaintiff also relies on *Adkins* to support their propositions. However, *Adkins* actually supports NCS's defense and is instructive. *Adkins v. SLM Corp*., No. 22-2082-SAC-TJJ, 2022 U.S. Dist. LEXIS 135623 (D. Kan. July 29, 2022). In *Adkins*, the ultimate holding was that there could be no violation of the FCRA where one would be required to "resolve legal disputes about the validity of the underlying debts" furnished. *Id.* at *12, *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008). Specifically, the "duty to reasonably reinvestigate does not compel it to resolve what amounts to a collateral attack on the legal validity of the creditor's claim that the named consumer debtor is liable for this debt." *Adkins v. SLM Corp.*, 2022 Dist. LEXIS at *12.

In *Adkins,* the consumer disputed liability as to a student loan, but <u>*did not*</u> assert the unauthorized use of his information by his family members.[3] *Adkins*, generally. The defendant in *Adkins*, Innovis, argued that no reasonable investigation would reveal that the consumer was not a party to the underlying contract because a) the consumer's information appeared on the student loan; b) the consumer did not allege theft; and c) the original creditor verified the account as belonging to the consumer. *Id.* at *14. Innovis further stated that the only way to determine whether or not the consumer agreed to the debt would require asking not only the consumer, but their family members and others, under oath, exactly how the consumer's identifiers were used in the student loan applications – by mistake, identity theft, collusion, or otherwise. *Id.* The court stated as follows:

> In short, the Tenth Circuit follows the other courts in holding that a[n] . . . investigation is
> not unreasonable just because it failed to make a legal determination whether the debt
> validly applies to the debtor when the debtor's name is listed on it. The court finds Innovis's

---

[3] Here, Plaintiff also claims that his daughter could not have stolen his identity. RPSUF 43.

arguments as summarized to be persuasive in showing this line of precedent applicable here and the plaintiff's opposing arguments unconvincing.

\* \* \*

Only after such a far-reaching investigation could Innovis have been able to determine whether the student loan debt appearing on the plaintiff's report validly applies to the plaintiff. Obviously, [the original creditor], "stands in a far better position to make a thorough investigation of a disputed debt."

\* \* \*

The plaintiff's claimed inaccuracy is not straightforward, fact-based, and could not be resolved through a reasonable investigation. Instead, Innovis would have to engage in a far-reaching investigation of matters beyond its control and then act as a legal tribunal in resolving factual issues that ostensibly could require disregarding the contents of legal documents.

*Id.* at \*17, 19-21, *citing Denan v. Trans Union LLC*, 959 F.3d 290, 297 (7th Cir. 2020) (internal quotation marks and citation omitted). Moreover, *Adkins* found that "[i]f the inaccuracy involves factually disputed matters to be adjudicated by a tribunal, how then should we call the same inaccuracy something for Innovis simply to resolve as part of its own investigation", and that where there is a dispute over more than just "the contents of a document, the existence and easily ascertained meaning of court orders, or some other truly objective matter," which is indicative of a legal – and not a factual – dispute. *Adkins* at \*19-21, *citing Soyinka v. Equifax Information Services, LLC*, 486 F.Supp.3d 1232, 1238 (N.D. Ill. 2020) (internal citations omitted), *aff'd, Chuluunbat v. Experian Information Solutions, Inc.*, 4 F.4th 562 (7th Cir. 2021).

As such, here, just like in *Adkins*, there was no straightforward dispute of a singular issue which NCS can resolve – as opposed to a court of law. Plaintiff's own sworn statement is insufficient – he does not explain how that alone "proves" identity theft – or even that the evidence he submitted is conclusive on that fact, or what would be relevant to the original creditor to determine the same. *Adkins* at \*21. In this case, Plaintiff cannot show that the result of NCS's investigation was inaccurate, and therefore NCS is entitled to summary judgment. If anything, all that Plaintiff can show is the existence of a legal dispute, namely or not he was the victim of identity theft.

To date, NCS has not been presented with documentation that would refute Plaintiff's obligation

on this lease. Plaintiff is urging this Honorable Court to adopt the impossible position – to force furnishers of information *in all cases* to determine whether or not there has been a violation of the law, which is a question for the judiciary, and should not be left for a lay person. Plaintiff claims that if this is deemed a "legal dispute", it will encourage furnishers in similar positions to simply "disregard" disputes. However – that is not the case. It would, instead, prompt those that have a dispute to follow the appropriate channels when trying to clear up their credit as opposed to burdening a furnisher with being the lone arbiter in such a situation. This is not the standard and should not be the standard. Here, if Plaintiff has presented anything all they have been presented is a legal dispute, which does not rise to the level of a factual inaccuracy which would require any corrective action on Plaintiff's credit report. NCS cannot serve as an interim judge or referee.[4]

