**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

---

ROBBIN WARD,                                       Case No. 1:21-cv-02597-LTB

      Plaintiff,

      v.

EQUIFAX  INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC.,
NATIONAL CREDIT SYSTEMS INC., and
TRANS UNION, LLC.

      Defendants

---

**DEFENDANT NATIONAL CREDIT SYSTEMS INC.'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF NEAL MAYNARD**

### I.      Introduction

National Credit Systems, Inc. (hereinafter, "NCS") by and through the undersigned counsel, hereby files its opposition to the Plaintiff, Robbin Ward's (hereinafter, "Plaintiff"), Motion to Exclude the Declaration of Neal Maynard at ECF 64 (hereinafter, the "Motion") because the material and evidence is not expert testimony, the Plaintiff was aware of the positions stated in Mr. Maynard's declaration, and the offered evidence is relevant and more probative than unfairly prejudicial. As such, the Plaintiff's Motion should be denied.

Of note, many of the issues raised by Plaintiff in his Motion are arguments that were previously the subject of briefing on NCS's previously filed Motion for Summary Judgment. *See* ECF Nos. 55, 62, and 63. Where applicable, and in the interests of judicial economy, NCS will refer the Court to previous briefing herein, and specifically, Plaintiff's Response to the Motion for Summary Judgment at ECF 62.

II.    **Pertinent Discussion Regarding the Plaintiff's Motion to Exclude the Declaration of Neal Maynard.**

Much of Plaintiff's Motion is spent dissecting NCS's fully-briefed Motion for Summary Judgment. *See* ECF Nos. 55, 62, and 63. NCS will not re-hash all of these arguments, but, because an analysis under the Federal Rules of Evidence generally requires a "relevancy" analysis, NCS does wish to point out that Plaintiff has misstated NCS's position as set forth in its briefing. *See* ECFs 62, 64, generally. Plaintiff states that it is NCS's position that a family member cannot steal another family member's identity. *Id.* However, that is not so. It is, however, NCS's position that it was not stolen in this matter – or, at the very least, there is insufficient evidence to show that it was stolen. *See* ECFs 55, 63, generally.

Specifically, it is NCS's position is that it investigated all avenues available to it, but that it reached a different conclusion than the Plaintiff – which is perfectly acceptable under the law. *See* ECFs 55, 63, generally. This is supported by the fact that the Plaintiff *has not* provided any testimony as to communications with Quen Green/Allen ("Ms. Allen"), or testimony from Ms. Allen herself (who is the Plaintiff's daughter).

Certainly, the Plaintiff, who is a person who claims to have regular communications with Ms. Allen would have discussed this most important matter with her. ECF 55-1, ¶ 39, *see also* ECF 55-6, pg. 24, Interrogatory 23. Instead, his discovery responses are void of any such communications with Ms. Allen. He also states, at one point in time, that Ms. Allen had her identity stolen and a car was purchased without her consent. ECF 55-6, pg. 9. There is simply no evidence or testimony to support such an assertion.

It is also NCS's assertion that the dispute at issue in this matter is inappropriately placed in front of NCS, and not the party who would have to make the ultimate decision regarding whether or not the debt is enforceable – the original creditor. *See* ECFs 55, 63, generally. Simply put – this

is a question of law and not a question of fact, or, at best, a question that cannot be answered outside of the confines of a court of law absent additional documentation or information as to the purported identity theft. *Id.*

There are no other facts which Plaintiff has supplied that <u>*could*</u> have been discovered at the time these disputes were launched – other than a police report or other such documentation from Ms. Allen regarding any alleged identity theft (which, importantly, <u>*still*</u> has not been produced, provided, or even requested of Ms. Allen by the Plaintiff to-date). Where there are no additional facts which could be discovered during the course of an investigation, the mere difference of opinion as to the results of an investigation are not sufficient to ultimately conclude that any investigation was not "reasonable" – as Plaintiff's argue here. *See* ECFs 62, 64, generally.

