**UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

ROBBIN WARD,                                                    Case No. 1:21-cv-02597-LTB

Plaintiff,

v.

EQUIFAX  INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC.,
NATIONAL CREDIT SYSTEMS INC., and
TRANS UNION, LLC.

Defendants

---

**DEFENDANT NATIONAL CREDIT SYSTEMS INC.'S SUPPLEMENTAL BRIEF IN
SUPPORT OF SUMMARY JUDGMENT FOLLOWING DISCOVERY RELATED TO
MAYNARD DECLARATION AT ECF 55-10**

National Credit Systems, Inc. (hereinafter, "NCS") by and through the undersigned counsel,

hereby files its Supplemental Brief in Support of its Motion for Summary Judgment at ECF 55 (the

"Motion"). Specifically, subsequent to NCS filing its Motion, Robbin Ward (the "Plaintiff") filed a

Motion to Exclude the Declaration of Neal Maynard at ECF 64 (the "Motion to Exclude").

Following an Order on the Motion to Exclude, Plaintiff was permitted to take additional discovery

related to the Declaration of Neal Maynard at ECF 55-10 (the "Declaration"). Where applicable,

and in the interests of judicial economy, NCS will refer the Court to previous briefings.

**I.      Background**

Plaintiff filed suit against NCS on September 24, 2021, alleging violations of the Fair Credit

Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"). *See* ECF 1, generally. Plaintiff has claimed that

he does not owe the debt, or, alternatively, that he was the victim of identity theft. With these

threadbare allegations and scant documents, Plaintiff states that, as a result of his disputes, that no

investigation carried out by NCS could have been reasonable. He ultimately concludes NCS violated the FCRA. *See generally* ECF 1, 62.

Plaintiff recently deposed Mr. Maynard, and it is Mr. Maynard's testimony which is the subject of this supplemental brief. **Exhibit 86:** Transcript of Maynard Deposition ("Transcript"). Mr. Maynard's Declaration was submitted as an aide for this Honorable Court (and others) so that it did not have to browse and analyze voluminous discovery received from Gmail, Main Street (the "Original Creditor"), Neiman Marcus, the Plaintiff, and others. ECF 55-10. Where possible, the documents which Mr. Maynard reviewed and cited in his Declaration have also been filed on the docket. *See* ECF 55-10 *citing to* Exhibits to Declaration at 55-21; ECF 55-19[1]; ECF 55-18; ECF 55-3; ECF 55-13, and ECF 55-45.

Plaintiff has not challenged the facts or documents in the Declaration or their foundation. ECF 62, 64, 70. Tellingly, no evidence or testimony has been provided by the Plaintiff to rebut the statements in the Declaration. The Declaration provides a clear and concise summary of *thousands* of documents. It also points out how certain documents appear to be connected by showing the reader where such information came from and where the reader can access that same information, all of which was provided in discovery and is available for viewing by the Court and others at their request. *Id.* The Declaration does not make any conclusions as to Plaintiff's culpability on the debt, it provides a benign analysis of relevant documents meant to ease the reader's burden in trying to follow the documents.[2]

---

[1] Due to size, the lone exception are the nearly 4,000 emails from the Original Creditor.

[2] Plaintiff argues that Mr. Maynard was not disclosed as an expert witness, and that his opinion could not be that of a lay-person. *See* ECF 64. Certainly, Mr. Maynard's background in the criminal justice system may make it *easier* for him to provide such a clear and concise summary, but that does not equate to expert analysis and is admissible pursuant to Fed. R. Evid. 701 & 1006.

Mr. Maynard stated that he had familiarity with IP addresses, though no specialized experience was needed. Transcript pg. 23, line 4 – pg. 25, line 6. He reviewed the information from Gmail and followed their instructions on how to read the files which were sent in response to a subpoena for emails related to the "robbinward61@gmail.com" email address at issue. Transcript pg. 25, line 22 – pg. 27, line 12 and pg. 30, line 18 – pg. 35, line 20; *see also* **Ex. 87**: Instructions on opening Gmail documents produced in discovery as entered into evidence in Deposition).

IP information which was provided by the Original Creditor in this matter was also reviewed. Transcript pg. 28, line 13 – pg. 30, line 17. Mr. Maynard was not out to prove anything: he does not conclude if Plaintiff was victim of identity theft – he was merely reviewing and summarizing data provided in discovery. Transcript pg. 42, lines 4-15. While reviewing the 3,992 emails from Gmail, Mr. Maynard converted the 3,992 emails to .mbox and created a spreadsheet to display the IP addresses based upon the criteria noted in his Declaration. Transcript pg.54, line 23; **Ex.** 87. Similarly, he compared the pictures provided from the Original Creditor of the property at issue and compared those against the video posted to Ms. Allen's Facebook page. Transcript pg. 72, line 11 – pg. 74, line 23, pg. 76, line 14 – pg. 78, line 23; *see also* ECF 55-45: confirmed picture of Ms. Allen & Plaintiff. These are certainly all tasks that nearly anyone could similarly complete.

