IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ROBBIN WARD, § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 1:21-cv-02597 |
| § | |
| NATIONAL CREDIT SYSTEMS, INC., § | |
| *Defendant*. § | |

### NATIONAL CREDIT SYSTEMS, INC.'S OMNIBUS MOTION IN LIMINE AND MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY

Defendant National Credit Systems, Inc. ("NCS") moves this Court *in limine* for the entry of an order (1) precluding Plaintiff from offering or attempting to offer through suggestion, statement, argument, evidence or witnesses at trial certain categories of information, and (2) excluding or limiting expert testimony. In support thereof, NCS states as follows:

### INTRODUCTION

On January 30, 2019, Plaintiff Robbin Ward ("Plaintiff"), or someone using his personal information, applied for and obtained a lease for a home in Dallas, Texas (the "Lease") from Main Street Renewal, LLC (the "Original Creditor"). The Original Creditor evicted the occupants in July, 2019, and a resulting deficiency balance (the "Account") was placed with NCS for collection in December, 2019. Plaintiff disputed the debt with the consumer reporting agencies ("CRAs") (an "indirect dispute" or the "disputes"), in June and July, 2021, first claiming that the account was not his, and later claiming that the account resulted from identity theft.

NCS investigated Plaintiff's disputes received from the CRAs, including, *inter alia*, a review of all available documents, a signature comparison, and obtaining the Original Creditor's verification of the Account balance and Plaintiff's responsibility. Thereafter, NCS updated the information furnished to the CRAs to reflect Plaintiff's dispute and verified the Account.

On September 24, 2021, Plaintiff filed this case alleging that NCS violated the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681s-2(b) by failing to conduct a "reasonable investigation" of his disputes made to the CRAs. ECF 1, ¶¶ 8, 108, 117. Critically, since submitting his disputes, Plaintiff provided additional information and documents in this Litigation that could have been provided to NCS during the investigations and NCS confirmed that Plaintiff's daughter, Laquencilla Green ("Green"), occupied the leased premises during the Lease term.

The Court, in ruling on NCS's Motion for Summary Judgment (ECF 55), denied Plaintiff's claim for a willful violation of FCRA § 1681s-2(b) under FCRA § 1681n ("Willful Violation") thus extinguishing Plaintiff's claim for statutory and punitive damages. *See* ECF 76 (the "Order") at p. 19. The Court also disposed of any claim for economic damages by ruling that Plaintiff failed to establish any credit related or other economic damages. *See* Order at p. 12. Thus, the only remaining issues for trial are Plaintiff's claim for a negligent violation of § 1681s-2(b) under FCRA § 1681o ("Negligent Violation") where Plaintiff must establish, *inter alia*, that (1) the Account is invalid or inaccurate and (2) that NCS failed to perform a reasonable investigation based upon the information provided to NCS in conjunction with each dispute, and if so, whether Plaintiff can establish any emotional distress (non-economic) damages. *See* Order, pp. 13, 27.

To prevent introducing evidence in contravention of the law of the case (such as credit damages or willful conduct), improper character evidence,[1] or evidence that is more prejudicial than probative, NCS seeks an order restricting the introduction of evidence on the categories set out herein. In addition, NCS seeks to exclude, in whole or in part, the improper testimony of Plaintiff's expert, Evan Hendricks, pursuant to Fed. R. Evid. 702, 703, and 704 and *Daubert*.

---

[1] For example, in response to NCS's MSJ, Plaintiff attempted to use a prior court decision from 2018 (*Bumpus v. NCS*) to support willful conduct in this case. *See* Order, p. 16.

## STANDARD OF REVIEW

A motion in limine is a motion "'to exclude anticipated prejudicial evidence before the evidence is actually offered' . . . so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *Barfield v. CSX Transp., Inc.*, 2017 U.S. Dist. LEXIS 22851*8 (M.D. Fla. Feb 17, 2017) (internal citations omitted). "A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

The Court has the inherent power to grant a motion in limine and to exclude objectionable evidence. *Id.* at 41 n.2. Under Fed. R. Evid. 401, "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Fed. R. Evid. 403, relevant evidence may "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[2] Evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008).

