# EXHIBIT "A"

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:22-cv-01048-DDD-JPO

COY L. DANIELS,

   Plaintiff,

v.

NATIONAL CREDIT SYSTEMS, INC,

   Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

    Defendant National Credit Systems, Inc., purchased the rights to collect a debt that Plaintiff Coy L. Daniels allegedly owed on a lease agreement with an apartment company. Mr. Daniels contends he does not owe the debt and brought this suit alleging NCS violated the Fair Credit Reporting Act and the Fair Debt Collection Practice Act when it refused to stop attempting to collect it and reporting it on his credit. Doc. 1. Because neither of those acts provides a forum for resolving the legal dispute over whether Mr. Daniels is liable under the lease, NCS's motion for summary judgment (Doc. 30) is granted.

## BACKGROUND

    Mr. Daniels's complaint alleged that he was the victim of identity theft and his personal information was compromised, and that "as a result, a fraudulent account was subsequently opened by individuals unknown to Plaintiff for a personal real estate lease with Glen at Park Apartments." Doc. 1 at 3. He alleged that, in fact, "NCS intentionally

1

misrepresented to Equifax that Plaintiff had a business relationship with NCS through the original creditor, Glen." *Id.* at 4. That no longer appears to be his story. He now acknowledges that he had, in fact, filled out an application in January 2017 for a lease at Glen apartments so that his son, whose credit score was not high enough to qualify, could rent an apartment there. *See* Docs. 30 at 3, 34 at 3, 6. He acknowledges that his son did, in fact, rent the apartment with Mr. Daniels's knowledge until February 2019, when he vacated the premises with a balance owing of $4,266.29. *Id.*

NCS contends that Mr. Daniels is liable for that balance, and thus has continued to report it to credit bureaus and to attempt to collect on it. Doc. 30 at 7-9. Mr. Daniels maintains, however, that he never signed the lease and that he only filled out the application with the understanding that "by signing that document, it would help his son get an apartment" and that Glen "said he can sign *the lease application,* and within 6 months, his son would be on his own." Doc. 34 at 7. He therefore argues that he is not liable under the lease for the balance owing or anything else.

## LEGAL STANDARDS

The purpose of summary judgment is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under the governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence pre-

2

sented. *Id.* If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the moving party bears the burden of demonstrating no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145.

In deciding whether the moving party has carried its burden, courts do not weigh the evidence and instead must view it and draw all reasonable inferences from it in the light most favorable to the nonmoving party, here, Mr. Daniels. *Adamson*, 514 F.3d at 1145. But neither unsupported conclusory allegations nor mere scintillas of evidence are sufficient to demonstrate a genuine dispute of material fact on summary judgment. *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1291 (D. Colo. 2009).

The Fair Credit Reporting Act contains a number of provisions aimed at ensuring the accuracy of credit reports. But the only one relevant here—because it provides a private cause of action—is relatively narrow.[1] Under 15 U.S.C. § 1681s-2(b)(1), upon notice of a dispute, a furnisher[2] of credit information must:

    A. Investigate the disputed information;
    B. Review all relevant information provided by the consumer reporting agency;
    C. Report the results of the investigation to the consumer reporting agency;
    D. Report the results of the investigation to all other

---

[1] *See* Doc. 1 at 13, acknowledging this; *Llywellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp.2d 1062, 1072 (D. Colo. 2009) ("Courts have regularly found that although § 1681s–2(a) requires the reporting of accurate information, the FCRA creates no private right of action in situations where incorrect information has been reported in violation of that duty.").

[2] SLS is a furnisher of information under the Act.

3

>   consumer reporting agencies if the investigation reveals that the information is incomplete or inaccurate; and
>
>   E. Modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178 (10th Cir. 2013). If it does not, a plaintiff may have a claim for actual, compensatory, or punitive damages, depending on whether she can show that the violation was negligent or willful. 15 U.S.C. § 1681n. If, however, the reported information is in fact accurate there can be no liability (and no damages) for reporting accurate information. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305 (11th Cir. 2018) (rejecting plaintiff's argument that even if the furnisher's report was technically accurate, it was materially misleading).

The Fair Debt Collection Practices Act further prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes the "false representation of the character, amount, or legal status of any debt," (§ 1692e(2)(A)), the "threat to take any action that cannot legally be taken or that is not intended to be taken," (1692e(5)), and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," (§ 1692e(10)). Section 1692f precludes debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," including the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f(1).

4

## ANALYSIS

Mr. Daniels's argument is based on his contention that he is not liable under the lease because he never actually signed the lease in question, just the application, and because he was misled into doing so by Glen. The problem is that whether all that is so is a legal question, not a factual one, and the context of this case—FCRA and FDCPA claims—is not the right one for resolving that question.

As to the FCRA, this is fairly straightforward. The Tenth Circuit has explained that

> A reasonable reinvestigation, however, does not require [credit reporting agencies] to resolve legal disputes about the validity of the underlying debts they report. *See Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892 (9th Cir.2010) ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."); *DeAndrade v. Trans Union LLC,* 523 F.3d 61, 68 (1st Cir.2008) (holding a reasonable reinvestigation does not entail resolving "legal issue[s] that a credit agency ... is neither qualified nor obligated to resolve under the FCRA").

*Wright v. Experian Info. Solutions, Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015).

