**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02597-NYW-JPO

ROBBIN WARD,

     Plaintiff,

v.

NATIONAL CREDIT SYSTEMS, INC.,

     Defendant.

---

**ORDER ON MOTIONS IN LIMINE**

---

Pending before this Court are the remaining issues in two pretrial motions:

(1)     Plaintiff's Motion in Limine [Doc. 90, filed April 11, 2024]; and

(2)     National Credit Systems, Inc.'s Omnibus Motion in Limine and Motion to Exclude or Limit Expert Testimony ("Defendant's Motion in Limine" or "Defendant's Motion") [Doc. 91, filed April 11, 2024].

The Court heard argument with respect to these Motions during the Final Pretrial/Trial Preparation Conference held on May 23, 2024, ruled on certain issues, and took other issues under advisement.  [Doc. 106].  Having reviewed the briefing, considered the oral argument of counsel, and the applicable law, the Court respectfully **GRANTS in part** and **DENIES in part** Plaintiff's Motion in Limine and **GRANTS in part** and **DENIES in part** Defendant's Motion in Limine as reflected in the Minutes of the Trial Preparation Conference [Doc. 106] and as follows.

**BACKGROUND**

The background of this case has been discussed in prior rulings, *see* [Doc. 76], and therefore will be discussed only briefly herein.  On January 30, 2019, an online application to rent real property located at 229 Cliff Heights Circle, Dallas, TX 75232 was submitted to nonparty Main Street Renewal, LLC ("MSR" or the "Original Creditor").  [Doc. 107 at 7].  The application was in the name of Plaintiff Robbin Ward ("Plaintiff" or "Mr. Ward") and contained his Colorado home address, the last four digits of his social security number, an email address (robbinward61@gmail.com), and income information.  [*Id.*; Doc. 55-3].  The application lists Quen Green ("Ms. Green") as an emergency contact, noting the relationship as "Daughter" and providing a Texas address and phone number. [Doc. 55-3 at 2].  Color copies of Plaintiff's driver's license and social security card were provided with the application.  [Doc. 76 at 2].

The rental application was approved, [Doc. 55-14], and a lease was signed with a commencement date of February 15, 2019, and an expiration date of February 14, 2020 (the "Lease"), [Doc. 76 at 3].  On May 6, 2019, MSR issued an eviction notice for nonpayment of rent to Mr. Ward at 229 Cliff Heights Circle, Dallas, TX 75232.  [Doc. 55-20 at 1].  In December 2019, MSR hired Defendant National Credit Systems, Inc. ("Defendant" or "NCS") to collect a balance of $5,375.82 from Plaintiff.  [Doc. 107 at 7].  On February 1, 2020, NCS furnished data regarding the delinquent Lease account to Trans Union, LLC ("Trans Union"); Equifax Information Services, LLC ("Equifax"); and Experian Information Solutions, Inc. ("Experian") (collectively, the "CRAs").  [*Id.*; Doc. 76 at 3–4].

The CRAs notified NCS by automated consumer dispute verifications ("ACDVs") that Plaintiff disputed the debt on five separate occasions.  [Doc. 107 at 7].  Specifically, NCS received dispute notices on June 10, 2020, from Experian, and on June 11, 2020, from Equifax and Trans Union that provided dispute code 1 ("not his/hers") or dispute code 6 ("not aware of collection").  [*Id.* at 7–8].  On July 4, 2020, NCS received a second dispute from Equifax, and on July 10, 2020, NCS received a second dispute from Trans Union that provided dispute code 103 ("claims true identity fraud/account fraudulently opened").  [*Id.* at 8].  The first three ACDVs received by NCS did not contain any attachments.  [*Id.*].  The ACDVs received in July 2020 included a Federal Trade Commission Identity Theft Report (the "FTC Identity Theft Report") and copies of Mr. Ward's social security card and Colorado driver's license.  [*Id.*].  In the FTC Identity Theft Report, Mr. Ward attested that he called NCS, was told to contact the Borland Law Firm, and learned that the Lease was associated with property in Dallas and that certain information in the application for the Lease was associated with his daughter.  [Doc. 62-32 at 1].

All information furnished by NCS to the CRAs after June 18, 2020, included the fact that Mr. Ward disputed the account.  [Doc. 107 at 8].  Following the conclusion of its investigation into the five disputes, NCS advised the CRAs that it had verified the MSR account connected with the Lease as accurate.  [*Id.*].

