# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

ROBBIN WARD

       Plaintiff,

      vs.                         CASE NO. 1:21-cv-02597-NYW-JPO

TRANSUNION, LLC, *et al.*,

       Defendants.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO APPLY ONE-SATISFACTION RULE

Plaintiff Robbin Ward, by Counsel, opposes Defendant National Credit Systems Inc.'s ("NCS") Motion to Apply One-Satisfaction Rule (ECF 138). For the reasons discussed below, the Court should deny NCS's Motion.

### OVERVIEW

This case arose from the theft of Plaintiff's identity and the use of that information to lease a property in Dallas, Texas. As the Court and jury learned at trial, Plaintiff did not authorize anyone to do that, did not consent to being bound on the lease, and was not part of some multi-state conspiracy to destroy his credit over the $5,000 or so the thief wound-up owing the landlord.

The landlord sent the account to NCS for collection, and when the collection account appeared on Plaintiff's credit, he disputed, to NCS directly and the credit bureaus ("CRAs"), to no avail. At the end of his patience and emotionally strangled by NCS's steadfast—and unsupportable—belief that the account indeed belonged on Plaintiff's credit, he sued NCS and the CRAs, asserting claims under the Fair Credit Reporting Act ("FCRA"). (ECF 1.) Being reasonable

and rational, the CRAs recognized the strengths of Plaintiff's case, and all settled during the discovery period and before dispositive motions were due.

NCS held out and filed a motion for summary judgment on all aspects of Plaintiff's claims against it. (ECF 55.) The Court, Judge Babcock presiding, largely denied that Motion, but granted it on the issues of economic damages and willfulness. *Ward v. Trans Union, LLC*, No. 21-cv-2597-LTB-SKC, 2023 WL 4330849, at *13 (D. Colo. May 12, 2023). The Parties then went to trial on the issues of the accuracy of NCS's credit reporting, the reasonableness of its investigations of Plaintiff's disputes, and Plaintiff's emotional-distress damages. The jury deliberated for three-and-a-half hours before returning a verdict for Plaintiff, awarding him $500,000. (ECF 129.) The Court entered judgment on the verdict on June 25, 2024. (ECF 131.)

NCS now asks the Court to reduce the jury's award, hoping to get the "blue light special" through the application of the one-satisfaction rule to lessen Plaintiff's recovery. (ECF 138.) In seeking that relief, NCS expects to be rewarded for not settling and continuing the litigation. But there is no "last-person-standing" bonus applicable in the FCRA context. Even if there was, NCS has failed to show its entitlement to the benefit of the one-satisfaction rule. The Court should therefore deny NCS's Motion.

## BACKGROUND PERTAINING TO THIS MOTION

Plaintiff filed this case against NCS and all three credit bureaus, Equifax, Experian, and TransUnion. (ECF 1.) He asserted claims under FCRA Sections 1681e(b) and 1681i against the bureaus, and under Section 1681s-2(b) against NCS. (*Id.* ¶¶ 96–107, 108–21.) As to NCS, Plaintiff alleged specifically that he suffered harm due to NCS's failure to reasonably investigate his disputes, particularly that it failed to review relevant information and robotically verified the

account as belonging to Plaintiff, and failed to correct the inaccuracy as the FCRA requires.  (ECF 1 ¶¶ 111–12, 118.)

Over the course of this litigation, Plaintiff settled his claims with the credit bureau Defendants. NCS never asked Plaintiff to produce those settlement agreements, either during the discovery period or (belatedly) in the lead-up to trial. NCS likewise never moved to compel Plaintiff to produce them.

At trial, Plaintiff and Mrs. Ward testified about his emotional distress. None of that testimony pointed to a culprit other than NCS, and NCS did not elicit any testimony that even arguably implicated another cause of Plaintiff's emotional distress. NCS could certainly have put on witnesses from the three credit bureaus to discuss Plaintiff's damages, but NCS chose not to do that or call any other witness that might have undermined the emotional-distress testimony from Plaintiff and his wife.

The Court also guaranteed that the jury would award damages for just Plaintiff's injuries attributable to NCS, instructing the jury specifically about causation and its ability to award damages:

**INSTRUCTION NO. 17**

**FCRA VIOLATION - ELEMENT 3: CAUSATION**

> To recover damages, Plaintiff must prove that Defendant's violation of the Fair Credit Reporting Act proximately caused his injuries. Proximate cause requires that the damage complained of by the Plaintiff is the natural, probable result of *Defendant's investigation* of Plaintiff's disputes.

