# JAMS ARBITRATION CASE REFERENCE NO. 5100000630

Lee, Josephine,

    Claimant(s),

and

Citigroup Corporation Holdings, Inc.,

    Respondent(s).

---

## FINAL ARBITRATION AWARD

**INTRODUCTION**

The claims in this arbitration proceeding were initiated in the U. S. District Court for the Northern District of California on May 5, 2022, against both Citibank and Pay Pal. It was stipulated that these claims against Respondent Citigroup would proceed in arbitration. The arbitration was held in the JAMS office in San Francisco on April 16, and 17, 2024. Erika A. Heath of the law office of Erika Heath and Michael F. Cardoza of the Cardoza Law Corporation appeared for Claimant Josephine Lee. Brian H. Gunn of Wolfe and Wyman LLP appeared for Respondent Citibank. Oral and written evidence was presented and the matter was submitted for decision upon receipt of the reporter's transcript on May 2, 2024.

1

Exhibit 9

**CLAIMS AND DEFENSES**

Claimant Josephine Lee, hereafter Ms. Lee or Claimant, brings the following claims against Citibank. Violation of the Electronic Funds Transfer Act, Negligence, liability under the UCL, and Conversion.

In its arbitration brief, Citibank relied on the Bona Fide Error Defense. At hearing, the bank stipulated that the EFTA applied and that there was a violation of the EFTA. The bank argued there was no conversion, no non-economic damages, and no violation of the UCL.

**DISCUSSION**

**Liability**

The facts as they relate to liability under the EFTA are not really in dispute. In May 2021, there were three unauthorized transactions from Ms. Lee's Citibank account totaling $20,600. Someone made those transactions using the Citibank online bill pay system to transfer sums from her account to a Pay Pal account in her name. Transfers made through Citibank's online bill pay system are referred to as ACH transfers because they pass through a nationwide network called the Automated Clearing House. Claimant Lee made claims on each of the transactions on the grounds she did not authorize them, and the bank concedes the claims were timely. Upon investigating the claims, the bank concluded that Ms. Lee had authorized the transactions and refused to credit her account for the missing $20,600. Citibank based its conclusion on its finding that the person who initiated each of the transactions used an established device to access Ms. Lee's account.

At hearing, the bank conceded its conclusion was erroneous. The Citibank employees who investigated her claims missed the fact that the phone used to access her account was a Verizon iPhone someone had recently added to Ms. Lee's account, not Ms. Lee's android device. The investigators also missed additional indicia of fraud. The IP address used with the iPhone was different than Ms. Lee's IP address. Each time Claimant Lee appealed the original decision, the Citibank employee who was supposed to conduct a review

2

Exhibit 9

did not do so but instead rubber stamped the original erroneous findings. As conceded by Citibank at hearing, the bank violated the EFTA.

Citibank was also clearly negligent as shown by the evidence introduced at hearing and discussed in more detail below.

The claim for conversion is denied. As pointed out by counsel for Respondent in his closing argument, the fraudster who took the money from Claimant's account is liable for conversion, not the bank.

The claim under the UCL is denied. A Respondent is liable under the UCL's unlawful prong if it participates in any unlawful business act or practice. The unlawful business act or practice at issue here is the failure by Citibank to prevent unauthorized transactions and the failure to return stolen funds to Ms. Lee's account once the unauthorized transactions were pointed out. While the bank actions were violations of the EFTA and negligent, there was no evidence they were unlawful. No evidence of violation of a criminal statute was admitted at hearing.

Citibank raises the bona fide error defense. This was not a bona fide error. The conduct of the bank was outrageous and ratified at the highest level as shown by the evidence at hearing. While bank records established the truth of what Claimant repeatedly told bank employees, a decision by bank management prevented its employees from seeing all its records. Despite that fact, Ms. Lee was told again and again that her phone was used for the transfers at issue, and she was told a complete and thorough review of all relevant internal records established that fact. Respondent has failed to demonstrate by a preponderance of evidence that the many errors here were bona fide in nature.

## DAMAGES

### Economic Damages

Respondent bank concedes, as it must, that Ms. Lee is entitled to compensation as a result of its mistakes. It argues the amount is no more than $62,650 plus reasonable attorneys' fees under 15 USC Section 1693m(a)(2).

Statutory damages are provided by 15 USC Section 1693(m) from $100 to $1,000 and are awarded in the sum or $1,000 due to the frequency and persistence of the non-compliance by Citibank.

3

Exhibit 9

**Non-economic Damages**

Claimant seeks damages for emotional distress. A more detailed discussion of the facts is warranted to show the emotional distress suffered by Claimant. On May 16, 2021, Ms. Lee alerted Citibank to the fraudulent nature of the first two transactions. When a third unauthorized transaction occurred a few days later, Ms. Lee again called Citibank. She had noticed that Citibank had taken no action with regard to the first two unauthorized transactions. Upon returning from vacation with her mother to the United States, she called Citibank again attempting to get her money back and get information about who removed her money from her account. She testified she spent hours on the phone. On May 27, 2021, Citibank sent Ms. Lee three separate letters denying her claim as to each transaction. Exhibit 52. On reading that correspondence she said she "felt weak and numb, and her heart was racing."