Whether or not a consumer identifies all facts pertinent to their dispute – such as who may have stolen their identity – is relevant as it relates to the sufficiency of investigation. *Stewart v. Equifax Info. Servs., LLC*, 320 F. Supp. 3d 1186, 1194 (D. Kan. 2018). "Whether an investigation was reasonable under the FCRA "turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute."" *Id.* (citations omitted). In this case – the evidence provided with the dispute is scant at best, and hardly plentiful. Additionally, a furnisher is only required to review the documents available to it at the time of the dispute – not what is submitted before the dispute – and not after the dispute investigation has been completed. *Id.* at 1201. Meaning, there is no continual duty to investigate. *Id.* at 1201-1203. Additionally, where a furnisher provides performance feedback and training – that substantiates evidence of a reasonable investigation, not that the furnisher's investigation is simply a "façade" as suggested by Plaintiff, particularly where there is no evidence to support the assertion that a furnisher limits its review

---

[4] *Adkins* further states that only *reasonable* investigations are required – and matters such as handwriting experts are inappropriate for an FCRA complaint and investigation. *Adkins* at *21-23. Additionally, *Adkins* reminds the parties that where you are not a party to the dispute (here, Neiman Marcus), there is no reason for that party to respond to your requests for information, and that they in all likelihood *would not*. *Id.*

to only certain documents. *Id.* at 1203. NCS does so. RPSUF 11, 56, 28, 29, 56; *see also* Declaration of Ron Sapp, ECF 56-2, ¶¶ 31-66.

The FTC, whom the Plaintiff consulted, provides literature and advice to a consumer who believes that they are the victim of identity theft, including to follow the steps at identitytheft.gov, which request a police report. *See* https://www.ftc.gov/news-events/topics/identity-theft/report-identity-theft (last visited January 6, 2023); *see also* https://www.identitytheft.gov/#/Steps (last visited January 6, 2023). There is no evidence that Plaintiff did any of this.

Furnishers should check the personally identifying information for a consumer, such as their name, address, phone number, and social security number. If that information is correct, as it is here, that shows that a furnisher such as NCS has the correct information for the consumer. Where this information is incorrect, that could be a red flag to support a consumer's assertions. It is also more likely that a consumer is the appropriate party where there have been mailings with no return mail regarding the account – which were not previously disputed.[5] If there are writings regarding the account, one could consider comparing the signatures.[6] If the account opened in a manner which required an identification card, the determination as to whether or not the consumer submitted the application becomes much easier.[7]

One other important factor is whether or not a police report has been submitted when it comes to the alleged identity theft. An FTC report does not trigger an investigation, only a police report regarding the alleged theft will result in an investigation and potential criminal charges. If a police report is not submitted, it could indicate that the account does belong to the consumer as it is difficult to claim identity theft without reporting such a crime to the police. Alternatively, where a police report is submitted, it is

---

[5] Here, Plaintiff had a second account with Berkshire which caused a letter to be sent to him at his Colorado address showing that a new account was applied for in his name, in Texas, in 2019. Additionally, NCS began furnishing on this account in February of 2020 – however, Plaintiff did not dispute the account until June of 2020.

[6] However, in this case, writings submitted by Robbin Ward and Megan Henderson are similar to the writings on the certified checks provided at the time of move-in. RPSUF 7-9.

[7] Here, MSR states that Robbin provided his ID in person when picking up the keys. RPSUF 1-4.

more difficult for a furnisher to claim that the account is legitimate, particularly where a thief has been identified. Additionally, where the claim involves use of an identification card such as a driver's license or social security card, it is pertinent to see the DMV report showing a new license was obtained, or that the loss/theft was reported, and who reported the identity theft initially – the bureaus, the creditor, or the consumer.[8] Moreover, the consistency of disputes is also relevant.[9]

An investigation looking into all of these factors is not required to render a "reasonable" investigation. But, it certainly can be used to rebut the consumer's claim of identity theft. Moreover, precedent is set that a debt collector may rely upon information provided by a creditor who has provided accurate information in the past. *See Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1174 (9th Cir. 2006) (citing *Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496, 500-01 (E.D.N.Y. 2002); see *Howe v. Reader's Digest Ass'n, Inc.*, 686 F. Supp. 461, 467 (S.D.N.Y. 1988)); see also Exhibit 25, ⁋ 9 (regarding MSR's reliability as attested to by NCS).

Here, NCS reviewed the information provided by the CRAs and the account file, including documents provided by NCS' clients. ECF 56-2, ⁋⁋ 33-53.  NCS also reached out to MSR for verification that the debt was valid, and that the Plaintiff was the appropriate obligor, that he provided his ID in office, and MSR confirmed that the debt in this matter was valid during every request for validation from NCS and continues to verify the *debt to this day*. *Id.*

Here, however, Plaintiff just wishes to disregard the negative overall picture painted by his credit history and relationship with his daughter. Certainly, it would not be the first time that a parent applied for an account or co-signed on an account for their child. Here, Plaintiff was on vacation (as was his

---

[8] Confusingly, Plaintiff asserts that NCS only received a copy of his driver's license and social security card via his dispute with the bureaus. However, NCS has a color copy of Plaintiff's driver's license, as provided by MSR, which cannot be subject to reasonable dispute. It is unclear how Plaintiff can contend that NCS somehow obtained a copy of his driver's license other than by submission from the original creditor, MSR.