//

**III.     Law and Argument**

Plaintiff's Motion defies logic as it contradicts Plaintiff's own position as taken in opposition to NCS's Motion for Summary Judgment. ECF 62, pg. 19. Specifically, Plaintiff draws attention to the investigation undertaken by counsel following the filing of this action. Plaintiff insinuates that that investigation was far more "robust" and in line with what a reasonable investigation might look like under the FCRA. However, Plaintiff now takes the confusing position that this information, as detailed in the declaration of Mr. Maynard, could only be obtained or presented by an expert witness. *Id.*, see also, Motion to Exclude, generally.

Obviously, the Plaintiff wants to exclude from the jury evidence that would tend to show that Plaintiff knew about or consented to Ms. Allen applying for an account with MSR under his name; or, alternatively, that the MSR account was, in fact, opened by Ms. Allen, which the Plaintiff refuses to press charges against or claim in any manner whatsoever. Presumably, this is because Plaintiff either acted with Ms. Allen, or because he does not want his daughter to face criminal

charges. Either way, the conclusion reached is that the Plaintiff's actions in this regard are highly suspicious, and that he *will not* provide evidence to support his claims – where he may be the only person who can actually obtain and provide the requisite evidence.

a. <u>Even if Plaintiff's Motion to Exclude is granted, NCS can present the relevant testimony in question in an admissible manner if this proceeds to trial.</u>

As set forth in NCS's summary judgment briefing, in this case, it cannot be subject to reasonable dispute that it appears that Ms. Allen is the person that submitted the application to the original creditor for the account at issue – Main Street Renewal (hereinafter, "MSR"). *See* ECF Nos. 55, 62, and 63. Notably, and amongst other things: 1) Ms. Allen works at Neiman Marcus; 2) the Plaintiff has admitted to providing Ms. Allen with his drivers' license and social security card; 3) the paystubs that were purportedly altered and attached to the MSR application were altered versions of Ms. Allen's actual pay advices from Neiman Marcus; 4) Ms. Allen receives social security benefits (despite not having reached the age of retirement – which also nullifies Plaintiff's claims that one must be either disabled or over a certain age to obtain); and also, 5) the application contained Ms. Allen's *actual* contact information and former addresses (identity thieves rarely use another person's contact information as it is the thief that must communicate with the creditor – or here, the leasing agent – as the thief is the one that wants the benefit). ECF 55-6, pgs. 9-10; 16-20, 24-25.

These notables are merely reinforced by the discovery obtained from Neiman Marcus, Gmail, and MSR, and the declaration of Mr. Maynard provides a step-by-step analysis of how *anyone* could process this information. *See* ECF 55-21 (Pictures of MSR Property provided by MSR); ECF 55-19 (compilation of data provided by Gmail); ECF 55-18 (MSR Account Notes); ECF 55-3 (Application for MSR property clearly displaying IP addresses); ECF 55-13 (MSR Records Regarding Payment and Location Information); ECF 55-12 (Gmail Subscriber

Information with IP addresses); ECF 55-10 (Declaration of Neal Maynard). Importantly, the data compilations, along with the summarizations and conclusions reached by Mr. Maynard are not actually contested by the Plaintiff. Rather, Plaintiff contends that Mr. Maynard was an undisclosed expert, an undisclosed lay person, and that any testimony rendered from Mr. Maynard is unfairly prejudicial to the Plaintiff. ECF 64.

Notably, MSR properties require that its residents pass background checks and that the person applying for the residency *actually* reside in the unit. Here, it certainly is likely that Ms. Allen worked with her father to submit an application in his name stating that his family sought to relocate from Colorado to Texas, and also to ensure a tenancy was approved as Ms. Allen's criminal background would not have surpassed residency requirements. ECF 55, 63. This would have also required income information, which for these same reasons could not have been submitted in Ms. Allen's name, hence the reason for submission under the Plaintiff's name. *Id.*

The federal rules provide guidance on how to satisfy the requirement of authenticating or identifying an item of evidence. Fed. R. Evid. 901. Specifically, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.*; *see also United States v. Johnson*, 977 F.2d 1360, 1367 (10th Cir.1992); *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir.1989). This can be accomplished by "describing a process or system and showing that it produces an accurate result," or by showing that the proposed evidence distinctive characteristics that make it unique, readily identifiable, and resistant to change. Fed. R. Evid. 901(b)(4) & (b)(9).