In this case, NCS has argued not only that it conducted reasonable investigations, that Plaintiff's disputes are legal (as opposed to factual) disputes, which are not actionable under the FCRA, and that Plaintiff has not provided information to support his claims as required by the FCRA. *See* Motion, ECF 55. Significantly, the information provided on the application, which includes a copy of Plaintiff's driver's license and other personally identifying information, all matched the information which was supplied by the Plaintiff in his credit disputes. *Id.*

The documents summarized in the Declaration and discussed on the Transcript, in conjunction with all other exhibits to the Motion, provide context regarding the account at issue. They reveal that Ms. Allen, Plaintiff's daughter lived in the subject property and that she, in conjunction with her father, were involved in the application process. Plaintiff has offered no testimony from Ms. Allen, who arguably is the only person who could vindicate the Plaintiff.[3] It is equally clear that NCS _could not_ have obtained information from Ms. Allen during the course of its investigation, or throughout the course of this lawsuit, and the Plaintiff has provided no testimony or documentation to support his allegations or disprove his involvement. Consequently, there are no new _facts_ which NCS could uncover which would lead to a different result than what was yielded in previous disputes. Quite simply, Plaintiff's dispute is not proper under the FCRA, as it speaks to the validity of the account and requires a legal analysis to determine whether his claims are valid. The Declaration and testimony on the Transcript support these findings.

## II.    Law and Argument

Plaintiff's argument regarding the Declaration effectively precludes judgment against NCS in this matter. Here, the Plaintiff claims that the only time that a thorough investigation took place was through counsel in their defense of this lawsuit. ECF 62, pg. 19. Plaintiff contends that the documents and summary which are the subject of the Declaration could only have come from an expert witness. However, this argument cuts against their theory of the case. The FCRA does not require _experts_ to investigate disputes, and they have cited no case law to support such an assertion. To the contrary, if the documents summarized by Mr. Maynard may _only_ be analyzed by an expert, such a conclusion belies the claims asserted by the Plaintiff because it suggests that NCS would

---

[3] The clear evidence presented in NCS's Motion and in the Declaration reveal that Ms. Allen had some involvement with the application for the property and that her father provided her with his driver's license and social security card for her use. _See_ ECF 55, 63.

otherwise be incapable of reviewing and analyzing the very documents that Plaintiff states constituted a "robust" investigation by counsel after the filing of this case. The Transcript certainly does not yield any scholarly discussions on obtaining and analyzing this information.

**A.     The Transcript supports Admission of the Declaration per Fed. R. Evid. 1006.**

The Federal Rules of Evidence provide that litigants may use summaries where documents or writings cannot be conveniently analyzed or examined by a court. Fed. R. Evid. 1006. The proponent must make sure that "originals or duplicates" are available to the parties for copying or inspection. *Id.* Rule 1006 is improperly invoked where a summary contains "assumptions, inferences, and projections about future events, which represent [a witness's] opinion, rather than the underlying information," *Julie Su v. E. Penn Mfg. Co.*, No. 18-1194, 2023 U.S. Dist. LEXIS 60093, at *7-8 (E.D. Pa. Apr. 5, 2023) (citation omitted). Summary witnesses cannot be used to present argument. *Id.* at *8.

Evidence submitted in a summary need not be admitted into evidence – but it must be admissible. *United States v. Samaniego*, 187 F.3d 1222, 1223-24 (10th Cir. 1999). Courts should consider three things when deciding to allow summaries: "(1) the length and complexity of the record; (2) whether the harmlessness of the errors is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings in the district court." *United States v. Samaniego*, 187 F.3d 1222, 1223-24 (10th Cir. 1999) (citation omitted).

In this case, Mr. Maynard spent a considerable amount of time reviewing the mbox records produced by Gmail. The Transcript and Declaration set forth the processes, in great detail, which were employed to summarize nearly 4,000 emails and other corresponding documents. It is not disputed that the Plaintiff has been provided the same information, NCS has filed most of the information as attachments to Declaration, and NCS will provide these documents upon request.