Regarding expert testimony, the standard is set out in *Indich v. Equifax Info. Servs.*, No. 16-cv-02484-RM-MEH, 2017 U.S. Dist. LEXIS 178909, at *3-4 (D. Colo. 2017) as follows:

> As [Rule 702] makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[ ] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After "determin[ing] whether the expert is qualified by 'knowledge, skill,

---

[2] *See Old Chief v. United States*, 519 U.S. 172, 18, 092, 117 S. Ct. 644, (1997); *United States v. Pace*, 468 F. App'x 854, 858-59 (10th Cir. 2012); *Morris v. City of Colo. Springs,* No. 09-cv-01506-PAB-MEH, 2010 WL 1655591, at *1-2 (D. Colo. Apr. 23, 2010) and *Perkins v. Fed. Fruit & Produce Co., No*. 11-cv-00542-REB-KLM, 2012 WL 1658871, at *3-4 (D. Colo. May 3, 2012).

experience, training, or education' to render an opinion," *id.* (quoting Fed. R. Evid. 702), the specific proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based upon sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods ... to the facts of the case").

. . .

The Supreme Court has also concluded that the court's gatekeeping functions espoused in *Daubert* must be applied to all experts, not just those purporting to offer "scientific" testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ("the Rule applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope."). The important inquiry is whether the expert offers relevant, reliable testimony from the expert's knowledge and experience. *See id.*

## MIL 1: LAW OF THE CASE

As the Court denied Plaintiff's claim for a Willful Violation (extinguishing punitive or statutory damages) and economic damages from a Negligent Violation, including any damages related to credit impairment, NCS seeks to exclude any evidence and testimony related to these issues. *See* Order, pp. 12, 13,19. Introduction of such evidence would violate the law of the case doctrine,[3] which provides that any decision rendered should apply to all subsequent litigation or actions in the same case.  *See Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1279 (10th Cir. 2010); *Employers' Mut. Cas. Co. v. Bartile Roofs, Inc.*, 478 F. App'x 493, 498 (10th Cir. 2012). The law of the case doctrine is "based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided." *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000), citing *Gage v. General Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986).

## MIL 2: PREJUDICIAL REFERENCES TO NCS'S CHARACTER
## (PAST LAWSUITS, SETTLEMENTS, ETC.)

Plaintiff should be barred from introducing evidence related to prior complaints, lawsuits,

---

[3] Fed. R. Evid. 403 also supports exclusion to avoid unfair prejudice to NCS, promote judicial economy, and prevent jury confusion and misleading the jury.

NCS' OMNIBUS MOTION IN LIMINE AND MOTION TO EXCLUDE                              Page 4

and settlements against NCS (*see* footnote 1 *supra*). In the context of the Court's Fed. R. Evid. 403 review, the Tenth Circuit has held that evidence of other acts should be "substantially similar" to the act at issue in order to be admissible. *See Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407 (10th Cir. 1988). As such, compliance or non-compliance with the law is specific to each individual Plaintiff, and what happened in other cases does not bear upon the facts at issue in this case. *Powell v. Computer Credit, Inc.*, 975 F. Supp 1034, 1039 (S.D. Ohio 1997); *Anderson v. Frederick J. Hanna and Associates*, 361 F. Supp. 2d 1379, 1384 (N.D. Ga. 2005) (declining to consider consumer statute violations unrelated to the present action). These holdings are consistent with the requirements for admissibility pursuant to Fed. R. Evid. 401, 402, 403, and 404.

Additionally, Fed. Evid. 404 provides, "evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. . ." Under this framework, evidence regarding other litigation is neither relevant nor admissible because its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..." and because they are substantially dissimilar to the facts alleged by Plaintiff, which this Court also recognized in the Order at p. 16. *See also*, Fed. R. Evid. 403; *Wheeler*, 862 F.2d at 1407.

The introduction of such matters is not marginally relevant to the jury while, at the same time, susceptible to confusing or misleading the jury, that may irreparably and unfairly influence the jury as to NCS. *See* Fed. R. Evid. 404(b); *Smith v. E-backgroundchecks.com, Inc*., 2015 WL 11233453, *2 (N.D. GA 2015). The only possible use for such evidence and testimony would be to paint NCS in a sinister light or otherwise prejudice the jury.