It is true that *Wright* and much of the caselaw on this point focuses on the role of credit reporting agencies, which NCS is not. *See, e.g., Carvalho*, 629 F.3d at 891 ("Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."). And certainly that is particularly true of a credit reporting agency, which "is a third party, lacking any direct relationship with the consumer." *Id.* at 892 (cleaned up).

5

That step of removal from the dispute is not present here where the defendant is a "furnisher" under the law, but the rationale applies because it is not just reporting agencies that are ill-equipped to adjudicate contract disputes; so, too, is the FCRA itself. That act prohibits "furnish[ing] any information relating to a consumer to any [CRA] if the person knows or has reasonable cause to believe that the information is inaccurate" or "if the person has been notified by the consumer . . . that specific information is inaccurate [and] the information is, in fact, inaccurate." 15 U.S.C. § 1681s-2(a)(1). It requires investigation, and correction of mistakes and factual inaccuracies, but does not provide a mechanism for resolving legal disputes about the status of a claimed debt. *See Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 37 (1st Cir. 2010).

As this case shows, "generally, unresolved contract disputes constitute legal disputes that are not factual inaccuracies." *Belair v. Holiday Inn Club Vacations Inc.*, No. 6:21-cv-165-WWB-DCI, 2022 WL 18284974, at *7–8 (M.D. Fla. Dec. 12, 2022). Indeed, allowing reports to note that a debtor disputes a debt is a recognition that such disputes exist, and should be taken into account by anyone looking at a credit report. But it also shows that the FCRA process is not meant to resolve them. *See* 15 U.S.C. §§ 1681i(a)(6)(B)(iii), (iv); (b)-(c) ("the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information"); *Carvalho*, 629 F.3d at 892 ("In this way, potential creditors have both sides of the story and can reach an independent determination of how to treat a specific, disputed account.").

To decide whether Mr. Daniels is right about his obligations under the debt would potentially require, among other things, legal analysis of state contract law, choice of law doctrines, and estoppel principles, as well as factual inquiries into whose signature was on the lease, when it

6

was signed, what Mr. Daniels was told and by whom, and perhaps why Mr. Daniels's complaint did not present an accurate statement of the facts underlying his claims.³ None of those things is contemplated under the FCRA. And even if they were, Mr. Daniels's only response is to insist that he did not sign the lease, which, even if true, leaves the rest of these questions unanswered.

The FDCPA is perhaps a closer call, if only because there is even less relevant precedent and because one can imagine scenarios where a collector might fall within its provisions by knowingly attempting to collect on an invalid debt.⁴ I need not go so far as to say that a claim alleging such activity could never violate the FDCPA. I need only note that while I accept for purposes of summary judgment Mr. Daniels's assertion that he did not sign the lease and was misled about his liability, I need not accept his conclusion that that means he is, *ipso facto*, not liable for the balance on his son's lease. "[T]he FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts." *Chambers v. Habitat Co.*, 68 F. App'x 711, 715 (7th Cir. 2003), *cert. denied*, 540 U.S. 1119 (2004); *see also Mohnkern v. Equifax Information Services, LLC*, 2021 WL 5239902, at *8 (W.D.N.Y. Nov. 10,

---

³ Mr. Daniels's position opposing summary judgment also would mean that these questions about his liability under the lease would have to be answered by a jury. *See* Doc. 34 at 11. That cannot be the case. *Girard Offs., LLC v. Am. Zurich Ins. Co.*, 2022 WL 17976755, at *4 (D. Colo. Nov. 23, 2022) (noting that contract interpretation is generally a question of law).

⁴ Mr. Daniels's FDCPA claim alleges that NCS's attempts to collect the debt from him violate a variety of statutory provisions. *See* Doc. 1 at 13-14. But all of these, again, are based on the contention that he did not sign the lease in question and cannot be liable for the debt. See Doc. 34 at 3, 15.

7

2021) ("unresolved legal dispute" as to whether creditor breached contract, thereby relieving the plaintiffs of their obligation to pay, did not give rise to Section 1692e claim).

Even if the FDCPA may be a closer call, it, too, fails to contemplate the many legal disputes implicated in this case, all as mentioned above regarding the FCRA. Once again, Mr. Daniels's insistence that he did not sign the lease leaves these legal questions unresolved.

Since this case is therefore not properly suited to resolve the validity of the underlying claim, what we are left with is exactly what NCS reported: a debt that the creditor insists is valid but that the debtor disputes. *See* Doc. 30 at 7-10; Doc. 34 at 4-5. Reporting that information does not violate the FCRA, and attempting to collect on it does not violate the FDCPA. *See Wright.*, 805 F.3d at 1242 (addressing the FCRA); *see also Chambers*, 68 F. App'x at 715 (addressing debt collection under the FDCPA).

This, of course, does not leave Mr. Daniels or others like him without recourse. He could file a declaratory judgment or other appropriate action in the proper venue for litigating claims about the validity of apartment leases, or, if CNS or Glen seeks to sue for the debt, he could contest it in that process. Either way, the validity or invalidity of the claimed debt would be resolved in a court of law. If he prevailed and "a court had ruled the mortgage invalid and [the creditor] had continued to report it as a valid debt, then the consumer would have grounds for a potential FCRA claim." *Carvalho*, 629 F.3d at 891-91 (cleaned up).

8

## CONCLUSION

Defendant National Credit System's Motion for Summary Judgment (**Doc. 30**) is **GRANTED**. Plaintiff's remaining claims are **DISMISSED**.

Dated: February 23, 2024         BY THE COURT:

_____
Daniel D. Domenico
United States District Judge