On September 24, 2021, Mr. Ward initiated this action against NCS and the CRAs, alleging violations of the Fair Credit Reporting Act ("FCRA").  [Doc. 1].[1]  In Count III,

---

[1] Counts I and II were directed at the CRAs for violations of the FCRA.  [*Id.* at ¶¶ 96–107].  In May 2022, Plaintiff stipulated to dismiss all claims against the CRAs.  [Doc. 39; Doc. 42; Doc. 44].

Plaintiff alleges that NCS, as a "furnisher" of information, violated the FCRA by failing to conduct a reasonable investigation into Plaintiff's credit disputes. [*Id.* at ¶¶ 108–13 (citing 15 U.S.C. § 1681s-2(b)(1)(A)–(B))]. In Count IV, Plaintiff alleges that NCS violated the FCRA by failing to correct, update, or delete Plaintiff's information after receiving Plaintiff's disputes from the CRAs. [*Id.* at ¶¶ 117–18 (citing 15 U.S.C. § 1681s-2(b)(1)(E))].

NCS moved for summary judgment on Counts III and IV, arguing that Plaintiff lacked damages and that he failed to adduce sufficient evidence that NCS acted willfully, reported an inaccurate debt, or conducted an unreasonable investigation. *See generally* [Doc. 55]. NCS further argued that Mr. Ward's claim of identity theft raised a legal dispute that could not be resolved in the context of an FCRA violation. [*Id.* at 12–21]. After full briefing on the merits, [Doc. 62; Doc. 63], the Honorable Lewis T. Babcock[2] granted in part and denied in part NCS's motion for summary judgment, [Doc. 76]. Judge Babcock granted summary judgment in NCS's favor with respect to willfulness and economic damages, but otherwise denied the motion. [*Id.*]. Judge Babcock found:

> Questions including as to whether NCS should have reviewed the documents in its possession sooner or at all (or rather than passing them on to MSR), whether NCS was reasonable in insisting on a police report, whether NCS should have sought additional documents from the Original Creditor (such as the online Lease application, which contained the tenant's IP address) and, in general, whether NCS conducted a reasonable investigation are questions for the jury.

[*Id.* at 26]. Judge Babcock also rejected NCS's argument that Mr. Ward's claims presented a legal dispute as to his liability on the Lease, instead concluding that Plaintiff's

---

[2] This action was originally assigned to Judge Babcock but was transferred to the undersigned judicial officer on November 27, 2023. [Doc. 83].

"claim is that he reported being the victim of identity fraud and his dispute was not reasonably investigated at that time."  [*Id.* at 27].

In anticipation of a trial set to commence on June 17, 2024, the Parties filed the instant Motions in Limine.  Plaintiff's Motion in Limine seeks to exclude the following categories of evidence:  (1) after-acquired evidence reflecting that Ms. Green stole Plaintiff's identity; (2) evidence regarding NCS's legal action against Ms. Green; (3) evidence of Plaintiff's criminal convictions that are older than ten years; (4) evidence that Plaintiff's claims arise under a fee-shifting statute; and (5) evidence of Plaintiff's settlements with the CRAs.  [Doc. 90 at 1–5].  During the Final Pretrial/Trial Preparation Conference, this Court granted Plaintiff's Motion in Limine with respect to Plaintiff's criminal convictions and evidence that his claims arise under a fee-shifting statute.  [Doc. 106 at 2].

Defendant's Motion in Limine seeks to exclude the following evidence:  (1) any evidence and testimony related to a claim for a willful violation of the FCRA or a demand for economic damages; (2) prejudicial references to NCS's character, including but not limited to past lawsuits and settlements; (3) evidence of documents or information not in NCS's possession at the time of NCS's investigation; (4) evidence of economic damages and physical manifestations of emotional distress damages; and (5) evidence of any calculations or documents in support of damages.  [Doc. 91 at 4–9].  NCS also moves to preclude testimony by Plaintiff's expert witness, Evan Hendricks ("Mr. Hendricks").  [*Id.* at 9–14.  At the Final Pretrial/Trial Preparation Conference, the Court granted Defendant's Motion with respect to prejudicial references to NCS's character, including but not limited to past lawsuits and settlements; denied Defendant's Motion insofar as it sought to

exclude evidence of physical manifestations in support of emotional distress damages, as discussed on the record; and denied Defendant's Motion to the extent it sought to prevent Plaintiff from requesting a certain amount of damages at trial.  [Doc. 106 at 2].