(ECF 128 at 22 (bold in original, italics added).)

The Court emphasized the causation element in its specific instructions on awarding damages: "Plaintiff can only recover the emotional distress damages that he proves he suffered and that were *caused by Defendant's* negligence." (Id. at 25 (emphasis added).) There is no

reason, and NCS has not raised one, to believe that the jury did not follow the Court's instructions. *Grant v. Royal*, 886 F.3d 874, 940 (10th Cir. 2018) (explaining jury is presumed to follow court's instructions).

Moreover, NCS argued-for, and received, a jury instruction on mitigation of damages. (ECF 128 at 6 (Instruction 4); at 27 (Instruction 21).) The jury considered whether Plaintiff failed to mitigate his damages in its deliberations, and concluded he did not. (ECF 130 at 3 (finding NCS did not prove Plaintiff "had an opportunity to mitigate or avoid some of all of his damages").) Based on the evidence presented, the jury awarded Plaintiff $500,000 for his emotional-distress damages. (Id. at 3.)

NCS moves the Court for a discount on that decision, hoping the Court will apply the one-satisfaction rule and give NCS a benefit for being the only Defendant to not settle before trial. By NCS's measure, it is entitled to have the $500,000 verdict reduced *by the entirety of the amounts Plaintiff received from the CRAs*, without any regard to whether that is even a proper application of the one-satisfaction rule. (ECF 138 at 8.) That approach is not only an inappropriate use of the rule, assuming it even applies in the FCRA context, but would extinguish any chance that any defendant would settle in a multi-defendant case. They would be incentivized instead to wait and take their chances at trial, where even a crushing defeat like the one here would be eliminated by application of the one-satisfaction rule. It is not difficult to see the many problems with NCS's proposed use of the one-satisfaction rule.

### LEGAL STANDARDS

In the Tenth Circuit, a Rule 60(b) motion like NCS's "is an extraordinary remedy and may be granted only in exceptional circumstances." *Foster v. Stanek*, 689 F. Supp. 3d 975, 981 (D. Kan. 2023) (quoting *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191–92 (10th Cir.

2018)). The decision to grant a Rule 60(b) motion is left to the Court's discretion. *In re Rael*, 753 F. App'x 649, 654 (10th Cir. 2018). The Rule allows relief for several reasons, and NCS invokes subsection 5, which permits relief from a judgment where "(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." FED. R. CIV. P. 60(b)(5). While there are three options for relief in this subsection, NCS does not state which it relies upon for its Motion. (ECF 138 at 2.) The distinction is meaningful, as courts apply different standards for granting such a motion depending on the grounds. *See Foster*, 689 F. Supp. 3d at 981–82 (explaining the different standards).

Since NCS leaves Plaintiff and the Court to decide which subsection could potentially apply to NCS's Motion, it appears that none do. First, there can be no argument that "the judgment has been satisfied, released, or discharged," as the Court has just recently entered it, and NCS contests it by its Motion. (ECF 138.) Second, the judgment is not "based on an earlier judgment that has been reversed or vacated," and NCS does not argue as much. (Id.) Finally, there can be no reasoned claim that "applying [the judgment] prospectively is no longer equitable," and again NCS does not argue as much. (*See* id. at 7–8.) The Tenth Circuit has not concluded that the one-satisfaction rule is applied pursuant to Rule 60(b)(5), but there are decisions from other circuits reaching that conclusion. *See Losch v. Experian Info. Sols., Inc.*, No. 2:18-cv-809-MRM, 2022 WL 17823593, at *2 (M.D. Fla. June 22, 2022), *aff'd sub nom. Losch v. Nationstar Mortg. LLC*, No. 22-12421, 2024 WL 1282459 (11th Cir. Mar. 26, 2024) (collecting cases). Plaintiff therefore proceeds as though NCS's Motion is appropriately brought under Rule 60(b)(5), but does not concede that the Rule allows for the relief NCS seeks.

### ARGUMENT AND AUTHORITIES

**I.     The One-Satisfaction Rule Does Not Apply In The FCRA Context.**

Plaintiff acknowledges that the Tenth Circuit has recognized that the one-satisfaction rule exists, as NCS argues in its brief. (ECF 138 at 2–4.) Less certain, however, is whether it applies in the FCRA context. NCS spills considerable ink hoping to convince the Court that it does, but in so arguing, NCS relies on cases comprising the national minority view of the one-satisfaction rule. The Court should decline to adopt the minority view that NCS advocates.