After receiving the denial letters, Ms. Lee continued to contact Citibank numerous times over several months attempting to get Citibank to resolve her claims to no avail. On June 4, 2021, she sent the bank a note saying in part "If I do not get my money back I will have to take legal action as this is not a small amount of money and I need it back in a timely fashion. Please handle this matter ASAP as it is very stressful from a consumer standpoint to see $20,000 vanish out of thin air from a trusted bank." Exhibit 9. Citibank responded by letter on June 28, 2021 again denying her claim. Exhibit 51.

On July 3, 2021, Citibank sent another response letter to Claimant again denying her claim despite the fact the investigation notes indicated one key bit of evidence of fraud. Her mobile telephone number had been updated prior to the fraud run and that number did not "verify to client".

Ms. Lee filed a complaint with Consumer Financial Protection Bureau on July 1, 2021, (Exhibit 24) and the bank again responded by saying in part "a third review of all relevant internal records and the information you provided us was conducted. Unfortunately, we maintain our position to deny your claim for reimbursement." Exhibit 34.

Claimant filed a second complaint with Consumer Financial Protection Bureau on July 21, 2021, (Exhibit 25) and received another rejection letter saying in part "Our records indicate that the $9,900 payment was entered on your mobile app using a Google Pixel 3XL on May 17, 2021. Ms. Lee received another letter from the bank on July 28, 2021, but the documents with the letter were illegible and useless. Exhibit 50. She testified she tried not to worry but felt desperate and had trouble falling asleep, trouble

waking up at night and was hyper-vigilant.

On September 1, 2021, Citibank sent Ms. Lee another rejection letter again reiterating that her phone was used for the transfers. (Exhibit 16)

> As previously advised, on our letter dated July 29, 2021, a Google Pixel 3XL was used for the bill payments processed on your account. Additionally, the IP address used was 187.144. 101.182.

On November 21,2021, Claimant submitted another note to Citibank explaining in detail the many times she had contacted the bank, explaining the bank's conclusions were incorrect and attaching her identity theft report from the Federal Trade Commission. Exhibit 21. Again, Citibank denied her claim.

Ms. Lee submitted another complaint to the CFPB attaching her various reports to law enforcement agencies and additional information that Pay Pal had provided. Exhibit 26. On December 6, 2021, the bank again responded with its conclusion saying in part "we reviewed this matter with our fraud unit. After a complete and thorough review of all relevant internal records and the information you provided, our decision to deny your claim remains unchanged." Exhibit 27.

Ms. Lee sent messages to her co-worker pharmacy manager about the stress she was under because of her problem with the bank. Exhibit 48. She complained to law enforcement authorities and news agencies. She began losing hair and getting gray. She lost weight and lost focus at work. She began eating alone in her car for privacy.

This evidence of the cycle of disputes over many months took a significant emotional toll on Ms. Lee. She testified she often cried on account of the stress caused by Citibank's treatment of her complaints. She testified she was saving that money to buy a house and had always assumed it would be safe to keep those funds in a large national bank like Citibank.

The testimony of witnesses Dr. Jessica Chen and Sarah Fisher buttress the evidence of emotional distress suffered by Claimant. Dr. Chen testified that Ms. Lee is "like a sister to me" and they spoke on the phone regularly. She said Ms. Lee was stressed because the bank said at first they would take care of the problem but did not. Dr. Chen said Ms. Lee did not trust her phone and was stressed throughout the summer and fall of 2021. Ms. Lee told her she did not feel safe, had trouble sleeping and she had aged because of the stress caused by Citibank.

Witness Sarah Fisher also confirmed the stress and emotional distress suffered by Claimant. She works

Exhibit 9

with Claimant and saw the stress and anxiety Ms. Lee was undergoing because she was stonewalled by the bank in her efforts to get her money back. Ms. Fisher said Claimant was unfocussed at work and made mistakes during the summer of 2021 and that was very unlike her usual efficiency.

While the EFTA does not explicitly provide for emotional distress damages, it does allow the recovery of actual damages. See 15 USC Section 1693(m)(a)(1). Black's Law Dictionary defines "actual damages" as an amount awarded to a complainant to compensate for a proven injury or loss. See Black's Law Dictionary 471 10th ed. 2014. The term is sufficiently broad enough to include harm such as emotional distress. The phrase "actual damages" in consumer protection statutes is uniformly found to include emotional distress. McCollough v. Johnson, Rodenburg & Lauinger, L.L.C. 637 F. 3d 939.