[9] Here, Plaintiff disputed twice, and then was not heard from again until a year later when he filed suit. ECF 1.

daughter) at the time the application was submitted, and that he has visited Texas before. ECF 55-4, RFA 20. This is much different than having *no* personal ties to Texas whatsoever.

Moreover, Plaintiff's claims that – "if it was not in the notes, it did not happen" – is cursory at best, and imposes an unrealistic burden that NCS must list out every single document that it consulted in carrying out its investigation. No such requirement is present in the FCRA or any other consumer protection statute. The Plaintiff here is attempting to create new standards, not found in the FCRA.

## A. Plaintiff's Final Allegations.

Defendant will address some of Plaintiff's tangents that it has not devoted any appreciable space to in this brief. First, Plaintiff has taken issue with the fact that NCS did not depose the Plaintiff. It is not NCS's obligation to prove Plaintiff's claims for him, and all relevant testimony was solicited with written discovery. However, a dispositive motion is not the time nor the place to raise such issues.

With his response, Plaintiff alleges (incorrectly) that NCS did not notate his account as "disputed". RPSUF No. 31. Plaintiff's complaint at ECF 1 makes no mention of NCS's failure to designate the account as "disputed," nor has the Plaintiff attempted to file an amended complaint to state the same. Yet with his dispositive motion briefings, for the first time ever, this issue was raised. Plaintiff is precluded from bringing these claims because they were not pled in the Complaint. *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1153 n.9 (N.D. Cal. 2007); *Seattle Affiliate of Oct. 22nd Coalition v. City of Seattle*, 430 F. Supp. 2d 1185, 1197 (W.D. Wash. 2006) ("Plaintiff cannot unilaterally alter the nature of its claim in response to a summary judgment motion[.]").

Additionally, Plaintiff claims that he should not be required to cooperate or provide any materials to support his claims of identity theft. Essentially, that NCS should "just know" that it is identity theft, and to take him at his word. However, his claim boils down to his allegations are that the account is not his, despite the plethora of evidence considered by NCS – provided by both the Plaintiff and MSR – which

*does* show that the information was accurate as reported. Instead, it is the *liability* for the MSR account which is disputed.

Lastly, Plaintiff cites to *Marx* for the proposition that one can communicate with an employer (a third party) without violating the FDCPA. *Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011). However, *Marx* says no such thing. *Marx* holds that certain communications – in that case, a fax – are *not necessarily* communications under the FDCPA. It also states that, under different circumstances, a communication could fall under the gamut of the FDCPA, particularly where it reveals the existence of a debt. *Id.* Here, it is hard to fathom how any communication that Plaintiff attempts to pigeon-hole NCS into would do anything *other* than imply that a debt is owed. Certainly, no employer is going to speak with anyone regarding the employment (or unemployment) or a person without a subpoena or a really good reason otherwise. Here, there is nothing to suggest that Neiman Marcus would have even communicated with NCS in the first place – and they refused to respond to Megan Henderson.

Moreover, Plaintiff claims that NCS did not review the paystubs as sent because of his misinterpretation of NCS's account notes and deposition testimony. NCS's account notes clearly state that all information that was received was reviewed. It is hardly any wonder why a dispute investigator does not recall what pieces of paper that they reviewed more than two years prior to their deposition. Plaintiff's proposed expert lists a "litany" of issues w/ NCS's investigation techniques. But, there is nothing to say that these techniques were applied here (wrongly or otherwise).

Here, there can be no damages because XB condition code is present in July dispute – which is the only dispute that invoked identity theft. RPSUF 50. Moreover, Experian appears to have deleted and/or closed the file after the June 2020 dispute – which was not based on identity theft. RPSUF 31, 32.

## III.     CONCLUSION

Wherefore, for all of the foregoing reasons, the Defendant, National Credit Systems, Inc., requests that this Court grant NCS Summary Judgment on all counts.

Dated: January 6, 2023                Respectfully submitted,

                                      */s/ Katrina M. DeMarte*
                                      KATRINA M. DEMARTE (MI bar No.
                                      P81476; CO Bar No. 43135)
                                      DEMARTE LAW, PLLC
                                      39555 Orchard Hill Place Suite 600
                                      Novi, MI 48375
                                      Telephone: (313) 509-7047
                                      katrina@demartelaw.com

## CERTIFICATE OF SERVICE

   I, Katrina M. DeMarte, hereby state that on January 6, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

/s/ Katrina M. DeMarte
Katrina M. DeMarte (MI Bar No. P81476; CO Bar No. 43135)