The paramount purpose of laying a foundation is to ensure the accuracy of the evidence in question. Rule 402 of the Federal Rules of Evidence states that "all relevant evidence is admissible," and that evidence is relevant if it has the "tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 402. Relevant evidence should be admitted unless its "probative value is substantially outweighed by the danger of unfair prejudice." *Id.* Based upon these rules, foundation or contextual evidence may be admissible as relevant evidence.

Because the law favors the admission of all relevant evidence, exclusion "is 'an extraordinary remedy [that] should be used sparingly.'" Fed. R. Evid. 403; *see also United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014). Based upon the Federal Rules of Evidence, and more specifically Rules 401 and 402, motions to exclude or *in limine* are <u>not</u> favored by courts and should <u>not</u> be granted unless the evidence at issue is clearly not admissible for <u>any</u> purpose. *See, e.g., Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 303 (1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise"). Courts are better equipped to assess the value and utility of evidence, and as such, a court should withhold rulings except for in those instances where the evidence is clearly inadmissible on all grounds. *Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216 (D. Kan. 2007); *Smith v. Board of County Com'rs of County of Lyon*, 2003 WL 21293565, *1 (D. Kan. 2003)(citation omitted).

A party opposing summary judgment "need not produce evidence "' in a form that would be admissible at trial.'" *Thomas v. Int'l Bus. Machines,* 48 F.3d 478, 485 (10th Cir. 1995) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "[H]owever, the content or the substance of the evidence must be admissible." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). For example, a party may submit an affidavit in support of summary judgment, even though the affidavit would be inadmissible at trial as hearsay, "on the theory that

the evidence may ultimately be presented at trial in an admissible form." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); *see also JL Beverage Co., LLC v. Jim Beam Brancs Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016); *see also*, *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992).

Here, the statements in the Maynard declaration would be admissible if made by witnesses at trial, and Plaintiff does not argue otherwise. Additionally, as previously spelled out in plain and pellucid language in NCS's Motion for Summary Judgment and Reply in Support thereof, these materials are clearly relevant. And, of course, Plaintiff could have requested deposition or other discovery as to Mr. Maynard to aide in his Response in Opposition to Summary Judgment at ECF 62, though he did not. Certainly, the Plaintiff can call Mr. Maynard at trial if he wished. As such, regardless of their admissibility at trial, the Maynard declaration certainly admissible at **summary judgment** and, therefore, should not be excluded.

    b.  <u>Plaintiff is not prejudiced by NCS's disclosure as to Mr. Maynard in its last supplemental disclosures or discovery responses; Plaintiff was already on notice of the information and assertions of NCS, Neiman Marcus, Gmail, and MSR as set forth in the Maynard declaration.</u>

Plaintiff makes a big deal about the timeline of <u>*when*</u> Neal Maynard was disclosed by NCS. ECF 64, *generally*. It appears that the primary argument in this regard is that Plaintiff was unable to depose or seek other testimony from Mr. Maynard. However, as set forth herein, under the mechanisms set forth in Fed. R. Civ. Proc. 56, if any party believed additional discovery was necessary to be able to respond appropriately to the opposing party's summary judgment motion, they need only request such discovery. Plaintiff did not request additional discovery to be able to respond to the summary judgment motion. Nor did Plaintiff request a further extension (or re-opening) of discovery to serve/participate in discovery as it relates to Mr. Maynard. As explained

herein, Plaintiff's attorney certainly knew the basis and conclusions listed in Mr. Maynard's report as they were previously relayed to counsel.

Fed. R. Civ. Proc. 37(c) specifically provides that where a party fails to properly disclose an expert witness without substantial justification, the party cannot use testimony or other evidence from the witness at trial or with motions. *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1122, 1124 (10th Cir. 2005). Additionally, Rule 26(e) does not require a party to amend disclosures if the additional information has been *made known* to the opposing party during discovery. *See* Fed. R. Civ. Proc. 26(e)(1); *Pourchot v. Pourchot*, 2008 WL 11338393, at *1-2 (W.D. Okla. 2008). Moreover, even if NCS was required to amend their disclosures, Rule 37 does not proscribe the use of information if the failure to disclose was "substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1). "The court has broad discretion to determine whether a Rule 26(a) violation is justified or harmless." *Wells v. Berger, Newmark & Fenchel, P.C.*, 2008 WL 4365972, at *3 (N.D. Ill. 2008).