No one is trying to pull the wool over Plaintiff's eyes. The Transcript and Declaration describe the source of the information contained therein. Of note, there have been no objections to the underlying evidence, the only objection has been that Plaintiff believes the Declaration to contain expert testimony, though NCS does not submit the Declaration for expert testimony. Plaintiff has had the opportunity to review the Declaration and the documents summarized for accuracy and depose Mr. Maynard on the same. The Transcript and Declaration clearly reveal that Mr. Maynard is not making "judgment calls", nor does he provide opinions or inferences, which would be improper under Rule 1006. Summaries do not have to contain *all facts in a case,* they just have to accurately reflect the facts they claims to summarize. *Julie Su*, 2023 U.S. Dist. LEXIS 60093, at *12. The Transcript and Declaration merely explain simple comparisons of numbers (IP addresses), searches for the location of those IP addresses, and photo/video comparisons. This requires no special training and could be ascertained by an average layperson, as these are matters which children could comprehend. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114 (10th Cir. 2005).

When analyzing the *Samaniego* factors, in conjunction with the testimony in the Transcript, it is clear that the record supports admission of the Declaration. *Samaniego*, 187 F.3d at 1223-24. The record in this case is voluminous even when discounting the documents summarized by Mr. Maynard. As of the filing of this supplemental briefing, the parties have a combined _87 exhibits_. The addition of nearly 4,000 emails will unnecessarily compound and protract matters. No errors have been identified in the Declaration, or through testimony, and if there are "errors", they are highly debatable as the Declaration is as neutral as is possible. The Declaration should be allowed.

**B.    Mr. Maynard's Declaration and Testimony Support NCS's Motion.**

There is no requirement that dispute investigators be experts in any given field. When no additional or further investigation _could_ provide a different result absent expert testimony, it supports NCS's contention that Plaintiff's dispute was legal in nature because there would be no

other _facts_ which NCS could discover beyond that which it had already reviewed.[4] If you need an expert to determine that fraud occurred, that would suggest that there is no issue of fact, but rather, a question of law. Even if the dispute established that Plaintiff's daughter applied in his name utilizing his identification documents and personal information (something that was not established until discovery occurred in this litigation), there would remain a legal question of whether the actions were authorized under agency or ratification.

When a furnisher receives notification of a dispute from a CRA, it must undertake a "'reasonable' investigation" of the dispute. _Stewart v. Equifax Info. Servs., LLC_, 320 F. Supp. 3d 1186, 1200 (D. Kan. 2018) (citations omitted). A "reasonable investigation" is defined as an objective inquiry "'that a reasonably prudent person would undertake under the circumstances." _Id._ (citations omitted). "[A]n investigation does not have to be exhaustive to be reasonable." _Id._ at 1202-1203, citing _Maiteki_, 828 F.3d at 1276. "An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." _Id._ at 1205 (citations omitted). Moreover, "the FCRA does not require perfection, only a reasonable response." _Id._ (citations omitted). Furnishers need only review the documents provided by a consumer reporting agency, and the furnisher's response depends largely upon the allegations as relayed through the consumer reporting agency. _Id._ (citations omitted).

There can be no factual inaccuracy where a consumer is simply challenging the legal validity of an account. _Belair v. Holiday Inn Club Vacations Inc_., No. 6:21-cv-165-WWB-DCI, 2022 U.S. Dist. LEXIS 235853, at *7-8 (M.D. Fla. Dec. 12, 2022). "[F]urnishers are neither

---

[4] "There is ample caselaw that states that, in order for a FCRA claim to be actionable, a plaintiff must "demonstrate that some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete."" _Felts v. Wells Fargo Bank, N.A._, 893 F.3d 1305, 1313 (11th Cir. 2018).

qualified nor obligated to resolve issues that can only be resolved by a court of law." *Id.* at *11, quoting *Bauer v. Target Corp.*, No. 8:12-cv-00978-AEP, 2013 U.S. Dist. LEXIS 201316, 2013 WL 12155951, at *13 (M.D. Fla. June 19, 2013). "In short, [the] duty to reasonably reinvestigate does not compel it to resolve what amounts to a collateral attack on the legal validity of the creditor's claim that the named consumer debtor is liable for this debt." *Adkins v. SLM Corp.*, No. 22-2082-SAC-TJJ, 2022 U.S. Dist. LEXIS 135623, at *12 (D. Kan. July 29, 2022). *Adkins* held that no investigation could uncover whether or not a plaintiff *did not* consent to being a co-signer on her sister's student loan debt where there was a) no identity theft police report, b) where the creditor verifies the account as belonging to the plaintiff, and c) the plaintiff's identifiers match what is on the account. *Id.* at 13-14. In *Adkins*, the court concluded that furnishers are not expected to, nor are they required to, undertake depositions, under oath, of family members to verify the originations of any such account. *Id.*

Whether or not a plaintiff ratifies an account cannot be uncovered by any reasonable investigation, and moreover, that such a dispute is legal in nature, not factual. *Id.* at *15. The facts uncovered after this lawsuit was filed, and as summarized in the Declaration and Transcript, *still* do not prove inaccuracy. Such a dispute is better resolved with a creditor directly, and it is reasonable for a furnisher to have simply ask the creditor to confirm the accuracy of a lease where the furnisher had no involvement in the origination of the debt-creating document (here, the lease with the Original Creditor). *Id.* Moreover, where a dispute cannot be ascertained by a simple review of a document, a clear court order, or "some other truly objective matter", those matters, even if considered factual, *still* need to be adjudicated in court, and as a result, they constitute legal disputes left to courts of law. *Id.* at *20-21*, (citations omitted).