### MIL 3: DOCUMENTS/INFORMATION NOT IN NCS'S POSSESSION AT THE TIME OF NCS's INVESTIGATION

The automated consumer dispute verifications ("ACDVs") provided to NCS by the CRAs

regarding Plaintiff's disputes were processed between June 11 and July 16, 2020. Logically, as it pertains to the "reasonableness" of any FCRA § 1681s-2(b) investigation, only the documents and information in NCS's possession at the time of the investigations are relevant. *See* FCRA § 1681s-2(b); *see also, Edeh v. Midland Credit Mgmt.*, 413 F. App'x 925, 926 (8th Cir. 2011) (under § 1681s-2(b) investigation, "a furnisher of information need investigate only what is contained in the CRA's dispute notice as to the nature of the dispute."), *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (pursuant to 1681s-2(b), furnisher required to "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified.").

The ACDVs contained only Plaintiff's FTC fraud report and a copy of his social security card and driver's license. Plaintiff should be precluded from arguing or introducing evidence related to any information and documents that were not in NCS's possession at the time of the investigations, including documents provided to, and communications with, a third party pursuing its own collection efforts regarding the Account, The Law Office of Brett Borland ("LOBB"), including EMJD Corporation pay stubs and evidence of Plaintiff's mortgage in Colorado.

Absent the proper foundation that NCS possessed any documents and information at the time of its investigations, Plaintiff should be barred from introducing such documents, testimony, or other evidence pertaining to these undisclosed items. Further, evidence, testimony, argument or inference that NCS did not contact Neiman Marcus should similarly be excluded because there is no requirement that NCS make contact with third parties, but rather, as noted in the Order at p. 18, doing so could be a violation of the Fair Debt Collection Practices Act ("FDCPA").

Similarly, argument or inference that it would be inappropriate for NCS to request a copy of a police report – where such request is deemed reasonable by the regulations enacted by the CFPB at 12 CFR Part 1022.43(d)(3) – should also be excluded. Otherwise, such documents and

information, including any related expert testimony would be irrelevant, prejudicial, and likely to confuse the jury in violation of Fed. R. Evid. 401, 402, and 403; *see also Westra v Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (noting that a failure to contact a consumer does not make an investigation unreasonable).

## MIL 4: ECONOMIC DAMAGES AND PHYSICAL MANIFESTATIONS OF EMOTIONAL DISTRESS DAMAGES

Because this Court has disposed of Plaintiff's claim for economic damages,[4] any evidence suggesting that NCS caused Plaintiff any economic harm or damages--including any evidence suggesting that NCS impacted or "ruined" his credit, prevented Plaintiff from obtaining additional loans, or that actions taken by NCS "ruined" him financially is irrelevant to the remaining issues in this case and any conceivable probative value is far outweighed by unfair prejudice, confusion of issues, and the potential to mislead the jury by trying to illicit sympathy and provoke an emotional response. Accordingly, such evidence should be barred under Fed. R. Evid. 403; *See United States v. Smith*, 534 F.3d 1211, 1218-19 (10th Cir. 2008) (evidence offered only to provoke an emotional response may be excluded under 403).

The Court should also preclude evidence related to any physical manifestations of Plaintiff's emotional distress because Plaintiff failed to disclose documents related to his medical history during discovery. *See* Fed. R. Civ. P. 37(c)(1) ("[If]a party fails to provide information. . . as required by Fed. R. Civ. P. 26(a) or (e), the party is not allowed to use that information. . . at a

---

[4] *See Order* at p. 12, *see also, Olsen v. Experian Info. Sols., Inc.*, No. 16-CV-05707, 2017 WL 1046962, at *9 (N.D. Cal. Mar. 20, 2017) ("[T]here is persuasive authority suggesting that a diminished credit score, standing alone, does not represent actual damages…. This is logical because, absent an allegation that plaintiff was denied credit, lost credit, had credit limits lowered, or was required to pay a higher interest rate for credit, the negative effects of a lowered credit score did not cause 'actual' harm.") (internal cites omitted); *Young v. Harbor Motor Works, Inc.*, No. 2:07-CV-31, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009) (no "actual damages" from an alleged FCRA violation where the plaintiff has not been "denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit").

trial, unless the failure was substantially justified or is harmless."). Plaintiff's failure to produce his medical records, if any, to NCS, also prevents NCS from determining causation issues such as pre-existing conditions, alternate causes, etc., thus prejudicing NCS and warranting exclusion pursuant to Fed. R. Evid 403 of any medical conditions related to his emotional distress.