The Court took the remaining issues from both Motions under advisement and now rules upon them herein.

## LEGAL STANDARD

Motions in limine exist outside the Federal Rules of Civil Procedure and Federal Rules of Evidence and serve to enable the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).  Pretrial rulings issued in response to motions in limine can save time during trial as well as cost and effort for the Parties as they prepare their cases.  However, "a court is almost always better situated during the actual trial to assess the value and utility of evidence."  *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) (citing *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard [of being clearly inadmissible], evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.")).

Whether to admit or exclude evidence is a decision that "lies within the sound discretion of the trial court."  *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994).  The moving party bears the burden of demonstrating that the challenged evidence "is inadmissible on any relevant ground."  *Pinon Sun Condo. Ass'n, Inc. v. Atain*

*Specialty Ins. Co.*, No. 17-cv-01595-CMA-NRN, 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020) (quotation omitted).  Accordingly, the Court may deny a motion in limine if the movant fails to set out, with the necessary specificity, the evidence it wishes to have excluded.  *Id.*  Denial of a motion in limine, however, does not mean that the evidence will automatically be admitted at trial; rather, "the court may alter its limine ruling based on developments at trial or on its sound judicial discretion," upon a party's timely objection. *Id.* (quotation omitted).

Under Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence is generally admissible but may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

## ANALYSIS

### I.     Plaintiff's Motion in Limine

Three categories of evidence addressed in Plaintiff's Motion in Limine remain at issue:  (1) after-acquired evidence reflecting that Ms. Green stole Plaintiff's identity; (2) evidence regarding NCS's legal action against Ms. Green; and (3) settlements with the CRAs.  This Court considers each in turn.

### A.      After-Acquired Evidence

Plaintiff contends that this Court should exclude evidence regarding Plaintiff's daughter, acquired during discovery in this matter, as irrelevant and overly prejudicial. Specifically, Plaintiff argues that Judge Babcock has already concluded that NCS's investigation during discovery in this litigation is not relevant because it has no bearing on the investigation NCS undertook in 2020.  [Doc. 90 at 1–2].  Defendant responds that precluding such evidence would improperly relieve Plaintiff from his threshold burden to show that the information furnished by NCS was inaccurate, and would prevent NCS from showing that Plaintiff's dispute is legal, rather than factual.  [Doc. 93 at 2–5].

Under § 1681s-2(b), when a CRA notifies an information furnisher of a dispute, the furnisher must take the following steps:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016) (quotation omitted). To establish a violation of § 1681s-2(b), Mr. Ward bears the burden of showing that the information NCS furnished was inaccurate or incomplete, *see Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014), and that NCS's investigation was unreasonable, *see Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1011 (D. Colo. 2012).

Here, NCS furnished information to the CRAs that Mr. Ward was subject to an account in collections owed to MSR arising from the Lease.  [Doc. 107 at 7].  After the CRAs informed NCS that Mr. Ward disputed the debt, NCS conducted its own

investigation and advised the CRAs that it had verified the MSR account as accurate.  [*Id.* at 7–8].  Mr. Ward intends to present evidence that he did not submit the application, enter the Lease, or otherwise authorize anyone to use his information, but rather was the victim of identity theft and NCS failed to reasonably investigate his dispute.  [*Id.* at 1–2, 9].

In light of Mr. Ward's anticipated testimony, and subject to any other evidentiary objections, this Court concludes that NCS may present after-acquired evidence concerning Ms. Green because such evidence is relevant to Mr. Ward's contention that he did not authorize anyone to use his information to secure the Lease and was instead the victim of identity theft.  *See* Fed. R. Evid. 401 ("Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").  Nor is the Court persuaded that the potential prejudicial impact of such evidence outweighs its probative value under Rule 403 of the Federal Rules of Evidence.  Mr. Ward is free to examine witnesses about when such evidence was obtained, how difficult it was to obtain, whether NCS searched for or had such information before or during its investigation, and whether it would have been reasonable for NCS to obtain such evidence during the investigation arising from the ACDVs.