The only Circuit-level decision to consider the one-satisfaction rule in the FCRA context, *Sloane v. Equifax Information Services, LLC*, 510 F.3d 495 (4th Cir. 2007), noted its doubt that the rule applies in FCRA cases at all, likening that statute to the Motor Vehicle Information and Cost Savings Act, Pub.L. No. 92-513, § 409(a), 86 Stat. 947, 963 (1972) (current version at 49 U.S.C. § 32710(a) (West 2007)). *Id.* at 501 n.2. (citing *Ferris v. Haymore*, 967 F.2d 946, 955–58 (4th Cir.1992)). While NCS claims that this statement in *Sloane* is dicta, courts do not share NCS's belief. *Alston v. Wells Fargo Bank*, No. 12-cv-03671-AW, 2013 WL 990416, at *7 (D. Md. Mar. 12, 2013) ("The Sloane court **held** that the 'one satisfaction rule' does not apply where a plaintiff pursuing a FCRA claim provides credible evidence that his damages result from separate acts by separate parties. Here, Defendant does not seem to dispute that the other lawsuits involved different defendants. Furthermore, . . . it is plausible that the alleged damages flowed, at least in part, from separate acts.") (emphasis added, alteration in original). But whatever NCS may argue *Sloane* means, it cannot deny there is no shortage of cases concluding that the one-satisfaction rule does not apply in FCRA cases. *Id.*; *see Salgado v. CitiGroup Corp. Holdings, Inc.*, 608 F. Supp. 3d 984, 988 n.4 (C.D. Cal. 2022) (noting "courts in this circuit have found that

this rule does not apply to the FCRA") (collecting cases); *Cheetham v. Specialized Loan Servicing LLC*, No. 2:20-cv-762-JCC-DWC, 2021 WL 2137823, at *2 (W.D. Wash. May 26, 2021); *Zook v. Equifax Info. Servs., LLC*, No. 3:17-cv-2003-YY, 2018 WL 10604347, at *2 (D. Or. July 2, 2018) ("[M]ultiple courts have held that there is no equitable offset for causes of action under . . . the FCRA" (collecting cases)); *Vasquez-Estrada v. Collecto, Inc.*, No. 3:14-cv-01422-ST, 2015 WL 6163971, at *2 (D. Or. Oct. 20, 2015) ("Even if plaintiff sought duplicate damages, there is no express or implied right to an offset of amounts that plaintiff may have received in settlement from other FCRA defendants."). These numerous, and congruous conclusions are in keeping with the long-held notion that no recovery-reducing principles like joint-and-several liability, settlement credit, or offset apply in the FCRA context. *See, e.g.*, V*asquez-Estrada v. Collecto, Inc.*, No. 3:14-cv-01422-ST, 2015 WL 6163971, at *2 (D. Or. Oct. 20, 2015) ("Even if plaintiff sought duplicate damages, there is no express or implied right to an offset of amounts that plaintiff may have received in settlement from other FCRA defendants.").

For its part, NCS depends on a line of cases that has been accurately described as the minority view. *Hoerchler v. Equifax Info. Servs., LLC*, 568 F. Supp. 3d 931, 936–37 (N.D. Ill. 2021) ("In contrast, the minority rule–represented in cases from the Northern District of Alabama–is that the one-satisfaction rule does apply to FCRA claims."). For all its discussion, however, NCS provides no reasoned ground for this Court to join the minority. In fact, NCS structures its argument as though there is no minority view, asserting just that courts have adopted the approach for which NCS advocates, and so this Court should too. (ECF 138 at 6–7.) Yet nothing to which NCS points is convincing enough for the Court to do that. The Court should therefore end its analysis here and deny NCS's Motion.

**II.    Even If The Rule Does Apply In FCRA Cases, NCS Has Not Met The Prerequisites To Using It To Lower The Jury's Verdict.**

**A.    NCS Has Not Shown Plaintiff Suffered A Single, Indivisible Injury.**

Should the Court continue its analysis, NCS still cannot prevail. Paramount to the application of the one-satisfaction rule is that "the conduct of multiple defendants results in a *single injury* with *common damages*." *Advanced Recovery Sys., LLC v. Am. Agencies, LLC*, No. 2:13-cv-283DAK, 2017 WL 4862775, at *1 (D. Utah Oct. 26, 2017) (emphasis added). Or, as other courts have put it, the damages must result from a "single, indivisible harm." *Wellemeyer v. Trans Union, LLC*, No. 3:20-cv-814-DJH-LLK, 2023 WL 11262971, at *12 (W.D. Ky. Sept. 22, 2023). NCS has not come close to showing this.