Gertz v. Robert Welch, Inc. 418 U.S. 323, 350 (1974) "actual injury is not limited to out-of-pocket loss," and includes "personal humiliation, and mental anguish and suffering."  See also Carey v. Piphus, 435 U.S. 247, 263 (1978). I interpret the term actual damages to include emotional distress damages because, as shown by the evidence cited above, emotional distress is almost a certain result of the conduct by Citibank demonstrated by the above evidence.

Emotional distress damages are awarded in the sum of $625,000. Pursuant to the EFTA, the economic and non-economic damages are trebled due to the egregious conduct of Respondent.

**PUNITIVE DAMAGES**

In order to recover punitive damages under the California Civil Code, a Claimant must establish with clear and convincing evidence that the Respondent is guilty of fraud, oppression or malice. California Civil Code section 3294 (a). Oppression is defined as despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

In this case clear and convincing evidence established the executive response team of the office of the president of Citibank falsely stated that the device used to make the unauthorized transfers was an authorized device and the IP address used for the unauthorized transfers was Claimant's address when its own records showed the opposite. Exhibit 16 and Exhibit 28.  Those letters were outrageous ratification of bank actions in conscious disregard of Claimant's rights.

Christina Rene Horton testified the bank also made a conscious decision at a higher level to limit the information available to the dispute investigators assigned to investigate claims such as Claimant's. As a

Exhibit 9

result, the investigations and reviews the bank promised to conduct were little more than a sham. Claimant has proved oppression by clear and convincing evidence. The request for punitive damages is granted.

## POST HEARING MOTIONS

Claimant's motion for prejudgment interest and to correct the Interim Award is unopposed and is granted. The total amount in the award was incorrect due to a mathematical mistake and is corrected to the sum of $1,937,650.

Together with its Opposition, Respondent filed a Request To Reopen hearing. That motion is denied except to make the deposition of Ms. Horton a part of the record of these proceedings.

Claimant's Motion For Punitive Damages based upon a finding by clear and convincing evidence of oppression by Respondent requested an additional $4,500,000. Respondent's opposition brief established authority that to grant additional punitive damages here when damages were trebled under the EFTA would be impermissible double counting because liability under Claimant's negligence claim and under the EFTA claim are based upon the same conduct.

Despite the egregious conduct by Respondent set forth above, the case law cited does prevent further award of punitive damages. See Fassberg Construction Co. v. Housing Authority Of City Of Los Angeles 152 Cal. App. 720 (2007). On that basis, a further award of punitive damages is denied.

## ATTORNEYS' FEES AND COSTS

Claimant requests attorneys' fees in the amount of $283,253 and costs of $7,994.58. The motion is supported by the declarations of Erica A. Heath, with attachments, the declaration of Michael F. Cardozo, with attachments, and the declaration of Matthew M. Loker. The opposition at page 33 does not object to the cost request and does not discuss the lodestar amount. The sole objection is to the multiplication of the lodestar amount by two. The opposition correctly states the law in the Ninth Circuit is that multipliers should only be used in rare and exceptional cases and that this is not a rare and exceptional case.

Exhibit 9

The declarations submitted by Claimant support the lodestar amount, the amount of hours expended on the litigation multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424,433 (1983). The hourly rates charged by Claimant's counsel here are reasonable and appropriate for the San Francisco legal market and in light of the qualifications and experience of counsel.

The lodestar amount may then be augmented by taking other relevant factors into account: 1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; 2) the extent to which the nature of the litigation prevented the attorneys from other employment; 3) and the contingent nature of the fee award based on the uncertainty of prevailing on the merits. See Serrano v. Priest, 20 Cal. 3d 25, 48-49 (1977) and Graham v. Daimler-Chrysler Corp., 34 Cal. 4th at 579 (2004).

The circumstances presented in this case justify a 2X multiplier amount. Counsel accepted the case without knowing the extent of deception by Respondent. Claimant did everything she could do on her on behalf without getting any result from the bank. Only the actions of counsel brought out the truth. Not until very late in the case when the deposition of Ms. Horton was taken did the Respondent admit its culpability. Without counsel for Claimant, the bank would still be denying any wrongdoing. This is a rare and exceptional case where counsel have established the proper elements for a 2X multiplier because their entry into the case and diligent and skillful work destroyed the stonewall that Respondent had hidden behind to that point.

Attorneys' fees are granted in the amount of $283,253.00 and costs awarded in the amount of $7,994.58.

**CONCLUSION**

For the reasons set forth above, Claimant is awarded the sum of $1,937,650 in damages. That amount is composed of $20,550 in economic damages, $625,000 in non-economic damages trebled and $1,000 in statutory damages. Attorneys' fees of $283,253 and costs of $7,994.58 are awarded for a total award of $2,228,897.58 with prejudgment interest of 10% per year.

Dated: August 13, 2024    _____
Hon. John A. Flaherty (Ret.)
Arbitrator

8

Exhibit 9