Furthermore, the Fed. R. Civ. Proc. 37(c)(1) provides that, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) … is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." *Klonoski v. Mahlab*, 156 F.3d 255, 271 (1st Cir. 1998). But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703; *United States v. McGuire*, 27 F.3d 457 (10th Cir.1994). Moreover, the primary consideration is whether the evidence is *unfairly* prejudicial, and if so, whether that danger of unfair prejudice substantially outweighs the probative value of the evidence. *Constantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) (because virtually all evidence

is prejudicial to one party or another, to justify exclusion under Rule 403, the prejudice must be unfair.").

The Maynard declaration is relevant evidence to this case and would not confuse the issues or cause unfair prejudice to the Plaintiff if presented to the jury. The Maynard declaration relates to Ms. Allen, the Plaintiff's daughter, who either worked with the permission of the Plaintiff to apply for an account with MSR, or has stolen Plaintiff's identity (though, Plaintiff refuses to state that she has). Because the relationship with Ms. Allen is central to a proper understanding of the case and NCS's defense, the Maynard declaration would undoubtedly aide a jury – not confuse it. In fact, the statements and conclusions in the Maynard declaration were known by the Plaintiff _well_ before the close of fact discovery. _See_ ECF 22, pg. 6, Proposed Scheduling order setting forth materials regarding IP addresses and a connection to Ms. Allen; _see also_ ECF 64-2, pgs. 2-4, NCS's Third Supplemental Disclosures, disclosing Gmail, Neiman Marcus, and Ms. Allen, amongst others.

Plaintiff attempts to feign ignorance as to the significance of Ms. Allen to this litigation. However, these record in this case shows that, _long_ before the close of discovery, the Plaintiff was aware of NCS's position as to Ms. Allen in this matter, as well as the fact that NCS may rely upon those facts and data to support their defenses in this matter. Additionally, both NCS and the Plaintiff subpoenaed Nieman Marcus and MSR, two of the parties whose documents which were provided are central to the dispute as to the Maynard declaration. As such, any conclusion that either the Plaintiff or his counsel would be "surprised" at trial by the use of the Maynard declaration, or the introduction of facts as disclosed in the Maynard declaration, cannot be reconciled with the clear record in this matter. Given Plaintiff's clear knowledge as to the matters

contained in the Maynard declaration, and their relevance to this case, his claims that he had no opportunity to "take discovery" as to Mr. Maynard ring hollow.

Moreover, Plaintiff complains that he only learned of the declaration of Mr. Maynard via NCS's Motion for Summary Judgment, and that he is prejudiced simply because discovery was then closed. However, Plaintiff could have requested additional discovery pursuant to Fed. R. Civ. Proc. 56(d) – but, he did not. As such, by filing his Response (where NCS consented to a _one month long_ extension of time for Plaintiff to file), Plaintiff waived any opportunity that he would have already been afforded to avoid the "prejudice" he now complains of.

As such, and put plainly, the Plaintiff's **_decision_** not to seek deposition testimony from Mr. Maynard was not the result of any unfair "surprise," as Plaintiff would have the Court believe, but of the Plaintiff's **_strategic decision_** to lay in wait and hope the Court would exclude this obviously relevant testimony under a feigned claim of unfairness, rather than risk NCS once again providing evidence that would undercut the central theory of Plaintiff's case. The Court should not permit the Plaintiff to manipulate the evidence to be presented at trial in this way. _See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co._, 170 F.3d 985, 993 (10th Cir. 1999) _see also Ramos v. Banner Health_, 2019 WL 7189490, at *3 (D. Colo. Dec. 2019).

c.  Any conclusions reached by Mr. Maynard do not constitute expert opinions.

Tellingly, Plaintiff did not dispute the information provided by Neiman Marcus, Gmail, or MSR. Nor does he dispute the ultimate conclusions reached by the undersigned counsel, or the affiant, Neal Maynard. He simply objects because he believes it to be expert testimony which was not disclosed. There is no theory or support for how this testimony would be considered expert testimony, however, and it certainly is within the purview of a layperson to be able to read, summarize, and draw natural conclusions as to the documents presented.