The mere fact that Plaintiff argues that Mr. Maynard has provided expert testimony as it speaks to the available documents in this case only underscores the fact that Plaintiff's dispute in this case is legal in nature, because if only an expert can adduce that which is contained in the Declaration, there can be no "simple review" of documents or other objective matters. The Transcript certainly does not reveal any scientific or scholarly process for review. The bottom line in cases like this is that a court of law must determine the validity of the contract, not a furnisher responding to a dispute.

*Suluki v. Credit One Bank, N.A.*, No. 21-cv-1156 (SHS), 2023 U.S. Dist. LEXIS 55621 (S.D.N.Y. Mar. 30, 2023) (appeal filed) is instructive as to this issue. In *Suluki*, the consumer claimed that her mother applied for a credit card without her consent or knowledge. *Id.* at *7-8. In *Suluki*, they did not provide an identity theft report as requested by the original creditor, claiming that they could not file a report with local police because they did not have sufficient documentation to be able to do so. *Id. Suluki* emphasized that there can be no violation if there is no inaccuracy, which is the Plaintiff's burden to establish, and as such, there would be no need to review the reasonableness of any investigation. *Id.* at *11. The contrary is also true: if it is proven that there is an inaccuracy, then the consumer must show that the furnisher failed to conduct a reasonable investigation. *Id.*

*Suluki* found that there was a genuine issue of fact as to whether or not the daughter gave permission to her mother to open the account, and the only evidence supporting such an assertion was contradictory. *Id. at* at *11-12. Because the consumer could not show that the furnishing was inaccurate as a matter of law, she could not show harm or causation, or that the harm they may have incurred was attributable to the creditor. As a result, whether or not the investigation was reasonable was moot. *Id.* at *16. The Court further emphasized that a Plaintiff must show that *had* a furnisher

conducted a reasonable investigation, there would have been a different result. *Id.* at *18,

citing *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 41 (1st Cir. 2010); *Felts v. Wells Fargo Bank,*

*N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018); *Cushman v. Trans Union*, 115 F.3d 220, 226 (3d Cir.

1997); and *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).

Disagreeing with the outcome of an investigation does not mean that any such investigation

was unreasonable, instead, a consumer must show additional facts which the furnisher *should* have

uncovered which would have led to a different result. *Id.* at *20. In this case, there has been no new

information which could have been discovered and the Plaintiff has not detailed what he believes

NCS would have uncovered if there was any further investigation.[5]    Indeed, by providing his

identifying information as well as copies of his driver's license and social security card makes it

highly unlikely that an investigation outside of a judicial or police investigation could have

established fraud. And Plaintiff argues that only an *expert* could uncover those additional facts

covered in the Declaration and Transcript. This alone warrants summary judgment to NCS.  *Suluki*

concluded that "a furnisher is not required under the FCRA to rely solely on a consumer's

allegations" where they cannot "demonstrate that a reasonable investigation *could have* uncovered

any such evidence," which fails to raise a genuine issue of material fact as to whether an

investigation satisfied section 1681s-2(b). *Id.* at *22-23. As a result, NCS's Motion should be

granted in whole.

Dated: May 4, 2023                          Respectfully Submitted,

                                            */s/ Katrina M. DeMarte*

---

[5] *Suluki* was represented by Mr. Marchiando & Mr. Bennett, both of whom are attorneys for the
Plaintiff in this case, as well. Notably, in *Suluki*, the Plaintiff suggested that the creditor would have
reached a different conclusion had it investigated IP addresses. Confusingly, in this case, Plaintiff's
attorneys seemingly argue that one *could not* investigate IP addresses unless they were an expert,
which is in direct contradiction with the arguments and representations in *Suluki*. *Suluki,* 2023 U.S.
Dist. LEXIS 55621 at *20-21.

Katrina M. DeMarte
(CO Bar No. 43135; MI Bar No. P81476)
**DeMarte Law PLLC**
39555 Orchard Hill Pl.
Suite 600, PMB 6338
Novi, MI, 48375
313-509-7047
katrina@demartelaw.com
*Attorney for National Credit Systems, Inc.*

## CERTIFICATE OF SERVICE

I certify that on May 4, 2023, I filed a true and correct copy of the foregoing Motion on the Court's CM/ECF system, which will automatically send to notice to all counsel of record.

*/s/ Katrina M. DeMarte*
Katrina M. DeMarte