Moreover, Plaintiff intends to improperly support his emotional distress damages through his own self-serving testimony. Lay people cannot testify to their (or others) medical fitness – whether physical or mental, nor can they testify as to the causation of any alleged damages. *O'Connor v. Pierson*, 426 F.3d 187, 202 (2d Cir. 2005); *Hinton v. McCabe*, No. 3:16-cv-222, 2018 WL 4762118, at *3 (E.D. Va. Oct. 2, 2018); *Raynor v. Pugh*, 817 F.3d 123, 131 (4th Cir. 2016); *Jackson v. Allen*, No. 1:09–cv–117, 2011 WL 1565859, at *2 (N.D. Ind. Aug. 25, 2011).

Further, Plaintiff failed to designate any medical or other qualified expert to opine on the cause of any physical symptoms or that such symptoms are manifestations of his alleged emotional distress. Testimony as to the cause of physical symptoms must be "based on scientific, technical, or other specialized knowledge," and therefore must be offered through an expert. *See Graham v. All Am. Cargo Elevator*, No. 1:12-cv-58-HSO-RHW, 2013 WL 5604373, at *6 (S.D. Miss. Oct. 11, 2013); *Watson v. Furnish*, No. 1:12-CV-55, 2013 WL 4540597, at *5 (N.D. Ind. Aug. 27, 2013); *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 12-cv-040-LM, 2014 WL 1572559 (D.N.H. Apr. 18, 2014); *Gidley v. Oliveri*, 641 F. Supp. 2d 92, 106 (D.N.H. 2009).

In summary, because a causal connection between Plaintiff's physical symptoms and his alleged emotional distress can only be made through qualified expert testimony or medical records, neither of which exist, Plaintiff should be precluded from presenting any testimony regarding emotional distress damages, or in the alternative, Plaintiff's purported physical symptoms and any alleged medical conditions should be excluded.

## MIL 5: CALCULATIONS OR DOCUMENTS IN SUPPORT OF DAMAGES

Plaintiff seeks damages for "emotional distress," however, despite being required to do so, and but for providing generic descriptions of his emotional distress, he has not provided (1) calculations of any alleged damages, (2) documents or medical records to support such damages, (3) nor any expert testimony in support of such damages. Fed. R. Evid. 26(a)(1) requires a party to provide a copy of all documents that may be used to support their claims as well as a computation of damages. Despite this plain rule, Plaintiff's Disclosures fail to identify any calculation of damages, nor any documents supporting any damages or expenses.

The failure to disclose requisite computations and evidence of damages should result in their preclusion at trial. *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 899 (11th Cir. 2013). Plaintiff's Disclosures, discovery responses, and subsequent testimony contain nothing more than vague, self-serving, conclusory statements of mental anguish, with no documentation or supporting evidence. Accordingly, Plaintiff should be precluded from submitting any evidence, testimony, argument, and inference regarding a specific amount of damages that he seeks, any computation of damages, or any documents in support of his claimed damages.

## MIL 6: HENDRICKS'S PROPOSED EXPERT TESTIMONY AND REPORT SHOULD BE EXCLUDED AS INADMISSIBLE AND OTHERWISE UNRELIABLE

In support of his claims, Plaintiff proffers the testimony of expert Evan Hendricks ("Hendricks"), whose report is located at ECF 62-7 (the "Report"). Hendricks' opinions and anticipated testimony are (1) based on incomplete, incorrect, or unestablished factual assumptions and are therefore, unreliable; (2) constitute inappropriate legal conclusions; and (3) not relevant to the remaining issues in this case, which are as follows: a) whether the information furnished was inaccurate; b) whether NCS conducted a reasonable investigation of the disputed furnishings, and; c) whether Plaintiff sustained any emotional damages as a result of any violation of the FCRA.

Hendricks' Report attempts to address the following matters: 1) how NCS's credit reporting was "inaccurate and/or incomplete"; 2) that NCS did not conduct a reasonable investigation; 3) how Plaintiff was harmed; 4) the "context and history" that "robustly put [NCS] on notice" of investigating Plaintiff's dispute; and lastly, 5) how NCS disregarded "relevant information." Report, pg. 1. Critically, the Report was written prior to the completion of discovery and depositions. Disastrously, it was written under the <u>presumption</u> that Plaintiff was, indeed, a "victim of identity theft" ignoring that the occupant of the property was Plaintiff's daughter who appears to have used Plaintiff's personal information, including a copy of his driver's license, to obtain the lease, with or without Plaintiff's permission or consent.  Report, pg. 1, Presumptions.