***Accuracy as Legal or Factual Issue.***  The Court will not permit NCS to argue to the jury that Mr. Ward is legally barred from bringing a claim pursuant to the FCRA because whether the information furnished by NCS is inaccurate is a legal rather than a factual issue.  As noted by Plaintiff and this Court during the Final Pretrial/Trial Preparation Conference, Judge Babcock already rejected that theory in the context of summary judgment.  *See* [Doc. 76 at 27].  That ruling is, therefore, the law of the case.  *See McIlravy*

*v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) (observing that the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (quotation omitted)).   None of the "exceptionally narrow" exceptions to the doctrine applies here.  *See United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (setting out three circumstances in which a court will not apply the law of the case doctrine).

Even absent the law of the case, this Court would conclude that Mr. Ward's claim is not barred.  NCS cites *Daniels v. National Credit Systems, Inc.*, No. 22-cv-01048-DDD-JPO, 2024 WL 2194270 (D. Colo. Feb. 23, 2024), where the district court granted summary judgment in favor of NCS based on its argument that the plaintiff's claim presented a legal, rather than factual, dispute.  But unlike *Daniels*, it appears that Mr. Ward disputes whether he filled out the application for the Lease, executed the Lease, gave his daughter permission to use his information to secure the Lease, or even knew about the Lease or his daughter's occupancy of the premises.  The factual dispute therefore centers on whether Mr. Ward was the victim of identity theft, based on his challenge to the legitimacy of the information and documents provided with the Lease application.  *Cf. Lara v. Experian Info. Sols., Inc.*, 625 F. Supp. 3d 1062, 1072 (S.D. Cal. 2022) (denying summary judgment when furnisher appears to have only reviewed its own file in response to an ACDV after plaintiff contended he was a victim of identity fraud).

"[T]he FCRA's requirement that furnishers of information correct incomplete or inaccurate information extends not only to false information, which is clearly inaccurate, but to information provided in such a manner as to create a materially misleading impression as well."  *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th

Cir. 2013) (cleaned up).  *See, e.g., Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) ("Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading.").  NCS had the option, after its investigation, to notify the CRAs that the information "cannot be verified."  *See* 15 U.S.C. § 1681s-2(b)(1)(E).  Instead, it verified that the information was accurate.  [Doc. 107 at 8].  "When a furnisher reports that disputed information has been verified, the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true.  This is a factual question, and it will normally be reserved for trial."  *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016).

Accordingly, this Court respectfully **DENIES** Plaintiff's Motion in Limine with respect to evidence regarding Ms. Green that was acquired during discovery in this matter, but clarifies that it will not entertain additional argument by NCS that Mr. Ward's claim is barred for presenting a legal, rather than a factual, dispute.

### B.    Texas Legal Action

Next, Plaintiff seeks to preclude any evidence regarding NCS's legal proceeding against Ms. Green.  *See* [Doc. 90 at 3 (citing [Doc. 61 at 15])].[3]  In response, NCS argues that it intends to introduce evidence about its efforts to obtain Ms. Green's testimony in Texas, including the reasonable inferences that can be drawn from her refusal to testify.  [Doc. 93 at 5–6].  This Court respectfully disagrees that such evidence is relevant.  Even

---

[3] The original Final Pretrial Order referenced a "pending '202' examination in Dallas County, Texas."  [Doc. 61 at 15].  The Amended Final Pretrial Order does not include reference to such a proceeding.  *See generally* [Doc. 107].

assuming minimal relevance, the Court concludes that the potential prejudice would significantly outweigh the probative value of such testimony.

Even if NCS could establish foundation and authenticity with respect to the evidence it seeks to introduce, this Court concludes that Ms. Green's lack of response to the "202" proceeding in Texas does not make it more or less probable that Mr. Ward's account was inaccurate or incomplete, or that NCS conducted a reasonable investigation. Nor does this Court find that the actions of Ms. Green—an emancipated adult—should necessarily be imputed to Mr. Ward without some evidence that Mr. Ward spoliated evidence in this case or, at a minimum, contributed to Ms. Green's failure to appear in Texas. There is also no indication that NCS sought Ms. Green's deposition or documents in this action through a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure.