Focusing broadly on emotional-distress damages, NCS's one page of argument culminates with "[a]lthough Plaintiff's injury may have resulted from the conduct of multiple defendants, the CRAs, which settled, and NCS, which did not, Plaintiff's injury is nonetheless singular." (ECF 138 at 7.) NCS is incorrect, because Plaintiff suffered emotional distress attributable to just NCS's conduct.

It is not surprising that in its curt argument, NCS chooses not to discuss any trial testimony regarding Plaintiff's emotional distress. That is because all the testimony relating to Mr. Ward's damages pointed to just one culprit—NCS. Mr. Ward testified extensively and believably about his involvement with NCS. He spoke specifically about his disputes, NCS's failures to correct the reporting, and the toll it took including his lost sleep, errors at work due to his inability to focus, crying, embarrassment, sadness and depression, among others, all of which he attributed to NCS. (**Ex. 1**, June 17, 2024 Trial Tr. at 13:25–16:16, 20:1–20, 24:11–25:17.) Rather than attempt to somehow undermine this clear, unequivocal testimony about damages, NCS spent its cross-examination time with Mr. Ward discussing his drug use, criminal history, evictions, marijuana,

his daughter's tattoo, text messages between Mr. Ward and his daughter, his relationship with his daughter in general, Mrs. Ward's role in the handling of his credit reporting disputes, the disputes generally, his fraud affidavit, the Main Street Renewal application, communications with Brett Borland's office, whether his daughter knows about this lawsuit and would testify, whether Mr. Ward gave his daughter permission to use his information to apply for the lease, and Credit Karma. (**Id**. at 28:12–30:17, 32:3–34:7, 34:10–35:1, 35:19–37:6, 39:16–43:16, 43:17–45:8, 48:3–52:15, 54:12–58:19, 62:21–69:16, 69:25–73:13, 77:9–78:14, 79:1–81:2, 81:3–85:1.) NCS did ask Mr. Ward about a supposed lack of emotional distress because he was able to obtain credit and live his life, but those questions did not seek to deflect the harm he testified to suffering to a Defendant other than NCS. (**Id**. at 85:9–88:3.) NCS finished by discussing a 2020 "vacation" the Ward family took to go camping in Nebraska, which it discovered from Mr. Ward's Facebook page, and other Facebook posts. (**Id**. at 88:6–92:16.) In nearly 100 pages of testimony, NCS made no effort to show the emotional harm Mr. Ward suffered, and for which the jury compensated him, was the result of a single, indivisible injury caused by all Defendants. Only NCS was discussed in any meaningful way.

Mrs. Ward's testimony was no different, as she—again and again—attributed Mr. Ward's stress, anxiety, loss of appetite, hopelessness, and other aspects of his emotional distress to NCS and NCS alone. (**Ex. 2**, June 17, 2024 Trial Tr. at 10:20–21:12.) When NCS had its chance on cross-examination to elicit testimony from Mrs. Ward identifying other sources or causes of Mr. Ward's emotional distress, NCS came up empty, instead discussing things like her contacts with The Borland Law Firm, Mrs. Ward's Facebook page, and how the Wards assisted the daughter with rent. (**Id**. at 7:10–9:21, 27:15–30:5, 30:19–31:13.) Mrs. Ward gave no testimony even suggesting that Mr. Ward's emotional distress emanated from a source other than NCS.

NCS's cited caselaw does not counsel a result in its favor. *Wellemeyer v. Trans Union, LLC*, No. 3:20-CV-814-DJH-LLK, 2023 WL 11262971 (W.D. Ky. Sept. 22, 2023), the case on which NCS pins so much of its argument (ECF 138 at 5–6), notes "[t]he essential requirement for the 'one satisfaction rule' is that the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm.'" *Id.* at \*11 (quoting *Lim v. Miller Parking Co.*, 526 B.R. 202, 210 (E.D. Mich. 2015), which in turn quotes *Sloane*, 510 F.3d at 501). In considering whether to apply the rule in an FCRA case, the *Wellemeyer* court declined, holding that the furnisher defendant had "not shown that the amounts recovered by Wellemeyer from the settlement agreements with Trans Union, Experian, or Charter Communications 'represent common damages arising from a single, indivisible harm.'" *Id.* at \*12. The court noted several things, also pertinent here, in reaching that conclusion:

- in the live complaint, the plaintiff did not allege the same counts against all defendants;

- the plaintiff instead alleged different counts against all defendants and each count alleged a different cause of action;

- the allegations against the CRA defendants were different than those against the furnisher defendant;

- the FCRA imposes different duties on CRAs than furnishers; and

- while the damages among the CRAs and furnisher "may have some overlap," the fact that the plaintiff settled with the CRAs and another furnisher defendant "strongly suggests that the damages did not result from 'a single, indivisible harm.'"