The application with MSR provides all IP addresses encountered during the signatory stage. ECF 55-3. Those IP addresses all trace back to Neiman Marcus. ECF 55-10, pgs. 3-9. Furthermore, the IP addresses obtained from other parties – namely, the "robbinward61@gmail.com" email address – also reflect the IP address. *Id.* There is no special magic, tool[1], or training required to be able to open the documents produced from MSR, Gmail, or MSR and to then notate what those documents state in clear English. Comparing numbers and pictures may actually be just as simple, if not simpler, than addition and subtraction, as a person is only looking to see if the numbers match up or if the pictures are similar.

Mr. Maynard's testimony is not of an expert nature - a layperson can do this, did do this, and is no different than other parties or their representatives offering the same information which is publicly available to all parties. Tellingly, Plaintiff does not contest the ultimate conclusions regarding this, nor did they object to any of the information requested at the time it was requested from these various entities. Not only is the testimony lay-testimony, but Plaintiff's ultimate position in their Motion is utterly confusing as it directly contradicts the position that they have taken in opposition to NCS's Motion for Summary Judgment. ECF 62, 64. Plaintiff claims that NCS did not conduct a reasonable investigation – but yet they claim that the investigation that was undertaken following Plaintiff filing suit against NCS in this matter was the first "in depth" review of the allegations in this matter. ECF 62, pg. 19. But, how can they say that NCS could have done more if they do not think that every-day non-experts cannot read and interpret what was produced? How exactly would NCS be able to do that? How could it then be faulted for not taking these steps? Those questions, amongst others, are never addressed by the Plaintiff in his filings.

---

[1] All that is required is sufficient software to be able to open the documents ("mbox" documents), and that software is easily accessible to any party with the internet.

Significantly, the Plaintiff does not challenge the ultimate conclusions or the evidence presented and interpreted – including all of the unique facets thereof, except to liken the proposed testimony as "more difficult than elementary school math."[2] ECF 64, generally. Plaintiff does not challenge the documents or the conclusions other than to blanketly label them as only appropriate for "expert" testimony. *Id.* As a general matter, a person is qualified to offer expert testimony so long as they possess such skill, experience or knowledge so that the opinion rests on a substantial foundation that will aid the trier of fact. *LifeWise Master Funding v. Telebank*, 374 F.3d. 917, 928 (10th Cir. 2004). Further, Rule 702 requires the evidence or testimony presented assist "the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Any questions about whether an experts' testimony will be helpful to the trier of fact should be resolved in favor of admissibility. *Id*.

NCS does not offer the testimony of Neal Maynard as an expert, but, rather opinion testimony of a lay witness as allowable under Fed. R. Evid. 701 (allowing testimony "rationally based on the witness's perception," where it is "helpful to clearly understanding… or to determining a fact in issue," and not based on "scientific, technical, or other specialized knowledge.") It cannot be subject to reasonable dispute that the information, as presented in Mr. Maynard's declaration, whether considered as an expert or lay witness, helps to aide any trier of fact to interpret the materials submitted by both Gmail, Neiman Marcus, and the original creditor, Main Street Renewal ("MSR").

---

[2] This comparison should not be well-taken. Specifically, Mr. Maynard was simply comparing numbers to make sure that they matched against one another, and comparing pictures to confirm the same person was in them, and comparing home layouts, and copying and pasting the unique data provided by various entities into a search engine accessible to all - then setting them forth in a manner which was easily digestible. Effectively, the activities undertaken by Mr. Maynard could be likened to the games which kindergartners play – comparing and matching two pictures or two numbers to make sure that they are the same. Certainly, this is *easier* than addition or subtraction.

Moreover, these entities and witnesses from these entities have been clearly disclosed by NCS – where both NCS and the Plaintiff have sought discovery from both MSR and Neiman Marcus. Moreover, any such testimony from these business entities regarding their records, which were kept in the ordinary course of business, would clearly satisfy the business records exception to the hearsay rule. Fed. R. Evid. 803(6). There is no credible reading of Mr. Maynard's declaration which would suggest that NCS proffers him as an expert, or that he is testifying as an expert.