Hendricks' testimony and opinions are unreliable and inadmissible for a litany of reasons. First, identity theft has not been established, and resolution of that contested matter necessarily requires a direct attack regarding the Account against the Original Creditor, which – for reasons unknown - Plaintiff has entirely evaded here.  This District, under similar circumstances, recently held that such an attack is entirely improper and impermissible in FCRA lawsuits. *See e.g., Order Granting Motion for Summary Judgment* in *Civil Action No. 1:22-cv-01048-DDD-JPO, Coy L. Daniels v. National Credit Systems, Inc.* (D. Co. Feb. 23, 2024) attached as Exhibit "A."

For Hendricks' testimony to be admitted, (1) Hendricks must be "qualified as an expert by knowledge, skill, experience, training, or education"; (2) his testimony must be relevant - i.e., "assist the trier of fact to understand the evidence or to determine a fact in issue," and (3) the methodology underlying his testimony must be reliable - i.e., "the testimony is based upon sufficient facts or data," "is the product of reliable principles and methods," and the witness "applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702 & 403*; see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993).

The proponent of the expert testimony (here, Plaintiff) bears the burden of establishing its admissibility by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1244 (10th Cir. 2009). Claims for a Willful Violation and economic damages for a Negligent Violation have been entirely dismissed, and Hendricks is not qualified to offer any of his remaining preferred opinions, which are based on unreliable conclusions, speculation, and reliance on documents and information not in NCS's possession during the investigation, such as EMJD paystubs and Colorado mortgage statements. Hendricks offers unsupported and erroneous opinions regarding NCS and the investigation, which are all premised upon his *assumption* that all information provided by Plaintiff to NCS was accurate, ignores the Original Creditor's documents that support the Account, and ignores the Original Creditor's repeated verification that the Account is valid and owed by Plaintiff.

Markedly, the Report does not discuss – and is not centered on - familial identity theft, the differences between familial identity theft vs. generic identity theft, or even what to examine under similar circumstances. Familial identity theft is perhaps the most important component of this case and the Report ignores the difficulties in determining the existence of familial identity in considering the reasonableness of the investigation. Hendricks cites no relevant experience in familial identity theft and he has no experience in investigating either identity theft or credit disputes. His experience is merely "learned" or "observed." Alarmingly, the materials he relies upon are largely outdated and old, and one of his primary sources for information is Plaintiff's counsel, Len Bennett. Report, p. 26. There is no basis for the observations and conclusions made here, as the opinions are based on unreliable assumptions and unverifiable inferences.

Hendricks merely concludes that the Plaintiff was the victim of identity theft, and then works backwards from that conclusion to support his theory, which is improper as a matter of law

under Fed. R. Evid. 702. Hendricks opines on the reasonableness of NCS's investigation, yet Hendricks has never worked for a data furnisher or a consumer reporting agency and does not identify the bases for his conclusory opinions.

Hendricks is not an attorney, but his Report attempts to improperly interpret both the FCRA and relevant case law. Hendricks also offers his opinions that the NCS investigations of Plaintiff's disputes were inadequate, and that NCS did not perform a "reasonable reinvestigation" of Plaintiff's disputes. Hendricks, however, is not qualified to offer such opinions and fails to provide a reliable methodology supporting them. He has never participated in a dispute investigation, determined a credit score, or designed, tested or implemented any credit policies.

Hendricks ignores the investigative actions taken by NCS and fails to analyze whether those steps were reasonable, including NCS's communications with the Original Creditor and the Original Creditor's documents supporting the validity of the debt, or NCS's signature analysis. Egregiously, the Report utterly fails to address that the Account either originated with Plaintiff's permission or a fraud committed by his daughter who undisputably occupied the leased premises.

Hendricks' opinions on various economic and non-economic damages the Plaintiff claims to have suffered, or that all consumers will suffer when engaged in a dispute are not credible because he does not have the qualifications or any professional experience, education, or context that would assist any trier of fact resolving these issues. His opinions on plaintiff's damages are routinely excluded. *See infra*.