Even where a party has spoliated evidence, an adverse inference is only permitted upon a showing of bad faith. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009). No such showing has been made here. Finally, this Court concludes that any minimal probative value is substantially outweighed by the potential prejudice to Mr. Ward and the risk of jury confusion occasioned by suggesting that Mr. Ward controlled or could control Ms. Green's actions, or by introducing evidence regarding a separate litigation in which this Court had no role. Accordingly, this Court **GRANTS** Plaintiff's Motion in Limine with respect to NCS's legal proceedings in Texas against Ms. Green.

### C.    Settlements

Plaintiff also seeks to preclude the introduction of evidence of his settlements with the respective CRAs. [Doc. 90 at 5]. He argues that there is no right to a set-off or

settlement credit, and that evidence of Plaintiff's prior settlements with the CRAs is not relevant and is unduly prejudicial to him. [*Id.*]. Defendant responds that the Tenth Circuit recognizes the "one satisfaction rule," which holds that where "the conduct of multiple defendants results in a single injury with common damages, and one of the defendants settles with the plaintiff, the amount of the settlement is credited against the amount that may be recovered from the non-settling defendants." [Doc. 93 at 9 (quoting *Friedland v. TIC-The Indus. Co.*, 566 F.3d 1203, 1209 (10th Cir. 2009)].

As an initial matter, this Court has not determined whether the "one satisfaction rule" applies in this case, either as a legal or factual matter. Defendant cites no authority from the Tenth Circuit applying such a rule to damages arising under the FCRA, and the Parties have not fully briefed the issue. Next, while Defendant argues that Mr. Ward has not apportioned his injuries across different violations, sets of facts, or legal claims, NCS conceded at the Final Pretrial/Trial Preparation Conference that it could not predict Mr. Ward's testimony.

Rule 408 of the Federal Rules of Evidence bars settlement evidence "either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). Settlement evidence may be permitted for other purposes, however, such as to prevent jury confusion or speculation as to the CRAs' absence. *Cf. Bond v. Bd. of Cnty. Comm'rs of Muskogee Cnty.*, No. 20-7067, 2023 WL 3589081, at *10 (10th Cir. May 23, 2023). Thus, to the extent that NCS wishes to introduce evidence of the fact of settlement—i.e., that Mr. Ward sued Trans Union, Experian, and Equifax, and settled with them—it may do so. *See id.* NCS may not, however, elicit evidence, argue, or suggest anything else about the settlements, including but not limited to the amount of the settlements, any terms of

the settlements, the timing of the settlements, or any impact the settlements have upon the damages that Mr. Ward may receive.[4]  In addition, the Court finds that the potential application of the "one satisfaction rule" to Mr. Ward's claims is more appropriately done by the Court post-trial.  *See, e.g.*, *Garcia v. Equifax Info. Servs., LLC*, No. 8:22-cv-01987-WFJ-UAM, 2024 WL 2293042, at *2 (M.D. Fla. May 21, 2024).  Given these parameters, the Court finds that the most appropriate way to introduce evidence with respect to Plaintiff's settlements would be through a stipulated fact.  The Parties are **ORDERED** to meet and confer and submit such stipulated fact no later than **June 10, 2024**.

## II.     Defendant's Motion in Limine

The following issues remain with respect to Defendant's Motion in Limine:  the exclusion of (1) evidence of documents or information not in NCS's possession at the time of NCS's investigation; (2) evidence of emotional harm arising from impaired credit; and (3) opinions rendered by Mr. Hendricks, Plaintiff's proffered expert.  This Court considers each in turn.

### A.     Evidence of Documents or Information Not in NCS's Possession

NCS seeks to prohibit evidence of documents and information not in its possession at the time of its investigation into Plaintiff's dispute, arguing that such evidence is not relevant.  [Doc. 91 at 5–7].  NCS urges this Court to limit the evidence to what was in NCS's possession at that time because "a furnisher of information need investigate only what is contained in the CRA's dispute notice as to the nature of the dispute."  [*Id.* at 6

---

[4] Should Plaintiff open the door at trial to additional evidence or argument regarding his settlements with the CRAs, the Court will weigh any renewed arguments at that time.

(quoting *Edeh v. Midland Credit Mgmt.*, 413 F. App'x 925, 926 (8th Cir. 2011))].  This Court respectfully declines to limit the evidence in such a manner.