*Id.* at \*12–13. All of these points are equally applicable here, and NCS addresses none in its briefing despite relying heavily on *Wellemeyer*. Considering these points all led the *Wellemeyer* court to decline to apply the one-satisfaction rule in that case, and they all apply here, this Court should reach the same conclusion and decline to apply the one-satisfaction rule.

> **B.**    **The Settlement Agreements Are For Lump-Sum Payments, So Cannot Be Attributed To Anything NCS Seeks In Its Motion.**

10

Assuming for a moment that there is some reason to delve into the specifics of the settlement agreements with the CRA Defendants, they still do not have the weight NCS hopes. That is because the agreements provide for lump-sum payments that are not broken-out into categories, they contain no admissions of liability by the CRAs, and they do not release claims other than those applicable to the CRAs.[1] The *Wellemeyer* court emphasized similar points in concluding that the furnisher defendant had "not established that any payments made by or on behalf of [the settling defendants] to Wellemeyer 'necessarily encompassed damages common to a single injury caused by all of the parties jointly.'" *Wellemeyer*, 2023 WL 11262971, at *13 (quoting *Lim*, 526 B.R. at 211). NCS offers nothing along these lines here.

*Wellemeyer* is not the only court to acknowledge the reality that lump-sum settlements offer no assistance in determining anything NCS asks the Court to do:

> At oral argument, counsel confirmed these representations and noted that the settlement agreements contain no admissions of liability, no breakdown of damages, and no reference to any specific statutory violations. As such, the one satisfaction rule, even assuming its applicability, does not support a conclusion that the agreements are relevant or would lead to the discovery of relevant material.

*Pennington v. Midland Credit Mgmt., Inc.*, No. 1:10-cv-112, 2010 WL 3187955, at *2 (E.D. Va. Aug. 9, 2010). These conclusions make complete sense. The settlement agreements do not, for example, allocate $1,000 for economic damages; $1,000 for emotional distress; $1,000 for punitive damages; $1,000 for attorneys' fees; etc. They instead convey a single dollar amount to resolve just claims against that CRA, without breaking the amounts out by categories of recoverable damages. Were NCS correct, the Court would potentially have to hold an evidentiary hearing to hear testimony from the CRAs and ask why they settled—a colossal waste of judicial resources.

---

[1] Should the Court determine that these assertions are not sufficient, Plaintiff agrees to provide the settlement agreements to the Court for *in camera* review.

There is therefore nothing about the amounts Plaintiff recovered from the CRAs that can reasonably be applied to the jury's verdict against NCS.

NCS highlights this problem with the drastic nature of the relief it requests. It seeks a dollar-for-dollar credit for the entirety of the amounts Plaintiff recovered from the CRAs (ECF 138 at 8), without regard to whether those amounts might have been paid as, for example, punitive damages and attorneys' fees. Recoveries for those categories (and others) would have nothing to do with NCS. NCS fails to address this obvious inequity at all, seeking instead to achieve an impermissible bonus for being the only Defendant to decline to settle the case before trial. NCS chose to take its chances with the jury, and should now be made to live with that decision and the verdict that resulted. At bottom, nothing to which NCS directs the Court supports the result it seeks.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court decline to apply the one-satisfaction rule to this case and deny Defendant's Motion.

Dated: Sept. 13, 2024

Respectfully submitted,

/s/ Matthew Osborne
Matthew Osborne
10190 Bannock Street
Suite 200
Northglenn, CO 80260
(720) 623-0098
mosborne@ramoslaw.com

Leonard A. Bennett (*pro hac vice*)
Craig C. Marchiando (*pro hac vice*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660

(757) 930-3662 fax
len@clalegal.com
craig@clalegal.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on 09/13/2024, I served a true and correct copy of the foregoing Opposition via CM/ECF to:

John W. Bowdich and Katrina M. DeMarte
*Attorneys for Defendant National Credit Systems, Inc.*

s/ Mike Nobel