Again, failing to identify even one piece of challenged evidence with specificity, other than to challenge Mr. Maynard's professional background and affiliation, Plaintiff continues to argue that the statements in Mr. Maynard's declarations are too complex to be lay opinions. Instead, in the face of Plaintiff's documented conduct, and the conduct of his daughter, Ms. Allen, Plaintiff still attempts to genuinely argue that the information contained in the Maynard declaration, and the documents referenced therein, should be excluded. Plaintiff does so without even stating why such specific evidence may not be relevant. *See Smith v. Bd. of Cty Com'rs of Cty. Of Lyon*, 2003 WL 21293565 at *1 (the court may deny a motion in limine where it does not provide the requisite specificity with respect to the evidence it seeks to exclude). It should be noted that although NCS does not intend to seek impermissible expert or legal conclusion testimony from any witness – Plaintiff's motion is premature. Applicable objections, if any, should await development at trial. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 2007 WL 2506645, *1 (D. Colo. 2007).

Plaintiff wants this Honorable Court to exclude the declaration of Mr. Maynard on their mistaken belief that Mr. Maynard is an expert witness. Plaintiff makes no real showing that Mr. Maynard *is* an expert, or that NCS is *trying* to characterize his proffered testimony as an expert opinion under Fed. R. Evid. 702. Which is because he is a fact witness who would testify about his review of the documents provided by various entities in a manner that is easily digestible and

simple to follow – rather than leaving the thousands of pages produced in this matter left to a jury to sift through. If Plaintiff were to be believed, a fact witness can never offer anything other than mundane facts. This position, however, if taken to its logical conclusion, completely eradicates Fed. R. Evid. 701. *See Konvin Associates v. Extech/Exterior Technologies*, 2006 WL 2460589 at *10 (N.D. Ill. 2006). Here, Mr. Maynard can speak to his personal knowledge of review of the voluminous documents, the specific and distinguishing factors of those documents, and can express those opinions rationally based upon perceptions that any lay person could possess. Just as in *Konvin*, this proposed testimony is not an "expert opinion," and the testimony should similarly be allowed.

Plaintiff's ultimate conclusions that the disclosure of Mr. Maynard and his proposed lay testimony were "willful" or purposefully withheld are equally without merit. Plaintiff is fully aware of NCS's position that the Plaintiff was involved with Ms. Allen in the application process for the MSR property. Plaintiff is also aware that Ms. Allen is a resident of Texas, and that she has not provided testimony of any kind in relation to this case, despite Plaintiff's own assertions that she *could never have* stolen his identity. This certainly begs the question as to why Plaintiff has not offered up testimony from Ms. Allen regarding the MSR account, where if she verified the Plaintiff's story, it is certainly possible that such information alone may be sufficient to conclude that Plaintiff was, indeed, the victim of identity theft (albeit, at the hands of his daughter, Ms. Allen). This is a position that the Plaintiff will never take, and has never taken, regardless of the truth or falsity of any such statement.

Certainly, as discovery progressed in this matter, NCS attempted to locate Ms. Allen with an eventual goal of obtaining testimony, documents, and information concerning her whereabouts

around the inception and termination of the MSR account.[3] However, Ms. Allen is not a resident

of Colorado, rather, she is a resident of Texas. The undersigned is not a Texas-barred attorney

(federally or otherwise). Because of various jurisdictional concerns, NCS sought counsel from an

attorney barred in Texas, John Bowdich of Bowdich & Associates. Working with Bowdich &

Associates, NCS filed what is called a "202 Petition" in Dallas County, Texas. *See* **Exhibit A**:

Filed 202 Petition for Ms. Allen.[4] The 202 Petition sets forth the allegations that Ms. Allen worked

with the Plaintiff or was provided permission by the Plaintiff to apply for the MSR account, or,

alternatively, that she stole Plaintiff's identity. *Id.*, generally. This information and documentation

was provided to Plaintiff during the regular course of discovery.