In addition, Hendricks' opinions regarding whether NCS's investigation was reasonable or that NCS violated the FCRA impermissibly invade the province of the jury, attempt to introduce hearsay evidence, and risk prejudicing NCS, while providing little probative value. This Court should do what other district courts have done and exclude Hendricks' testimony on these issues

pursuant to Fed. R. Evid. 702 and the Court's discretion. *See e.g.*:

- *Indich v Equifax Info Servs*, *Indich v. Equifax Info. Servs.*, No. 16-cv-02484-RM-MEH, 2017 U.S. Dist. LEXIS 178909, at *8-9 (D. Colo. Oct. 30, 2017) (excluding Hendricks' testimony regarding plaintiff's claimed and unclaimed damages, previous judgments or jury verdicts against the defendant);

- *Shipley v Hunter Warfield, Inc*, Case No: 8:20-cv-2285-JSM-SPF, 2021 U.S. Dist. LEXIS 208718, at *12-17 (M.D. Fla. Oct. 29, 2021) (excluding Hendricks' legal conclusions – specifically including whether defendant's investigation was reasonable, types of available damages, and the extent of plaintiff's damages);

- *Anderson v Equifax Info Servs, LLC*, , No. 2:16-CV-2038-JAR, 2018 U.S. Dist. LEXIS 52939, at *11-18 (D. Kan. Mar. 29, 2018) (excluding Hendricks' testimony regarding plaintiff's damages, legal conclusions, and prior litigation);

- *Brown v. Vivint Solar, Inc*, 612 F. Supp. 3d 1337, 1344-45 (M.D. Fla. 2020) (Hendricks not qualified to opine regarding plaintiffs' emotional or physical damage or the emotional and physical damages that generally arise from FCRA violations); and

- *McDonough v JPMorgan Chase Bank, NA*, *McDonough v. JPMorgan Chase Bank, N.A.*, No. 4:15-cv-00617-JCH, 2016 U.S. Dist. LEXIS 126755, at *5-8 (E.D. Mo. Sept. 16, 2016) (excluding Hendricks' "legal analysis or conclusions of law," including "whether [defendant's] conduct conformed to a particular legal standard, as this is an ultimate issue that should be decided by the jury. Similarly, Mr. Hendricks will not be permitted to provide any opinions as to whether [defendant's] actions were unreasonable, unreliable, inadequate, negligent, willful, or in any other manner violative of the FCRA.").[5]

It is Plaintiff's burden to show that the information that has been furnished by NCS is false (that the Account is not valid), which he will not be able to establish in a collateral attack, and for which Hendricks is not qualified to opine – only a court of law can determine if the Account is

---

[5] Hendricks offers his opinion without any factual support. Hendricks, therefore, lacks the necessary factual foundation to support his opinion. *See* Fed. R. Evid. 702 advisory cmt. notes ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'") *Brooke Grp. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 242 (1993) ("when undisputable record facts contradict or otherwise render an expert opinion unreasonable," that opinion is inadmissible); *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) (affirming the trial court's decision to exclude expert testimony that lacked sufficient scientific data to support proffered conclusions); *Gianfrancisco v. Excelsior Youth Ctrs., Inc.*, No. 10-cv-00991-PAB-KMT, 2012 WL 2890916, at *4 (D. Colo. July 16, 2012) (excluding portions of an expert's testimony because "[w]ithout information about the underlying facts supporting her conclusion, [the expert's] opinion cannot satisfy the strict standard for reliability set forth in Rule 702").

valid. If the information is not false, no violation of FCRA § 1681s-2(b) exists. *See Bibbs v. Trans Union*, 43 F.4th 331 (3d Cir. 2022); *Norman v. Trans Union, L.L.C.*, 669 F. Supp. 3d 351, 376-77 (E.D. Pa. 2023); *McLaughlin v Experian Info Solutions*, *McLaughlin v. Experian Info. Sols.*, No. 16-cv-01337-RM-KHR, 2017 U.S. Dist. LEXIS 230308, at *27-30 (D. Colo. Dec. 28, 2017).

As Hendricks' opinion relies upon the incorrect assumption that the Account is not valid, the remainder of his opinions regarding the conduct of NCS necessarily lacks any independent evaluation. Admitting any such information, documentation, or testimony into evidence – where there has been no qualified independent evaluation or corroboration that the Account is valid – would irreparably harm NCS as it is tantamount to the admission of inadmissible hearsay.