While it is true that the reasonableness of a furnisher's investigation under the FCRA is driven by what information the furnisher had at the time of the investigation, *see Maiteki*, 828 F.3d at 1275, it does not follow that other evidence that could have been uncovered at the time of the investigation is not relevant.  Multiple circuit and district courts have found that juries may consider whether the circumstances warranted a defendant looking beyond its internal records in conducting a reasonable investigation under the FCRA.  *See, e.g.*, *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 619 (6th Cir. 2012); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *Lara*, 625 F. Supp. 3d at 1072; *Romero v. Monterey Fin. Servs., LLC*, No. 3:19-cv-01781-JM-KSC, 2021 WL 268635, at *3 (S.D. Cal. Jan. 27, 2021).  Nor does the Court find that such evidence is unduly prejudicial under Rule 403 of the Federal Rules of Evidence.  NCS is free to adduce evidence that certain documents were not available to it during the investigation, or that Mr. Ward's disputes did not provide it sufficient information to reasonably warrant the search of records outside of what Mr. Ward provided and its own internal record.  Indeed, permitting NCS to introduce after-acquired evidence to convince the jury that the disputed information was not inaccurate or incomplete while precluding Mr. Ward from introducing evidence about what information and documentation NCS failed to uncover during its investigation would be inequitable.

## B.    Evidence of Impaired Credit

While Defendant characterizes this issue as precluding Plaintiff from presenting evidence with respect to economic damages, *see* [Doc. 91 at 4, 7], it also seeks a ruling

that would bar any evidence or argument that NCS impacted or "ruined" Plaintiff's credit or prevented him from obtaining additional loans.  [*Id.*].  Defendant invokes both the law of the case and Rule 403.  [*Id.*].  Plaintiff responds by indicating that he "intends to fully follow the contours of the [summary judgment] Order, but the Order does not preclude Plaintiff from offering evidence of non-economic damages related to impaired credit as a result of Defendant's actions."  [Doc. 92 at 2].

In the summary judgment order, Judge Babcock determined that "[t]here [was] no evidence to suggest that Plaintiff's credit report was pulled by a potential lender or that he was denied credit (or received less favorable terms) after the CRAs notified NCS on June 10 and 11 of Plaintiff's disputes."  [Doc. 76 at 11 (emphasis omitted)].  Judge Babcock went on to conclude that the diminution of Plaintiff's credit score could not support a claim for economic damages.  [*Id.* at 11–12].  But Judge Babcock also acknowledged, in denying summary judgment with respect to non-economic damages, that Mr. Ward had explained that "NCS's actions caused him to feel devastated over the damage done to his credit score (which he had worked hard to rebuild)."  [*Id.* at 13].

Courts have concluded that juries may assess non-economic damages such as humiliation, mental distress, and injury to reputation and creditworthiness, even if the plaintiff has failed to establish out-of-pocket economic losses.  *See Kim v. BMW Fin. Servs. NA, LLC*, 142 F. Supp. 3d 935, 944 (C.D. Cal. 2015), *aff'd*, 702 F. App'x 561 (9th Cir. 2017).  Courts have also held that plaintiffs may seek noneconomic damages resulting from humiliation and embarrassment resulting from denials of credit and time spent fighting inaccurate reports.  *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995).  Indeed, the Tenth Circuit has observed that "[t]he purpose of FCRA

is to ensure accuracy and fairness in credit reporting and to require that such reporting is confidential, accurate, relevant, and proper.  FCRA enables consumers <u>to protect their reputations</u>, and to protect themselves against the dissemination of false or misleading credit information."  *See Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1245 (10th Cir. 1999) (citations omitted and emphasis added).

Nevertheless, causation remains a cornerstone of any damages analysis. "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages," including emotional distress damages.  *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 604 (7th Cir. 2006) (quotation omitted).  As previously discussed, NCS's obligations with respect to conducting a reasonable investigation did not arise until it received notice of a dispute from the CRAs on June 10, 2020.  Therefore, Mr. Ward may introduce evidence to allow the jury to find that NCS's actions after June 10, 2020, resulted in a negative impact on his terms of credit or credit score that, in turn, caused him to suffer non-economic damages.