Arguably, Ms. Allen is the only person who can aide in the resolution of this dispute. And,

depending on the nature and contents of what could be obtained or disclosed by Ms. Allen, NCS

would then have recourse and a chance at recouping the fees incurred because of the actions taken

by Ms. Allen, or by Ms. Allen and the Plaintiff working in concert. Certainly, because this

testimony was not procured and provided to NCS – either during discovery *or* during the course

of NCS's investigations – the resulting conclusion cannot be anything *other* than NCS's

investigations were reasonable, as there was no other fact *which NCS could obtain* to resolve the

matter. Rather, it is a matter for the courts. NCS's 202 Petition is still pending in Dallas County

---

[3] Plaintiff also devotes significant portions of his Response in Opposition to NCS's Motion for Summary Judgment and Motion to Exclude by, once again, providing his unnecessary, irrelevant, and disparaging comments as to how NCS operates, and the capacity of its chosen counsel. Plaintiff has consistently disagreed with the fact that depositions were not taken by NCS, somehow concluding that the reasoning was because they would "seal the fate" of NCS. Which is utterly false – NCS has been trying to limit costs and fees in this matter, which are wholly disproportionate to the value of this case. This is particularly true because the Plaintiff has not been willing to provide a settlement demand in this matter or a counter-offer to NCS's settlement offer, and the mounting costs are a paramount and significant concern.

[4] This was disclosed to Plaintiff's counsel during discovery and was first brought to the attention of this Honorable Court in the parties' pretrial statement at ECF 61, pg. 15.

Court. Ms. Allen was served with the initial petition, though, the matter was rescheduled and NCS has been unable to serve Ms. Allen with the amended paperwork as she is actively avoiding service attempts. Pending with the Dallas County Court, at present, are a motion for alternate service and also a proposed order granting NCS the right to depose and seek certain materials from Ms. Allen. A ruling on these matters is expected in the very near future.

## IV.    Conclusion

Investigations should not require furnishers to take proactive legal action to determine the truth or falsity of consumers' allegations. This is particularly true where consumers have access to the pertinent information, yet, refuse to provide it or alternative corroborating information – which is the case here. This is worth underscoring because NCS has never had the intent of withholding information or persons relevant to the claims or defenses of the parties. In fact, NCS still actively seeks information and testimony from Ms. Allen which would provide further corroboration as to the raw data provided by MSR, Neiman Marcus, and Gmail, as summarized in the contained in the declaration of Mr. Maynard. And, it is not subject to dispute that Ms. Allen is certainly on the list of disclosed witnesses for both parties. Rather, in large part, Plaintiff's Motion appears to be an opportunity for the Plaintiff to file a surreply to NCS's Motion for Summary Judgment, raising positions that should have been briefed at that time.

If the detail laid bare in Mr. Maynard's declaration is insufficient, as long as NCS can provide the material in admissible format at the time of trial, it is properly submitted for consideration (and given the appropriate weight) by the trial court. Additionally, representatives from both MSR, Neiman Marcus, Gmail – who are the entities which have provided information that is summarized by Mr. Maynard - are listed as potential witnesses for NCS, and they are certainly capable of summarizing, underscoring, and interpreting the same information which Mr. Maynard has summarized (which requires no special training). Certainly, it cannot be said that the

Plaintiff is prejudiced, or was not on notice of these allegations and conclusions. Nor can the Plaintiff show *substantial* prejudice, as the declaration of Mr. Maynard, a layperson, summarizes lengthy and voluminous testimony in a manner which is easily understood by fellow laypersons (a jury). As a result, the Motion should be denied.

Dated: February 10, 2023                    Respectfully Submitted,

*/s/ Katrina M. DeMarte*
Katrina M. DeMarte
(CO Bar No. 43135; MI Bar No. P81476)
**DeMarte Law PLLC**
39555 Orchard Hill Pl.
Suite 600, PMB 6338
Novi, MI, 48375
313-509-7047
katrina@demartelaw.com
*Attorney for National Credit Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on February 10, 2023. I certify that all participants and those requesting notice in the case, who are registered CM/ECF users, shall have service accomplished by the CM/ECF system. The undersigned has also served a copy of this Response upon her client, NCS.

Date: February 10, 2023

*/s/ Katrina M. DeMarte*
Katrina M. DeMarte