Hendricks has not shown reliable methodology, corroborating documents, or testimony to support his Report. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th 1995); *Cabrera v. Cordis Corp.*, 134 F.3d 1418,1422 (9th 1998) *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008). Plaintiff has failed to meet his burden, and the risk of confusing or misleading the jury through Hendricks' faulty testimony is particularly significant in this case, and the Court should therefore preclude Hendricks' testimony in its entirety. In the alternative, and at a minimum, Hendricks' opinions should be excluded relating to (a) legal analysis or conclusions of law, (b) whether NCS's conduct conformed to a particular legal standard, (c) whether NCS's actions were unreasonable, unreliable, inadequate, negligent, willful, or in any other manner violative of the FCRA, and (d) Plaintiffs' damages or the emotional and physical damages that generally arise from FCRA violations.

## CONCLUSION & PRAYER

For the reasons set forth above, NCS requests this Court to sign an order granting NCS's Motions, precluding Plaintiff, his counsel, and any witnesses from presenting, arguing, referring

to, or mentioning any evidence or eliciting any testimony concerning the following categories:

(1) Plaintiff's alleged economic damages or harm including, without limitation, any evidence or testimony suggesting that NCS (1) negatively impacted Plaintiff's credit, (2) prevented Plaintiff from obtaining additional loans, or (3) negatively impacted Plaintiff's finances; [opposed in part, Plaintiff agrees that he is not claiming economic damages, but is claiming non-economic damages stemming from the alleged false reporting]

(2) any willful or reckless conduct in violation of the FCRA, including any request for punitive damages or damages to punish NCS; [unopposed]

(3) any prior or other judgments, complaints, settlements or lawsuits against NCS; [opposed]

(4) a specific amount of damages sought or any computation of damages; [unopposed]

(5) any emotional distress damages, or in the alternative, any medical conditions, documents or expert testimony supporting emotional distress or non-economic damages, or any physical manifestations of Plaintiff's alleged emotional distress damages; [opposed]

(6) any documents or information that NCS should have considered in its investigations without establishing that such information or documents were in NCS's possession at the time of the investigation; [opposed]

(7) the proffered expert Report and testimony and opinions of Evan Hendricks, in whole, or alternatively, in part, excluding any opinions, testimony, or evidence regarding (a) legal analysis or conclusions of law, (b) whether NCS's conduct conformed to a particular legal standard, (c) whether NCS's actions were unreasonable, unreliable, inadequate, negligent, willful, or in any other manner violative of the FCRA, and (d) Plaintiffs' damages or the emotional and physical damages that generally arise from FCRA violations; [opposed]

(8) any matter previously determined in this case by the Order [ECF 76]; [opposition undecided]

(9) any matter not otherwise disclosed in discovery. [opposition undecided]

In addition, Defendant NCS seeks such other and further relief consistent with this Motion.

## D.C.COLO.LCivR 7.1(A) CERTIFICATION

Pursuant to D.C.COLO.LCIV.R 7.1(A), the undersigned hereby certifies that he conferred with counsel for Plaintiff Matthew Osborne, Esq., regarding this Motion and his responses are included in the Prayer above in brackets.

Dated: April 11, 2024

                    Respectfully submitted,

By:   *Katrina M. DeMarte*
       KATRINA M. DEMARTE
       MI Bar No. P81476; CO Bar #43135

DEMARTE LAW, PLLC
39555 Orchard Hill Place, Suite 600
Novi, MI 48375
(313) 509-7047 – Telephone
katrina@demartelaw.com

By:   *John W. Bowdich*
       JOHN W. BOWDICH
       TX Bar No. 00796233

BOWDICH & ASSOCIATES, PLLC
8150 N. Central Expressway, Suite 500
Dallas, Texas 75206
(214) 307-5173 – Telephone
(214) 307-5137 – Telecopy
jbowdich@bowdichlaw.com

COUNSEL FOR DEFENDANT
NATIONAL CREDIT SYSTEMS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2024, I electronically submitted the foregoing document with the District Clerk for the District of Colorado using the ECF system, which will send notification of such filing to all attorneys of record.

By:   *s/ John W. Bowdich*
       JOHN W. BOWDICH