### C.     Rule 702

Finally, this Court turns to NCS's argument that Plaintiff's expert, Mr. Hendricks, should be excluded.[5]

---

[5] While Plaintiff contends that NCS's argument is untimely under this Court's Uniform Civil Practice Standards, [Doc. 92 at 6], this Court notes that this action was only reassigned to the undersigned judicial officer well after such deadline would have expired, [Doc. 83]. This Court further notes that Judge Babcock has no such deadline.  Thus, this Court declines to deny this portion of Defendant's Motion in Limine based on untimeliness.  *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010) (observing that the Federal Rules of Civil Procedure prefer resolution on the merits).  Nor does this Court conclude that the vehicle for this issue, i.e., a motion in limine rather than a stand-alone motion to exclude, reallocates the burden of proof under Rule 702.  *Cf. Owner-Operator Indep.*

### 1.    Legal Standard

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As noted by the Advisory Committee when the Rule was first promulgated, "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge."  Fed. R. Evid. 702 advisory committee's note.

It is well established that trial courts are charged with the responsibility of acting as gatekeepers of expert testimony to ensure that expert testimony or evidence admitted is not only relevant, but also reliable.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993).  To fulfill that gatekeeper function, courts within the Tenth Circuit conduct a two-part inquiry.  First, courts consider whether the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline by conducting a preliminary inquiry into the expert's qualifications and the admissibility of the proffered evidence, i.e., whether the

---

*Driver Ass'n, Inc. v. USIS Com. Servs., Inc.*, No. 04-cv-01384-REB-CBS, 2006 WL 2164661, at *2 (D. Colo. July 31, 2006) (considering a challenge to expert testimony pursuant to Rule 702 raised in a motion in limine).

reasoning or methodology underlying the testimony is valid. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232–33 (10th Cir. 2005)). Second, courts look at whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder. *See id.* The party offering the expert opinion bears the burden of establishing its admissibility, including all foundational requirements, by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009) (en banc); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).

"Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). To that end, courts consider the following non-exhaustive factors in analyzing whether a particular expert opinion meets the requirements of Rule 702, *Daubert*, and their progeny:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Id.* The analysis is opinion-centric, rather than expert-centric. *See United States v. Nacchio*, 608 F. Supp. 2d 1237, 1250–51 (D. Colo. 2009).

### 2.    Discussion

NCS seeks to preclude all testimony by Mr. Hendricks because his opinions, as reflected in his expert report, [Doc. 62-7], and his anticipated trial testimony are:

> (1) based on incomplete, incorrect, or unestablished factual assumptions and are therefore, unreliable; (2) constitute inappropriate legal conclusions; and (3) not relevant to the remaining issues in this case, which are as

follows:  a) whether the information furnished was inaccurate; b) whether NCS conducted a reasonable investigation of the disputed furnishings, and; c) whether Plaintiff sustained any emotional damages as a result of any violation of the FCRA.

[Doc. 91 at 9].  In support of its position, NCS points to various cases in which some of Mr. Hendricks's opinions have been excluded.  *See* [*id.* at 13].  Mr. Ward responds that Mr. Hendricks's opinions satisfy the requirements of Rule 702, and he cites decisions where courts have permitted Mr. Hendricks to testify.  [Doc. 92 at 6–9].  Mr. Ward urges the Court to defer ruling on Mr. Hendricks's testimony until trial.  [*Id.* at 8–9].

During the Final Pretrial/Trial Preparation Conference, Mr. Ward represented that he does not intend to ask Mr. Hendricks for an opinion regarding his emotional distress or any opinions related to willfulness or punitive damages.  Rather, he clarified that Mr. Hendricks will provide opinions with respect to the standards for conducting investigations under the FCRA, credit reports and credit scores in general, and the impact of negative information on personal credit.  With those limitations in mind, this Court finds that it is most efficient to rule on certain issues at this time and reserve any further rulings for trial.

First, upon review of Mr. Hendricks's expert report, [Doc. 62-7], this Court finds that he possesses specialized knowledge beyond the lay person.  While NCS argues that Mr. Hendricks "has never participated in a dispute investigation, determined a credit score, or designed, tested or implemented any credit policies," NCS does not explain why that is disqualifying, and it does not expressly challenge Mr. Hendricks's qualifications to testify about the credit reporting system and associated procedures generally.  *See* [Doc. 91 at 10–12].

Second, NCS's main challenge to Mr. Hendricks's opinion appears to arise from its position that "identity theft has not been established."  [*Id.* at 10].  NCS is correct that

an expert may not testify on matters if his testimony usurps a critical function reserved to the jury. *See United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993). To the extent that Mr. Hendricks seeks to testify that it is his opinion that Mr. Ward <u>was</u>, in fact, the victim of identity theft, *see* [Doc. 62-7 at 1 ("Plaintiff Robbin Ward . . . became a victim of identity theft.")], this Court concludes that such testimony is impermissible. But Mr. Hendricks may testify that he <u>presumed</u> for the purposes of his analysis that Mr. Ward was a victim of identity theft and that Mr. Ward disputed the accuracy and completeness of the account to the CRAs. *See Cox v. Wilson*, No. 15-cv-00128-WJM-NYW, 2016 WL 11260309, at *2 (D. Colo. Oct. 20, 2016) (holding that to the extent an expert's factual assumptions are not expressed as opinions, their admissibility is not determined by Rule 702). Indeed, as the *Cox* court explained:

> An expert may base his opinions on factual assumptions, and the "full burden of exploration of the facts and assumptions underlying the testimony of an expert witness falls squarely on the shoulders of opposing counsel's cross-examination."

*Id.* (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 799 (10th Cir. 1980)).

Third, to the extent that Mr. Hendricks seeks to opine that NCS's investigation was not logical or reasonable, or that the documents clearly supported Plaintiff's dispute, *see, e.g.*, [Doc. 62-7 at 5–6], he will be precluded from doing so. He may, however, testify about industry standards and provide opinions as to whether or not NCS's conduct, based on the information that it had before it when investigating Plaintiff's disputes, conformed to industry standards. He will also be permitted to opine about whether, based on industry standards, NCS was required to perform a broader investigation than it did with respect to Mr. Ward's claim of identity theft. But the instruction of what the FCRA requires is within the province of the Court, not Mr. Hendricks. *See Specht v. Jensen*, 853 F.2d 805, 807

(10th Cir. 1988) (observing that "it is axiomatic that the judge is the sole arbiter of the law and its applicability").  Nor will Mr. Hendricks be permitted to opine as to the ultimate issue of whether NCS's investigation was reasonable, as such an opinion would supplant the jury's ability to apply the law to the evidence.  *Id.* at 808.  Finally, the Court notes that the remainder of NCS's criticisms go to the weight, rather than the admissibility, of Mr. Hendricks's expert opinions.  With these guideposts in place, the Court will address any remaining objections at trial.[6]

## CONCLUSION

For the foregoing reasons and those stated on the record during the Final Pretrial/Trial Preparation Conference, **IT IS ORDERED** that:

(1)     Plaintiff's Motion in Limine [Doc. 90] is **GRANTED in part** and **DENIED in part**; and

---

[6] Finally, the Court addresses an issue not directly raised by the instant Motions in Limine, but relevant to the Parties' trial submissions.  Both the verdict form and jury instructions proposed by NCS invoke the affirmative defense of comparative negligence and identify both Mr. Ward and Ms. Green as individuals who may bear some portion of liability.  The Court is respectfully unpersuaded that the affirmative defense of comparative negligence applies to Plaintiff's FCRA claims.  An FCRA claim is not a common law tort, but a statutory cause of action, and Defendant provides no binding Tenth Circuit or Supreme Court authority applying comparative fault principles to an FCRA claim.  *See* [Doc. 98 at 41].  Under the statutory scheme, it appears that a "negligent" violation is defined by its non-willfulness, not by its incorporation of common law negligence principles like comparative fault that do not cleanly map onto the duties imposed on furnishers under the FCRA.  The authority cited by Defendant does not substantively analyze whether comparative negligence may be properly asserted in the context of an FCRA claim, but rather cursorily declines to dismiss the affirmative defense in the early pleading phase of a case.  In addition, any failure by a plaintiff to provide adequate information is, in some respects, incorporated into the reasonableness analysis.  For these reasons, the Court will not instruct the jury as to comparative negligence, nor will such an affirmative defense be reflected in the verdict form.

(2)     National Credit Systems, Inc.'s Omnibus Motion in Limine and Motion to Exclude or Limit Expert Testimony [Doc. 91] is **GRANTED in part** and **DENIED in part**.

DATED:  June 5, 2024                    BY THE COURT:

                                        Nina Y. Wang
                                        United States District Judge